**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
1234 Market Street
Philadelphia, PA 19107,

                               Plaintiff,

    v.

DRUMMOND DECATUR AND STATE
PROPERTIES, LLC,
8228 Abingdon Road
Kew Gardens, NY 11415,

                        Defendant.

CIVIL ACTION NO._____

JURY TRIAL DEMANDED

**VERIFIED COMPLAINT**

Plaintiff Southeastern Pennsylvania Transportation Authority ("SEPTA" or "Plaintiff"), by its undersigned counsel, files this Complaint against Defendant Drummond Decatur and State Properties, LLC ("Drummond" or "Defendant") and, in support thereof, avers as follows:

**INTRODUCTION**

1.     SEPTA comes to Court seeking damages for Drummond's failure to do simply that which would be required of any commercial landlord: fix the dangerous conditions plaguing the building SEPTA leases from Drummond (the "Building") that disrupt SEPTA's internal operations and threaten to cripple Philadelphia's complex infrastructure.

2.     This situation is even worse because Drummond made a series of material misrepresentations, omissions, and took other purposeful and deceitful acts that were intended to, and ultimately did, fraudulently induce SEPTA into entering a commercial lease. Specifically, knowing full well that SEPTA was looking for a central location to store its critical parts and

components on the one hand and utilize the Building's office space for operations on the other, Drummond attempted to conceal and then lied about, among other things, unconscionable plumbing issues and structural defects.  These are the conditions that it now refuses to remedy.

3.      Drummond also failed to disclose that the Building had severe environmental contamination, which now risks people's health and safety.

4.      Specifically, during lease negotiations, Drummond attempted to conceal from SEPTA serious flooding problems in the Building. On the day SEPTA representatives were scheduled to view the Building for inspection, major flooding was occurring. Drummond, giving no reason, attempted to cancel the visit but SEPTA representatives were already on their way to the Building. When SEPTA representatives arrived and witnessed this flooding, Drummond told them the water was simply from its employees hosing down a wall that had to be removed to open up the warehouse and would be remedied soon.  This was a blatant lie.

5.       The flooding was in fact not due to hosing down a wall as part of demolition cleanup but instead was—and still is—caused by serious foundational and structural defects in plumbing and piping throughout the Building. Further, Drummond, knowing SEPTA was coming to inspect the building, failed to have its then tenant remove its sea of boxes and crates of materials on the grounds to conceal the floor and prevent reasonable inspection by SEPTA at its visit in May 2019 and preventing SEPTA personnel from truly assessing the condition of the Building.

6.      Relying on Drummond's misrepresentation that the water was due to issues with the demolition cleanup that would be quickly remedied by Drummond, SEPTA entered into the lease, which expressly required Drummond to perform a series of repairs (some of which Drummond has not even attempted or has done so ineffectively, in breach of the lease).

7.     Had SEPTA known about the true cause of the flooding—the systemic structural failures permeating the Building—it would not have entered into the lease and chosen the Building as the place to store its critical equipment and operations.

8.     The effect of Drummond's deception is cataclysmic to both SEPTA and the City of Philadelphia: with each rain, the Building floods—literally water surging above from the roof drainage pipes and bubbling from the ground—endangering SEPTA employees, damaging critical infrastructure and debilitating company operations.  In addition, the Building's office space has been rendered unusable and dangerous, the odors are repugnant, the bathrooms are dysfunctional, and the environmental conditions are unsanitary and deplorable.  Every time the sewer backs up due to rainfall, fecal matter enters the warehouse floors creating serious health and safety hazards and immeasurable risk to SEPTA.

9.     Because the Building is mission critical for SEPTA's operations, and the condition of the Building is so dangerous, SEPTA needs this Court's immediate attention, especially considering the City of Philadelphia is now emerging from the COVID-19 pandemic with multiple millions of residents commuting on SEPTA transportation daily.

10.     Defendant's actions—and inactions—constitute violations of the lease between SEPTA and Defendant as well as intentional fraud.

11.     As a result of Defendant's unlawful conduct, SEPTA has been damaged and now operations of its entire 5-county transit system have been placed at risk.

12.     Millions of SEPTA's users who rely on SEPTA for going to and from work will be disrupted should the damage progress to a point where SEPTA's operations become compromised.

13.     SEPTA comes to Court seeking damages to redress Defendant's misconduct and ensure SEPTA's operations can continue uninterrupted and serve the general public.

## THE PARTIES

14.     SEPTA is a regional transit authority created by the Commonwealth of Pennsylvania with an address of 1234 Market Street, Philadelphia, PA 19107.  For purposes of diversity of citizenship, SEPTA is a citizen of the Commonwealth of Pennsylvania.

15.     Defendant Drummond Decatur and State Properties, LLC is a Delaware limited liability company with an address of 8228 Abingdon Road, Kew Gardens, NY 11415.  For purposes of diversity of citizenship, Drummond is a citizen of the state of New York.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the dispute is between diverse citizens and the amount in controversy exceeds $75,000.00.

17.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business in this District, the actions giving rise to these claims occurred in this District, and the real property which is the subject of this litigation is located in this District.

## FACTS COMMON TO ALL COUNTS

18.     SEPTA is a regional public transportation authority that operates bus, rapid transit, commuter rail, light rail, and electric trolleybus services for nearly four million people in five counties in and around Philadelphia, Pennsylvania.

19.     As part of its operations, SEPTA uses multiple materials and equipment such as engines and other mechanical parts for the modes of transportation for the entire fleet.

20.     SEPTA previously rented a warehouse space in Northeast Philadelphia to store its materials. That lease expired on December 31, 2019. Therefore, before that lease's expiration, SEPTA began looking for other properties to store its equipment and materials.

21.     SEPTA began considering Drummond's warehouse of approximately 135,336 square feet and located at 10551 Decatur Road, Philadelphia, PA 19154 (the "Building") for purposes of storing its wide variety of critical parts, components and accessories necessary for, and integral to, SEPTA's transit operations.

22.     On or about November 12, 2019, SEPTA and Drummond entered into a commercial Lease Agreement (the "Lease") for the Building. A copy of the Lease is attached hereto as Exhibit 1.

23.     Prior to and/or simultaneously with entering into the Lease, Drummond represented that the Building was free from defects and other issues which would or could impede SEPTA's use of the Building to facilitate its transit operations.

24.     Before signing the Lease, in or about May 2019, SEPTA personnel were scheduled to inspect the Building. On the day of the inspection, Drummond attempted to cancel the inspection but provided no reason. Because SEPTA personnel were already on their way to the Building, SEPTA told Drummond the inspection could not be cancelled and would proceed.

25.     When SEPTA arrived for the inspection, SEPTA noticed substantial flooding on the grounds of the Building. Drummond assured SEPTA that the flooding was due to its employees hosing down a wall that had to be removed to open up the warehouse. Drummond represented that once the demolition cleanup was completed, the flooding would be resolved.

26.     Contrary to Drummond's assertions, the flooding was—and continues to be—in reality caused by significant structural and sub-surface piping and plumbing issues including but

not limited to: flooding of the interior of the warehouse, office space, and common areas; leaking

downspouts and drainage pipes; and damaged sewer lines which result in the overflow of toilets

and restroom drains which spill out into the office space and common areas and contaminate the

Building.  The present conditions of the Building are reflected in the images below:





27.    Drummond was aware of these structural and plumbing issues and took affirmative steps to both lie about and conceal these defects, including intentionally and falsely representing the source of the flooding observed at the May 2019 inspection.

28.    Apart from lying to SEPTA, Drummond's efforts to conceal the known defects and their true cause included Drummond intentionally failing to have its tenant remove its tons of materials and equipment laid over the floors during the May 2019 inspection. A picture taken by SEPTA personnel at the May 2019 inspection is below:



29.     The water that SEPTA did view in May 2019, even through the obstructions, was represented by Drummond as caused by hosing as part of demolition cleanup. A picture taken by SEPTA personnel at the May 2019 inspection is below:



30.     Drummond also skimmed the floors with concrete to cover cracks and leaks in the floor, in furtherance of its goal of convincing SEPTA that any water was due to the demolition cleanup and not other structural problems.

31.     Drummond also used patchwork on the walls to conceal water damage.

32.     Drummond's efforts were done with the intent to prevent reasonable inspection of the Building and actively conceal the structural plumbing and piping issues that were the true cause of the flooding and sewage backup in the Building.

33.     Drummond further lied to SEPTA in representing that the Building contained no environmental hazards.

34.     SEPTA has now discovered that the Building contains heavy metals and asbestos, which Drummond knew existed at all relevant times. Further, as a result of the sewage back up following rainfall, fecal matter enters the warehouse floors creating serious health and safety hazards.



35.     After the Lease was executed, SEPTA viewed Drummond's workers—who were unskilled and unqualified—in hazardous material suits when they performed roof repairs provided for under the Lease and saw the workers scrubbing and washing the walls and rafters.

36.     SEPTA, surprised and concerned by this conduct, brought in its own environmental inspectors to the Building who discovered the dangerous environmental conditions including presence of asbestos and heavy metals.

37.     The Building also contains occupational hazards as the conditions have led to mold growth in the areas where SEPTA personnel work.

38.     The Building further contains electrical hazards as a result of Drummond's faulty work done under the Lease.

39.     Drummond also represented to SEPTA before executing the Lease that the Building's floors were strong and in good condition, which was false as the floors are in terrible condition and are unsuitable for SEPTA's uses.

40.     Drummond knew of all these defects and unreasonably dangerous conditions and actively lied about and/or concealed such conditions from SEPTA. Drummond lulled SEPTA into a false sense of security by lying about the cause of the flooding and promising to make certain repairs under the Lease, knowing full well the Building's dire conditions were and continue to be caused by structural plumbing and piping problems.

41.     The Lease provided for Drummond to make repairs to the roof, as well as make additional repairs. *See* Ex. 1, Lease, Exhibit B "Landlord's Work."

42.     Even the work Drummond promised to perform under the Lease was not done, or was done so poorly that it actually contributes to the problems at the Building.

43.     Conditions at the Building continue to worsen with each passing rainstorm. Continued flooding and sewage backup pose immeasurable harm to SEPTA's employees, as well as its equipment and supplies, including vital mechanical replacement and vehicle overall parts for the entire transportation fleet, supply chain material for vehicle fleet management, personal protective equipment, and other various office and building supplies.

44.     The Building houses $100 million in inventory and distributes to twenty-one satellite storerooms located over the SEPTA region.

45.     The conditions impede SEPTA's operations, including by: disrupting inbound and outbound flow of materials used to repair and maintain the transportation fleet; displacing administrative staff; diverting critical employee resources and expenses to cleanup and relocation

of materials; and moving materials within the Building as a result of certain areas not being capable to support heavy equipment.

46.     SEPTA's operations and employee wellbeing continue to be threatened by Drummond's failure to remedy these problems and failure to accept responsibility for the problems it purposely kept hidden from SEPTA.

## COUNT I – INTENTIONAL MISREPRESENTATION
### (FRAUDULENT INDUCEMENT)

47.     Prior to entering into the Lease with SEPTA, Defendant or its agent intentionally and falsely misrepresented the condition of the Building.

48.     As an example, Defendant intentionally and falsely stated that the flooding that SEPTA observed when inspecting the premises was the result of hosing down a wall that had to be removed as part of demolition cleanup, which therefore would be remedied and dried up quickly.

49.     This representation was false because the flooding in the Building was common, does not "dry up" quickly, and was caused not by a one-time demolition cleanup but rather concealed defects and other plumbing, drainage/sewage, and structural issues at the Building, known to Defendant at the time it made its false representation. Therefore, Defendant's representation that the flooding was caused by demolition cleanup was intentionally false.

50.     These representations made by Defendant were material to SEPTA in executing the Lease.

51.     Defendant or its agent knew that such representations were false, and intended to mislead SEPTA by making the false representations to induce SEPTA to execute the Lease.

52.     SEPTA relied on Defendant's assertions regarding same and entered into the Lease as a result of Defendant's prior statements.

53.     Had SEPTA known of the true cause of the flooding or the full nature of the concealed defects and other plumbing, drainage/sewage, and structural issues at the Building, it would not have entered into the Lease with Defendant.

54.     As a result of Defendant's fraudulent and intentional misrepresentations, SEPTA entered into a Lease which it would not have otherwise agreed to, and has since suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's fraudulent misconduct; (2) incidental and consequential damages as permitted by law; (3) interest; (4) punitive damages; (5) Plaintiff's attorneys' fees and costs; and (6) all such other further relief as the Court may deem just and equitable.

## COUNT II – INTENTIONAL MISREPRESENTATION BY OMISSION
### (FRAUDULENT INDUCEMENT)

55.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

56.     Prior to entering into the Lease with SEPTA, Defendant intentionally misrepresented the condition of the Building, including, but not limited to, failing to disclose known structural and plumbing issues, drainage/sewage issues, and other structural defects which did or could cause dangerous conditions at the Building.

57.     Defendant also intentionally concealed known environmental hazards at the Building which did or could cause dangerous conditions at the Building, including the presence of asbestos and heavy metals at the Building.

58.     Defendant had an affirmative duty to disclose known defects that create dangerous conditions.

59.     Defendant's omissions and failure to disclose known defects that create dangerous conditions were material to SEPTA in executing the Lease.

60.     Defendant or its agent knew of plumbing issues, drainage/sewage issues, structural defects, and other dangerous conditions that existed at the Building, and intended to mislead SEPTA by failing to disclose them and induce SEPTA to execute the Lease.

61.     SEPTA relied on Defendant's omissions regarding same and entered into the Lease as a result of Defendant's failure to disclose known defects at the Building.

62.     Had SEPTA known of the concealed defects and other plumbing, drainage/sewage, and structural issues at the Building or the concealed environmental hazards, it would not have entered into the Lease with Defendant.

63.     As  a result of Defendant's fraudulent conduct, SEPTA entered into a Lease which it would not have otherwise agreed to, and has since suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's fraudulent misconduct; (2) incidental and consequential damages as permitted by law; (3) interest; (4) punitive damages; (5) Plaintiff's attorneys' fees and costs; and (6) all such other further relief as the Court may deem just and equitable.

## COUNT III – NEGLIGENT MISREPRESENTATION

64.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

65.     Prior to entering into the Lease with SEPTA, Defendant misrepresented the condition of the Building, including, but not limited to, representing that the flooding observed by SEPTA during its inspection was caused by hosing done as part of demolition cleanup, where in fact the flooding was caused by the deplorable plumbing, drainage/sewage, and structural issues at the Building.

66.     Defendant also misrepresented that no environmental hazards existed at the Building, where in fact the Building contained asbestos and heavy metals at the Building.

67.     These misrepresentations were material to SEPTA in executing the Lease.

68.     Defendant knew or should have known that these misrepresentations were false.

69.     Defendant or its agent made these misrepresentations with the intent to induce SEPTA to execute the Lease.

70.     SEPTA relied on Defendant's misrepresentations and entered into the Lease as a result of Defendant's misrepresentations.

71.     Had SEPTA known of plumbing, drainage/sewage, and structural issues at the Building or the environmental hazards, it would not have entered into the Lease with Defendant.

72.     As  a result of Defendant's misrepresentations, SEPTA entered into a Lease which it would not have otherwise agreed to, and has since suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's fraudulent misconduct; (2) incidental and consequential damages as permitted by law; (3) interest; (4) Plaintiff's attorneys' fees and costs; and (5) all such other further relief as the Court may deem just and equitable.

## COUNT IV - NEGLIGENCE

73.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

74.     When Defendant entered into the Lease with SEPTA, it had a duty to disclose known defects with the Building and act reasonably to prevent SEPTA from sustaining damage.

75.     Defendant breached that duty by failing to disclose, among other things, plumbing issues, drainage pipes, and other defects affecting the structural integrity of the Building that Defendant knew or should have known existed.

76.     Defendant further breached that duty by failing to disclose environmental hazards at the Building, including the presence of asbestos and heavy metals, that Defendant knew or should have known existed.

77.     Defendant also breached its duty to exercise reasonable care to discover the dangerous conditions at the Building and make those conditions safe for SEPTA.

78.     As a direct and proximate result of these breaches of duties owed by Defendant, SEPTA has suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's negligence;

(2) incidental and consequential damages as permitted by law; (3) interest; (4) Plaintiff's attorneys' fees and costs; and (5) all such other further relief as the Court may deem just and equitable.

## COUNT V – BREACH OF CONTRACT
### (BREACH OF THE COVENANT OF QUIET ENJOYMENT)

79.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

80.     Plaintiff and Defendant entered into the Lease on or about November 12, 2019.

81.     The Lease is a valid contract, supported by consideration, and containing material terms regarding the parties' rights and obligations.

82.     Under the Lease, Defendant covenanted and agreed that "so long as Tenant pays the Rent and observes and performs all other terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Premises and Tenant's possession will not be disturbed by anyone claiming by, through or under Landlord subject, nevertheless, to the terms and conditions of this Lease." Lease, Art. 22, "Quiet Enjoyment."

83.     In addition to this express covenant of quiet enjoyment, the Lease, like all other leases of real property in Pennsylvania, contains an implied covenant of quiet enjoyment.

84.     Defendant has breached both the express and implied covenants of quiet enjoyment by failing to make necessary repairs to the Building resulting in conditions that substantially alter the essential features of the Building rendering the Building unsuitable for the purpose for which it was leased.

85.     As a result of Defendant's breach of the express and implied covenants of quiet enjoyment, SEPTA has suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's breach of contract; (2) incidental and consequential damages as permitted by law; (3) interest; (4) Plaintiff's attorneys' fees and costs; and (5) all such other further relief as the Court may deem just and equitable.

## COUNT VI – BREACH OF CONTRACT
### (BREACH OF OBLIGATION TO DO LANDLORD'S WORK)

86.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

87.     Plaintiff and Defendant entered into the Lease on or about November 12, 2019.

88.     The Lease is a valid contract, supported by consideration, and containing material terms regarding the parties' rights and obligations.

89.     The Lease provides that "Prior to the Commencement Date [October 31, 2019], Landlord shall complete those items of maintenance and repair to the Premises detailed on Exhibit B attached hereto (collectively, the 'Landlord's Work'), to the reasonable satisfaction of Tenant." Ex. 1, Lease § 3.3.

90.     Exhibit B to the Lease, titled "Landlord's Work", provides that "Landlord shall perform the following work to the Premises prior to the Commencement Date" and lists various tasks required of Landlord. Ex. 1, Lease, Exhibit B.

91.     For example, prior to the Commencement Date, Landlord was obligated to, among other work, "[r]epair potholes within parking and loading areas"; "repair floor spalling and level out cracks and heaves at expansion joints within low-bay warehouse"; "[f]inish front office area with industrial floor paint, ceiling tiles, lighting, electrical receptacles, door locks and place HVAC in good working order"; ensure "[o]ffice restrooms will be in good working order and cleaned,

with lighting in good condition"; and "[r]emove all abandoned fixtures, cables and conduit per NEC code requirements."

92.     Defendant was also obligated to "[p]erform the additional repair needed to the roof as noted" in the architectural inspection report attached to the Exhibit B. See id.

93.     Section 3.3 of the Lease, with its corresponding Exhibit B, is a material term to the Lease.

94.     Defendant breached Section 3.3 of the Lease by failing to perform the work provided for under the Lease's Exhibit B and/or by failing to perform that work properly.

95.     As a result of Defendant's breach of Section 3.3, SEPTA has suffered damages including, but not limited to, destruction, damage, and loss of materials and supplies needed to carry out integral transit operations; costs associated with remediation, emergency repairs, employee displacement, diversion of resources; and other harm.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's breach of contract; (3) incidental and consequential damages as permitted by law; (4) interest; (5) Plaintiff's attorneys' fees and costs; and (6) all such other further relief as the Court may deem just and equitable.

## COUNT VII – BREACH OF CONTRACT
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

96.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

97.     Defendant has breached the implied covenant of good faith and fair dealing in the Lease.

98.     Defendant's recent conduct, including, among other things, its repeated failure to acknowledge its obligations and duties as a landlord under the Lease and make necessary repairs which, if left unaddressed, threaten SEPTA's transit operations, is all part of an intentional effort to exert leverage over SEPTA and coerce SEPTA into giving up certain rights under the Lease and bear the costs of repairing the Building for Defendant's own ultimate benefit.

99.     Defendant did not act fairly or in good faith when it refused to acknowledge or make any necessary repairs at the Building described in more detail above, and such actions were the direct and proximate cause of harm to SEPTA.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) actual damages that Plaintiff is entitled to recover as a result of Defendant's breach of contract; (2) incidental and consequential damages as permitted by law; (3) interest; (4) Plaintiff's attorneys' fees and costs; and (5) all such other further relief as the Court may deem just and equitable.

## COUNT VIII – UNJUST ENRICHMENT

100.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

101.     While unlawfully refusing to make needed repairs to the Building, Defendant has continued to reap the monetary benefits of the Lease by collecting rent despite the damage caused to SEPTA.

102.     Defendant has also reaped the benefits of the repairs and remediation that Plaintiff has been required to perform to the Building, that otherwise should have been performed by Defendant. Defendant has further reaped the benefit of the increased value to the Building because of Plaintiff's repairs and remediation.

103.     Upon information and belief, Defendant has derived profits resulting from the Lease while avoiding its responsibilities and duties owed to SEPTA as a landlord.

104.     By profiting from the Lease, refusing to undertake any responsibilities or duties of a landlord owed to SEPTA, and reaping the benefits of Plaintiff's repairs and remediations to the Building, Defendant has retained a benefit, the retention of which would be inequitable.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendant for: (1) an accounting and disgorgement of any profits retained by Defendant as a result of collecting rent for the Building; (2) restitution in the amount of the repairs and remediation performed by Plaintiff and in the amount of the market value increase to the Building as a result of Plaintiff's repairs and remediation; (3) incidental and consequential damages as permitted by law; (4) interest; (5) Plaintiff's attorneys' fees and costs; and (6) all such other further relief as the Court may deem just and equitable.

## COUNT IX – DECLARATORY JUDGMENT

105.     Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in full.

106.     SEPTA and Defendant entered into the Lease on or about November 12, 2019, which details the respective rights and obligations of the parties, including Defendant's obligations to make necessary repairs and SEPTA's rights to use and enjoy the Building for which it makes rental payments.

107.     There is a real case and controversy between SEPTA and Defendant as to whether Defendants is violating the Lease and engaging in other tortious conduct in its failure to make necessary repairs to the Building.

108.     The controversy involves substantial rights of the parties to this action.

109.    SEPTA seeks declaratory relief, in the form of a judicial decree that Defendant has breached the Lease by failing to make necessary repairs.

110.    SEPTA seeks further declaratory relief, in the form of a judicial decree that SEPTA need not make further rental payments until Defendant makes all necessary repairs to the Building.

111.    This declaratory judgment action, brought under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, is appropriate because there is a case of actual controversy between the parties indicating imminent and inevitable litigation, and there is a clear manifestation that the declaratory relief sought will be of practical help in ending the controversy.

112.    The declaratory judgment action is also appropriate because it will address questions concerning the performance and enforcement of the Lease and will allow SEPTA to obtain a declaration of its rights, statuses, and legal relations under the Lease.

113.    A judgment of this Court will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

114.    A judgment of this Court will determine, terminate, and afford relief from the uncertainty and controversy giving rise to this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor against Defendants as follows:

a.  Declaring that pursuant to the Lease, Drummond is obligated to make all necessary repairs to the Building at its expense; and

b.  Awarding SEPTA damages for Drummond's failure to make all necessary repairs to the Building, the costs of suit, and such other further relief as the Court deems just and proper.

Respectfully submitted,

**BLANK ROME LLP**

Dated:    September 23, 2021        By:    *s/ Michael A. Iannucci*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Michael A. Iannucci
Thomas A. Brodowski
Michael A. Stoolman
PA Bar I.D. Nos. 206169, 207377 & 326117
One Logan Square
Philadelphia, PA 19103
Tel: (215) 569-5500
Fax: (215) 569-5555
Iannucci@Blankrome.com
TBrodowski@BlankRome.com
MStoolman@BlankRome.com

*Counsel for Plaintiff Southeastern*
*Pennsylvania Transportation Authority*

## **VERIFICATION**

I, John Wojciechowski, hereby verify that I am the Senior Director of Bridges and Buildings Facilites of SEPTA, and I am authorized to make this Verification on behalf of SEPTA in the foregoing action.

I verify under penalty of perjury that the foregoing statements in SEPTA's Verified Complaint are true and correct.

In making this Verification, I understand that the statements made in this Verification are made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsifications to authorities.

Executed on 13 Sept , 2021