# EXHIBIT 1

# LEASE AGREEMENT

*between*

DRUMMOND DECATUR AND STATE PROPERTIES, LLC

Landlord

*And*

SEPTA

Tenant

*For*

10551 DECATUR ROAD
PHILADELPHIA, PENNSYLVANIA 19154

7483717 v1

# LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "Lease"), is entered into as of this *12th* day of November 2019, but effective as of the Commencement Date (as such term is defined below), by and between **DRUMMOND DECATUR AND STATE PROPERTIES, LLC,** a Delaware limited liability company, having an address at 8228 Abingdon Road, Kew Gardens, NY 11415 ("Landlord"), and **SEPTA,** a body corporate and politic which exercises the public powers of the Commonwealth of Pennsylvania as an agent and instrumentality thereof, having an address at 1234 Market Street, Philadelphia, PA 19107 ("Tenant").

## ARTICLE 1
## BASIC LEASE INFORMATION

In addition to the terms which are defined elsewhere in this Lease, the following defined terms are used in this Lease:

(a)   LEASE DATE: _____, 2019

(b)   COMMENCEMENT DATE: October 31, 2019

(c)   RENT COMMENCEMENT DATE: January 1, 2020

(d)   TERMINATION DATE: 11:59pm on the date which is the day before the seventh (7th) annual anniversary of the Rent Commencement Date (December 31, 2026), subject to extension or earlier termination as provided herein.

(e)   SECURITY DEPOSIT: Seventy-Eight Thousand Six Hundred Ninety and 67/100 Dollars ($78,690.67), due upon the signing of this Lease by Tenant.

(f)   BASE RENT: Four Hundred Seventy-Two Thousand One Hundred Forty-Four and 00/100 Dollars ($472,144.00) (based on a rate of $4.00 per square foot for the Interior Premises only) annually, Triple Net, subject to adjustment as provided in Section 4.2 hereof.

(g)   USE PERMITTED:   offices and warehousing.

(h)   PREMISES:  The "Premises" consists of: (i) an approximately 118,036 SF square foot portion of the Building (as defined below), containing both bay areas and the front office space, as more particularly shown on Exhibit A attached hereto and incorporated herein by reference (the "Interior Premises"), plus (ii) the loading docks, turn-around and parking areas, sidewalks and other exterior areas and improvement depicted in yellow on Exhibit A attached hereto (the "Exterior Premises").

(i)   PROPERTY: The land and all improvements built on such land, including without limitation, the building consisting of approximately 135,336 square feet, commonly known as 10551 Decatur Road, Philadelphia, Pennsylvania 19154 (the "Building") of which the Premises is a part and the Common Areas (as such term is defined below).

(j)   TENANT'S PRO RATA SHARE: 87.22% (as reasonably determined from time to time by Landlord, by dividing the square footage of the Interior Premises by the square footage of the Building and multiplying the resulting quotient by one hundred).

(k)   ADDITIONAL RENT:  Any amounts including, without limitation, Operating Expenses and Property Taxes (as such terms are defined below), which this Lease requires Tenant to pay in addition to Base Rent.

(l)   LEASE YEAR: A period of twelve (12) months commencing on the Commencement Date or any anniversary thereof during the Term.

## ARTICLE 2
## AGREEMENT

Landlord leases the Premises to Tenant, and Tenant leases the Premises from Landlord, on the terms contained in this Lease.

## ARTICLE 3
## TERM; CONDITION OF PREMISES

3.1     Term.  The term of this Lease will commence on the Commencement Date, and shall expire on the Termination Date, subject to extension or earlier termination as provided herein. The period commencing on the Commencement Date and ending on the date which is the day before the seventh (7th) annual anniversary of the Rent Commencement Date (December 31, 2026) will be referred to as the "Initial Term". The Initial Term, as may be extended by the Renewal Term (as such term is defined below), shall be referred to hereinafter as the "Term". It is hereby understood and agreed that absent Tenant's renewal of the Lease in accordance with Article 27 below, this Lease and the Term hereunder granted, unless earlier terminated, shall terminate absolutely at the expiration of the Initial Term (December 31, 2026), notice of such termination being hereby given by Landlord to Tenant and Tenant hereby acknowledging receipt of such notice.

3.2     Possession: Condition of Premises.  Tenant hereby acknowledges that Tenant has inspected the Premises and, other than the Landlord's Work (as such term is defined below), Tenant is leasing the Premises in it's "AS-IS", "WHERE-IS" condition, with "ALL FAULTS". Other than the Landlord's Work, Tenant shall complete any and all work to the Premises necessary for Tenant's use and occupancy thereof, at Tenant's sole cost and expense.

3.3     Landlord's Work.  Prior to the Commencement Date, Landlord shall complete those items of maintenance and repair to the Premises detailed on Exhibit B attached hereto (collectively, the "Landlord's Work"), to the reasonable satisfaction of Tenant.

3.4     Failure to Deliver Possession.  If for any reason Landlord cannot deliver possession of the entire Premises as required herein to Tenant by the Commencement Date, then this Lease will not be void or voidable and Landlord will not be liable to Tenant for any resultant loss or damage, provided, however, that the Rent Commencement Date provided herein will be extended by one day for each day of delay until the actual date of the delivery of possession of the Interior Premises to Tenant.

3.5     Acceptance of Premises.  By its acceptance of the delivery of possession of the Premises, Tenant shall be deemed to have accepted the Landlord's Work and confirmed the Premises as being in good, working and sanitary order, condition and repair.

## ARTICLE 4
## RENT

4.1     General.  Subject to Section 4.2 below, throughout the Term, Tenant will pay Base Rent in the amount of Four Hundred Seventy-Two Thousand One Hundred Forty-Four and 00/100 Dollars ($472,144.00) (based on a rate of $4.00 per square foot) annually, Triple Net. The Base Rent shall be payable in twelve (12) equal monthly installments of THIRTY-NINE THOUSAND THREE HUNDRED FORTY-FIVE AND 33/100 DOLLARS ($39,345.33), Triple Net, per month ("Monthly Base Rent").  The Monthly Base Rent for the month of January 2020 shall be paid by Tenant at the time of Tenant's signing of this Lease.  Commencing with the calendar month of February 2020, and continuing thereafter for the remainder of the Term, the Monthly Base Rent due under this Lease shall be paid, in advance, on or before the first (1st) day of the calendar month for which it is due.  Monthly Base Rent will be paid to Landlord, without notice or demand, and without deduction or offset whatsoever, in lawful money of the United States of America, to Landlord at Landlord's address provided on the first page of this Lease, or to such other person or at such other place as Landlord may, from time to time, designate in writing.

4.2     Annual Base Rent Adjustments During the Term.  Base Rent shall be increased commencing on the first anniversary of the Rent Commencement Date, and continuing thereafter on each subsequent anniversary of the Rent Commencement Date during the Term, by an

amount equal to Two and One-Quarter Percent (2.25%) of the then current Base Rent. Landlord's delay or the failure of Landlord in computing or billing for any Base Rent adjustments will not impair the continuing obligation of Tenant to pay such Base Rent adjustments.

4.3   <u>Additional Rent</u>.   Any amounts payable by Tenant according to this Lease, other than Base Rent, will be deemed "Additional Rent", and shall be paid, unless otherwise provided herein, within thirty (30) days of Landlord's invoice therefore, without any deduction or offset whatsoever. If Tenant fails to pay any amounts due for Additional Rent, Landlord will have all the rights and remedies available to Landlord on account of Tenant's failure to pay Base Rent. The Base Rent and Additional Rent due under this Lease are collectively referred to hereinafter as "Rent".

**ARTICLE 5**
**OPERATING EXPENSES; TAXES**

5.1   <u>Operating Expenses</u>.   In addition to Base Rent, Tenant will be responsible for Tenant's Pro Rata Share of any and all Operating Expenses incurred by Landlord during each calendar year, or partial calendar year, during the Term (it being the intention of the parties that this Lease shall be "triple-net" to Landlord).

5.2   <u>Definitions</u>.   As used in this Lease, the term "Operating Expenses" means any and all costs related to the use, management, operation, maintenance and/or repair of the Property (any of which may be furnished by an affiliate of Landlord), whether ordinary or extraordinary, foreseen or unforeseen, including, without limitation: (a) the costs for (i) maintaining, repairing and replacing the systems and equipment serving the Building (or more than one premises in the Building) and Common Areas; (ii) providing Landlord's Insurance (as such term is defined below) and any other public liability, flood, terrorism, property damage, fire and extended coverage or other insurance for the Property required by any Mortgagee (as defined below) on the Property or as Landlord reasonably deems appropriate; (iii) total compensation and benefits (including premiums for workmen's compensation and other insurance) paid to or on behalf of employees; (iv) fire protection and fire hydrant charges; (v) license and permit fees; (vi) management fees; (vii) depreciation of equipment used in operating and maintaining the Property and rent paid for leasing such equipment and (viii) any other costs, charges, and expenses which under generally accepted accounting principles, consistently applied, would be regarded as maintenance and operating expenses; (b) the cost (amortized over such reasonable period as Landlord will determine), together with interest on the unamortized balance, of any capital improvements made to the Property by Landlord during the Term and (c) the cost of supplying any services and utilities to the Property to be provided by Landlord, including, without limitation, gas, electric, water and sewer service; security; cleaning and janitorial services; pest control, trash and debris removal, snow and ice removal, paving and landscaping services (as applicable).

Notwithstanding the preceding, the term "Operating Expenses" will not include: (x) any separately metered Utilities for the Premises as more fully set forth in Article 7 hereof, and/or (y) Property Taxes, Lease Taxes or Other Taxes (as such terms are defined below).

5.3   <u>Payment of Operating Expenses</u>.   Tenant shall timely pay Landlord for any amounts due for Operating Expenses within thirty (30) days after receipt of Landlord's invoice therefore. Notwithstanding the foregoing, at any time during the Term, at the option of Landlord, or if required by any Mortgagee of the Property, Landlord shall have the right to require Tenant to pay Landlord monthly one-twelfth (1/12th) of the estimated Operating Expenses (as reasonably determined by Landlord) due by Tenant under this Lease for any calendar year (or partial calendar year) during the Term, in which event, said amount shall be paid on or prior to the first day of each calendar month during the Term, together with Tenant's Monthly Base Rent payment. If the foregoing option is exercised by Landlord then, within ninety (90) days after the end of each calendar year, or as soon after such ninety (90) day period as practicable, Landlord shall furnish Tenant with a statement of the actual Operating Expenses owing by Tenant for such calendar year.   Such statement will be final and binding upon Tenant, unless Tenant objects to it in writing to Landlord within thirty (30) days after it is given to Tenant. In the event that Landlord's statement shows an underpayment by Tenant, Tenant shall pay any amount owing for Operating Expenses to Landlord within ten (10) days of Tenant's receipt of Landlord's statement.   In the event that Landlord's statement shows an overpayment by Tenant, then such

amount shall be credited to the next payment of Operating Expenses due by Tenant under this Lease.

5.4     Books and Records.     Provided that Tenant pays the amounts provided in Landlord's statement within the time period required above, Landlord agrees to make available to Tenant for review, at the Property, extracts from Landlord's books and records which are relevant to any items of Operating Expenses in dispute at Tenant's expense.

5.5     Proration Upon Termination.   If, for any reason other than the default of Tenant, this Lease ends on a day other than the last day of a calendar year, the amount of Operating Expenses payable by Tenant applicable to the calendar year in which this Lease ends will be calculated on the basis of actual expenses for the period up to the Termination Date.

5.6     Taxes.

(a)     Real Estate Taxes.   Throughout the Term, Tenant shall pay as "Additional Rent" its Pro Rata Share of any and all taxes and assessments, water rates and charges and other governmental charges, impositions, assessments and taxes, regular or special, assessed upon or imposed with respect to the ownership of and/or other taxable interests in the Property, by any federal, state or local governmental agency or authority, or any other taxing authority having jurisdiction over the Property, or any tax in substitution or in lieu thereof (collectively, "Real Estate Taxes"); provided that the term "Real Estate Taxes" shall not include any income, intangible, franchise, capital stock, estate or inheritance taxes or taxes imposed upon Landlord based upon the receipt of rentals.

(b)     Use and Occupancy Taxes.   Tenant shall pay any and all Philadelphia Use & Occupancy Taxes or any similar or substitute taxes imposed by the City of Philadelphia with respect to the Premises as Additional Rent.   Real Estate Taxes and Use and Occupancy Taxes are collectively referred to herein as "Property Taxes".

(c)     Payment of Property Taxes.   Tenant shall timely pay Landlord for any amounts due for Property Taxes within thirty (30) days after receipt of Landlord's invoice therefore. Notwithstanding the foregoing, at any time during the Term, at the option of Landlord, or if required by any Mortgagee of the Property, Landlord shall have the right to require Tenant to pay Landlord monthly one-twelfth (1/12th) of the estimated Property Taxes (as reasonably determined by Landlord) due by Tenant under this Lease for any calendar year (or partial calendar year) during the Term, in which event, said amount shall be paid on or prior to the first day of each calendar month during the Term, together with Tenant's Monthly Base Rent payment. If the foregoing option is exercised by Landlord then, within ninety (90) days after the end of each calendar year, or as soon after such ninety (90) day period as practicable, Landlord shall furnish Tenant with a statement of the actual Property Taxes owing for Tenant for such calendar year.   Such statement will be final and binding upon Tenant, unless Tenant objects to it in writing to Landlord within thirty (30) days after it is given to Tenant. In the event that Landlord's statement shows an underpayment by Tenant, Tenant shall pay any amount owing for Property Taxes to Landlord within ten (10) days of Tenant's receipt of Landlord's statement.  In the event that Landlord's statement shows an overpayment by Tenant, then such amount shall be credited to the next payment of Property Taxes due by Tenant under this Lease.

(d)     Lease Taxes.   If federal, state or local law now or hereafter imposes any tax, assessment, levy or other charge (other than any income tax) directly or indirectly upon Landlord or Tenant with respect to this Lease or the value thereof or upon Tenant's use or occupancy of the Premises, or upon any base rent, additional rent or other sums payable under this Lease or upon this transaction (all of which are herein called "Lease Taxes"), then Tenant shall pay, as Additional Rent, upon demand by Landlord, the amount of said Lease Taxes unless Tenant is prohibited by law from paying same, in which event the Base Rent due under this Lease shall be automatically increased by the amount of such Lease Taxes.

(e)     Other Taxes.   Tenant will pay promptly when due all sales, merchandise or personal property taxes on Tenant's personal property located at the Premises and any other taxes payable by Tenant, the non-payment of which might give rise to a lien on the Premises or Property or the Tenant's or Landlord's interest therein (collectively, "Other Taxes").

## ARTICLE 6
### INSURANCE

6.1    <u>Landlord's Insurance</u>.  At all times during the Term, Landlord will carry and maintain the following insurance (collectively, "Landlord's Insurance"): (a) Fire And Extended Coverage Insurance covering the replacement values of the Building and Common Areas, and the Building's systems and equipment, and (b) Commercial General Liability and Property Damage Insurance, in such amounts as are required by any Mortgagee on the Property, or as Landlord otherwise reasonably determines, the costs for which shall be included in Operating Expenses.

6.2    <u>Tenant's Insurance</u>.  At all times during the Term, Tenant will carry and maintain, at Tenant's expense, the following insurance, in the amounts specified below or such other amounts as Landlord may from time to time reasonably request, with insurance companies licensed to do business in the Commonwealth of Pennsylvania and having at least an "A" BEST rating, and on forms otherwise reasonably satisfactory to Landlord:

(a)    Commercial General Liability Insurance covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, Personal/Advertising Injury, Fire Legal, and Medical Payments at the following limits:

> $1,000,000 per occurrence; $3,000,000 general aggregate;
> $1,000,000 per occurrence Personal/Advertising Injury;
> $1,000,000 Products/Completed Operations aggregate;
> $100,000 Fire Legal Liability;
> $5,000 Medical Payments

Such insurance shall name Landlord and any other parties required by Landlord as "additional insureds" and shall not be cancelable except upon ten (10) days' prior written notice to Landlord without exculpation of the insurer in the event it fails to give such notice.  Such coverage shall be primary and non-contributory and be written on an "occurrence" basis.  If an "occurrence" basis form is not available, Tenant must purchase "tail" coverage for the most number of years available, and Tenant must also purchase "tail" coverage if the retroactive date of an "occurrence" basis form is changed so as to leave a gap in coverage for occurrences that might have occurred in prior years.  If a "claims made" policy is ever used, the policy must be endorsed so that Landlord is given the right to purchase "tail" coverage should Tenant for any reason not do so or if the policy is to be canceled for nonpayment of premium.  Any such payment by Landlord on behalf of Tenant shall be considered Additional Rent.

(b)    Workers' Compensation and Employers' Liability Insurance covering Tenant's employees, at the following limits:

| | |
|---|---|
| Workers' Compensation: | Statutory limits |
| Employers' Liability: | $1,000,000 each accident; |
| | $1,000,000 disease policy limit; |
| | $1,000,000 disease each employee |

Such coverage shall be placed as an actual Workers' Compensation policy, not as a health benefits policy, and shall be endorsed to include (i) a waiver of subrogation in favor of Landlord, and (ii) 10-days' prior written notice of cancellation to Landlord without exculpation of the insurer in the event it fails to give such notice.  Such coverage shall be primary and non-contributory.

(c)    All-Risk Property Insurance covering tenant improvements and betterments and all personal property of Tenant (including, but not limited to, Tenant's trade fixtures and equipment, furniture and furnishings) located on the Property with valuation at full replacement cost.

(d)    Plate Glass Insurance (if applicable), covering any plate glass located on the Interior Premises.

(e)    Business Interruption Insurance, for a period of not less than twelve (12) months.

6.3     Waiver of Subrogation.  Landlord and Tenant each waive any and all rights to recover against the other (or against the officers, directors, managers, shareholders, members, partners, joint venturers, employees or agents of such other party), for any loss or damage to such waiving party arising from any cause covered by any insurance required to be carried by such party pursuant to this Article 6 or any other insurance actually carried by such party. Landlord and Tenant, from time to time, will cause their respective insurers to issue appropriate waiver of subrogation rights endorsements to all policies of insurance carried in connection with the Property or the Premises or the contents of the Property or the Premises, but the provisions of this section shall be applicable regardless of whether such clause or endorsement shall have been obtained.  Tenant agrees to cause all other occupants or users of the Premises claiming by, under, or through Tenant to execute and deliver to Landlord such a waiver of claims and to obtain such waiver of subrogation rights endorsements.

6.4     Evidence of Coverage.  Tenant shall provide certificates for all insurance required hereunder, along with evidence of payment of the first year's premiums therefore, to Landlord prior to the date of this Lease.  Thereafter, Tenant shall annually provide Landlord with renewal certificates for all insurance required hereunder, along with evidence of payment of the premiums therefore, not less than thirty (30) days prior to the expiration date(s) of such policies.

6.5     Self -Insurance.  Notwithstanding anything contained herein to the contrary, for so long as SEPTA is the Tenant under this Lease, Tenant shall have the right, upon written notice to Landlord, to elect to self-insure all or any part of the insurance required by Tenant under Section 6.2 above.

6.6     Adequacy of Coverage.   Landlord, its agents and employees make no representation that the limits of liability specified to be carried by Tenant pursuant to this Article 6 are adequate to protect Tenant.  If Tenant believes that any of such insurance coverage is inadequate, Tenant will obtain, at Tenant's sole expense, such additional insurance coverage as Tenant deems adequate.

6.7     Certain Insurance Risks.  Tenant will not do or permit to be done any act or thing upon the Premises which would (a) jeopardize or be in conflict with insurance policies covering the Property or fixtures and property in the Property; (b) increase the current rate of insurance applicable to the Property or (c) subject Landlord to any liability or responsibility for injury to any person or persons or to property by reason of any business or operation being carried on upon the Premises. Tenant further agrees to comply, at its own cost and expense, with any recommendation, rule or regulation of any authorized insurance rating bureau which will enable Landlord to effect a reduction in the fire insurance rate on the Building of which the Interior Premises is a part or on the contents therein.

6.8     Tenant's Insurance Payments.  If, as a result of any act or omission by Tenant or violation of this Lease, the rate of insurance applicable to the Property or any insurance carried by Landlord is increased to an amount higher than it otherwise would have been, Tenant will, upon thirty (30) days written notice from Landlord to Tenant, reimburse Landlord for the entire amount of the increased cost of Landlord's insurance premiums as Additional Rent.  In any action or proceeding in which Landlord and Tenant are parties, a schedule or "make up" of rates for the Property or Premises issued by the body making fire insurance rates for the Property or Premises will be presumptive evidence of the facts stated and of the several items and charges in the fire insurance rate then applicable to the Property or Premises.

## ARTICLE 7
## UTILITIES

Tenant shall pay, directly to the provider thereof, on or before the date due, any and all separately metered utilities serving the Premises (or any portion thereof) including, without limitation, water, sewer service, gas, heat or electric, as applicable (collectively, "Utilities"), at the rates set by the respective local utility companies.  Tenant shall pay its Pro Rata Share of any non-separately metered Utilities as part of Operating Expenses. All other Utilities shall be paid by Tenant as part of Operating Expenses. Tenant acknowledges that Landlord is required to report the energy consumption for the Premises to the City of Philadelphia ("City") each year and agrees to provide Landlord with: (i) copies of the bills for any separately metered Utilities, and (ii) any other information relating the consumption of any separately metered Utilities at the Premises, required for Landlord to comply with its reporting obligations to the City, promptly,

but in no event more than ten (10) business days, after request therefore from Landlord. Should Tenant fail to comply with its obligations under this Article 7, then Tenant shall be liable for any and all fines, late fees, penalties and other amounts, if any, payable by Landlord to the City as result of such non-compliance, as Additional Rent.

Each utility company now providing services to the Premises is referred to as a "Current Service Provider". Landlord shall have the right, with Tenant's consent (not to be unreasonably withheld), at any time, and from time to time, during the Term to either contract for any utility service from a different company providing such service (each such company shall hereinafter be referred to as an "Alternate Service Provider") or continue to contract for such service from the Current Service Provider. Tenant shall cooperate with Landlord, the Current Service Provider, and any Alternate Service Provider at all times and, as reasonably necessary, shall allow Landlord, Current Service Provider and any Alternate Service Provider reasonable access to the utility lines, feeders, risers, wiring, and any other systems, apparatus, equipment and machinery within the Interior Premises. Landlord shall in no way be liable or responsible for any loss, damage, or expense that Tenant may sustain or incur by reason of any change, failure, interference, disruption, or defect in the supply or character of any Utilities furnished to the Premises, or if the quantity or character of the Utilities supplied by the Current Service Provider or any Alternate Service Provider is no longer available or suitable for Tenant's requirements, and no such change, failure, defect, unavailability, or unsuitability shall constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of Rent, or relieve Tenant from any of its other obligations under this Lease.

## ARTICLE 8
## USE OF PREMISES; OPERATION OF BUSINESS

8.1   Use of Premises.   The Interior Premises will be used and occupied for the purposes described in Section 1(g). The Exterior Premises shall be used solely for its designated purposes (*i.e.*, loading, parking, etc.) in connection with the Tenant's use and occupancy of the Interior Premises. The Premises shall not be used or occupied, in whole or in part, for any other purposes without the prior written consent of Landlord, which consent shall not be unreasonably withheld. It is understood and agreed that Landlord does not warrant or undertake that Tenant shall be able to obtain a permit under any zoning ordinance or regulation for such use as Tenant intends to make of the Premises, and nothing in this Lease contained shall obligate Landlord to assist Tenant in obtaining said permit. Tenant further agrees that in the event a permit cannot be obtained by Tenant under any zoning ordinance or regulation, this Lease shall not terminate without Landlord's consent, and Tenant shall use the Premises only in a manner permitted under such zoning ordinance or regulation.

8.2   Abandonment.   Tenant shall not remove, attempt to remove or manifest an intention to remove Tenant's goods or property from or out of the Interior Premises (otherwise than in the ordinary and usual course of business, without having first paid and satisfied Landlord for all Rent which may become due during the remaining Term of this Lease.

8.3   Operation of Business.   Tenant shall comply with all laws, ordinances, rules, regulations and codes of all municipal, county, state and federal authorities and agencies pertaining to Tenant's business and/or any use or occupation of the Premises during the Term, including without limitation, the Americans with Disabilities Act of 1990 and all Environmental Laws (as such term is defined below) (collectively, "Applicable Laws"). No use shall be made or permitted to be made of the Premises, nor acts done, which will increase the existing rate of insurance upon the Property in which said Premises may be located, or cause a cancellation of any insurance policy covering said Property, or any part thereof, and Tenant shall use every reasonable precaution against fire and have all fire extinguishers inspected annually by a qualified contractor. Tenant shall not sell, or permit to be kept, used, or sold, in or about said Premises, any article which may be prohibited by the standard form of fire insurance policies. Tenant shall not commit, or suffer to be committed, any waste upon said Premises or any public or private nuisance, or other act or thing which may disturb the quiet enjoyment of Landlord or any other tenant on the Property, nor, without limiting the generality of the foregoing, shall Tenant allow said Premises to be used for any improper, immoral, unlawful or objectionable purpose, or for the keeping, storing or selling of intoxicating liquors, or for any kind of eating house, or for sleeping purposes, or for washing clothes, or cooking therein, and nothing shall be prepared, manufactured or mixed in said Premises which might emit any offensive odor. Tenant

shall not use or operate any machinery in a manner that damages the Building and shall not place any weights in any portion of the Interior Premises beyond the safe carrying capacity of the structure. Tenant shall not use or permit to be used on the Premises any handtrucks, dollies and/or any other wheeled vehicles unless they are equipped with rubber or urethane tires, or the like.

## ARTICLE 9
## ENVIRONMENTAL COMPLIANCE/HAZARDOUS MATERIALS

9.1    Definitions.  "Hazardous Materials" shall mean any material, substance or waste that is or has the characteristic of being hazardous, toxic, ignitable, reactive or corrosive, including, without limitation, petroleum, PCBs, asbestos, materials known to cause cancer or reproductive problems and those materials, substances and/or wastes, including infectious waste, medical waste, and potentially infectious biomedical waste, which are now or later become regulated by any local, state or federal authority or agency, including, but not limited to, toxic mold, including without limitation stachbotrys chartarum ("black mold"), spore, myofaxins, endotoxins, bacterial cells or any other mold or fungus, substances defined as "hazardous substances," "hazardous materials," "toxic substances" or "hazardous wastes" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601, *et seq.*; the Hazardous Materials Transportation Act, 49 U.S.C. §1801, *et seq.*; the Resource Conservation and Recovery Act, or any other law, ordinance or regulation dealing with underground storage tanks and/or the handling, generation, storage, use or disposal of Hazardous Materials or in the regulations adopted, published and/or promulgated pursuant to said laws, and/or in any other environmental law, regulation or ordinance now existing or hereinafter enacted related to health, safety or the environment (collectively, "Environmental Laws").

9.2    Prohibition on the Use of Hazardous Materials by Tenant at the Premises.  Tenant hereby agrees that Tenant and Tenant's officers, directors, shareholders, employees, representatives, agents, contractors, subcontractors, successors, assigns, sublessees, concessionaires, customers, invitees and any other occupants or users of the Premises (for purposes of this Article 9, referred to collectively herein as "Tenant's Representatives") shall not use, handle, generate, manufacture, refine, produce, process, store or dispose of, on, under or about the Premises or transport to or from the Premises any Hazardous Materials, except for those Hazardous Materials used in connection with the operation of Tenant's business listed on Exhibit C attached hereto (collectively, the "Permitted Substances") and de minimus amounts of over the counter cleaning products used by Tenant in connection with the cleaning of the Interior Premises, provided such Hazardous Materials are used in accordance with Applicable Laws and Tenant takes all necessary precautions to prevent spills of same on or about the Property (collectively, "Permitted Materials").  With respect to any Permitted Materials, Tenant shall, at Tenant's own expense procure, maintain, and comply with all conditions of, any permits, licenses and other governmental and regulatory approvals required for the storage, use or disposal thereof by Tenant or any of Tenant's Representatives at the Premises, including without limitation, the discharge of (appropriately treated) materials or wastes into or through any sanitary sewer serving the Premises and shall, at its own expense, comply with all present and future Environmental Laws and the regulations promulgated by the Commonwealth of Pennsylvania, the United States Government and its agencies with respect thereto, and shall make all submissions to, provide all information to, and comply with all requirements of, the bureau and agencies of the Commonwealth of Pennsylvania and the United States Government with respect to such Permitted Materials.

9.3    Notice of Hazardous Materials Matters.    Tenant shall immediately notify Landlord in writing of: (a) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Environmental Laws; (b) any claim made or threatened by any person against the Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises and (c) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials existing on or removed from the Premises including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters.  Tenant shall also supply Landlord as promptly as possible, and in any event within five (5) business days after Tenant first receives or sends the same, with copies

of all claims, reports, complaints, notices, warnings or asserted violations relating in any way to Hazardous Materials at the Premises or Tenant's use thereof.

9.4     Remediation.   If at any time during the Term, there occurs any spill, contamination or discharge of Hazardous Materials at the Premises or otherwise on the Property as a result of any act or omission of Tenant or Tenant's Representatives (collectively, "Tenant's Contamination"), then Tenant, at Tenant's sole cost and expense, shall promptly and diligently remove such Hazardous Materials from the Premises or the Property or the groundwater underlying the Property in accordance with the requirements of the applicable Environmental Laws and industry standards then prevailing in the Hazardous Materials management and remediation industry in the Commonwealth of Pennsylvania; provided, however, that Tenant shall not take any required remedial action in response to any Tenant's Contamination in or about the Premises or Property, or enter into any settlement agreement, consent, decree or other compromise in respect to any claims relating to any Tenant's Contamination without first notifying Landlord of Tenant's intention to do so and affording Landlord the opportunity to appear, intervene or otherwise appropriately assert and protect Landlord's interest with respect thereto.

9.5     Landlord's Rights.   In addition to all other rights and remedies of the Landlord hereunder, if Tenant does not promptly and diligently take all steps to prepare and obtain all necessary approvals of a remediation plan for any Tenant's Contamination, and thereafter commence the required remediation of any Hazardous Materials released or discharged in connection with Tenant's Contamination within ten (10) days after Landlord has reasonably approved Tenant's remediation plan and all necessary approvals and consents have been obtained and thereafter continue to prosecute said remediation to completion in accordance with the approved remediation plan, then Landlord, at its sole discretion, shall have the right, but not the obligation, to cause said remediation to be accomplished, and Tenant shall reimburse Landlord upon demand for all amounts paid by Landlord (together with interest on said amounts at the highest lawful rate until paid).   Tenant shall promptly deliver to Landlord copies of hazardous waste manifests reflecting the legal and proper disposal of all Hazardous Materials removed from the Premises or Property as part of Tenant's remediation of any Tenant's Contamination.

9.6     End of Term.   Tenant shall deliver the Premises to Landlord in Clean (as such term is defined below) condition at the end of the Term.   For purposes of this Lease, the Premises shall not be deemed "Clean" until Tenant has fully and completely removed and remediated any and all Tenant Contamination, whether or not required by Applicable Laws, to the reasonable satisfaction of Landlord. Tenant acknowledges that Landlord has relied on Tenant's undertaking to Clean the Premises at the end of the Term in agreeing to enter into this Lease.

9.7     Indemnification by Tenant.   Tenant shall indemnify, defend (by counsel reasonably acceptable to Landlord), protect, hold and save Landlord and Landlord's members, managers, employees, agents, successors and assigns, free and harmless from and against any and all claims, actions, suits, proceedings, causes of action, liabilities, fines, penalties, forfeitures, direct losses or expenses (including, without limitation, reasonable attorneys' fees and costs), or death of or injury to any person or damage to any property of any kind whatsoever, caused, arising from or in any way connected, in whole or in part, directly or indirectly to: (a) any Tenant's Contamination; (b) Tenant's or Tenant's Representatives failure to comply with any Environmental Laws with respect to the Premises; or (c) any breach of the provisions of this Article 9 by Tenant (collectively, the "Tenant Indemnified Matters").   Tenant's obligations hereunder shall include, without limitation, and whether foreseeable or unforeseeable, all costs of any required or necessary repair, clean-up or detoxification or decontamination of the Premises or Property, and the preparation, payment, submission and implementation of any closure, remedial action or other required plans and/or financial assurances in connection therewith. For purposes of the indemnity provisions hereof, any acts or omissions of Tenant or Tenant's Representatives whether or not they are negligent, intentional, willful or unlawful shall be strictly attributable to Tenant.

9.8     Exclusivity.   The obligations and liabilities undertaken by, and indemnifications given by, Tenant under this Article 9 shall be the exclusive provisions under this Lease applicable to the subject matter treated in this Article 9, and any other conflicting or inconsistent provisions contained in this Lease shall not apply with respect to said subject matter.

9.9     Survival and Duration of Obligations.     All representations, warranties, obligations, and indemnities made or given under this Article 9 shall survive the expiration or earlier termination of this Lease for so long as Landlord remains or could be held responsible for any Tenant Indemnified Matters.

## ARTICLE 10
## ASSIGNMENT AND SUBLETTING

10.1     Tenant, for itself, its legal representatives, successors and assigns, covenants that it will not assign, mortgage or encumber this Lease, nor sublease, or permit the Premises or any part of the Premises to be used or occupied by others, without the prior written consent of Landlord in each instance, which consent shall not be unreasonably withheld by Landlord.

10.2     Any assignment or sublease in violation of this Article 10 will be void.  If this Lease is assigned, or if the Interior Premises or any other part of the Premises are subleased or occupied by anyone other than Tenant in violation of Section 10.1 above, Landlord may, after default by Tenant, collect rent from the assignee, subtenant or occupant, and apply the net amount collected to the Rent due hereunder and no such assignment, sublease, occupancy or collection will be deemed (a) a waiver of the provisions of this Article 10; (b) the acceptance of the assignee, subtenant or occupant as tenant or (c) to release Tenant from the further performance by Tenant of covenants on the part of Tenant contained in this Lease.

10.3     The consent by Landlord to an assignment or sublease will not be construed to relieve Tenant from obtaining Landlord's prior written consent in writing to any further assignment or sublease.  No permitted subtenant will assign or encumber its sublease or further sublease all or any portion of its subleased space, or otherwise permit the subleased space or any part of its subleased space to be used or occupied by others, without Landlord's prior written consent in each instance.

10.4     Tenant shall remain liable for all of the terms and provisions of this Lease notwithstanding any permitted assignment of this Lease or subletting of the Premises.

## ARTICLE 11
## COMMON AREAS

As used in this Lease, the term "Common Areas" means, without limitation, any hallways, entry-ways, driveways, walkways, terraces, trash facilities, parking areas, loading docks, elevators, stairways and all other areas on the Property which are now or hereafter provided and designated from time to time by Landlord for the general nonexclusive use and convenience of Tenant, Landlord, and other tenants of the Property and their respective employees, customers, invitees, licensees or other visitors.  Landlord grants Tenant, its employees, invitees, licensees and other visitors a nonexclusive license for the Term to use the Common Areas in common with others entitled to use the Common Areas including, without limitation, Landlord and other tenants of the Property and their respective employees, customers, invitees, licensees and visitors, and other persons authorized by Landlord, subject to the terms and conditions of this Lease.  Tenant shall comply with all rules and regulations of Landlord promulgated for the Property.  Without advance notice to Tenant (except with respect to matters covered by subsection (a) below for which ten (10) days prior written notice shall be given) and without any liability to Tenant in any respect, Landlord will have the right to:

(a)     establish and enforce all reasonable rules and regulations concerning the maintenance, management, use and operation of the Property;

(b)     close off any of the Common Areas to whatever extent required in the opinion of Landlord or its counsel to prevent a dedication of any of the Common Areas, or the accrual of any rights by any person or the public to the Common Areas, provided such closure does not deprive Tenant of the substantial benefit and enjoyment of the Interior Premises;

(c)     temporarily close any of the Common Areas for maintenance, alteration or improvement purposes;

(d)     select, appoint or contract with any person for the purpose of operating and maintaining the Common Areas, subject to such terms and at such rates as Landlord deems reasonable and proper;

(e)     change the size, use, shape or nature of any such Common Areas, provided such change does not deprive Tenant of the substantial benefit and enjoyment of the Interior Premises; and

(f)     erect one or more additional buildings on the Common Areas, or expand the existing Building to cover a portion of the Common Areas.

Notwithstanding the foregoing, Tenant and Landlord acknowledge and agree that (i) Tenant shall have exclusive use of any and all parking spaces located within the Exterior Premises during the Term, and (ii) Tenant shall not be permitted to use any other parking spaces located within the Common Areas, such spaces being reserved by Landlord for the sole and exclusive use of Landlord and any other occupants of the Building.

## ARTICLE 12
### LANDLORD'S SERVICES

12.1   _Landlord's Maintenance and Repairs_.  During the Term, Landlord shall (i) maintain and repair the roof as necessary to keep same in reasonably good order and condition, during the Term, the costs for which shall NOT be included in Operating Expenses and (ii) shall maintain and repair the foundation, structural walls and other structural components of the Building, the costs for which shall be included in Operating Expenses. As a condition precedent to all obligations of Landlord under this Section 12.1, Tenant must notify Landlord of the need for such maintenance and repairs in writing.

Notwithstanding the foregoing, Landlord's obligations hereunder shall not include: (1) any damage occasioned by the negligent or willful acts or omissions of Tenant or Tenant Parties (as such term is defined below); (2) any damage occasioned by the failure of Tenant to perform or comply with any terms, conditions or covenants in this Lease or (3) any alterations or improvements required by Tenant's use and occupancy of the Premises, which damage, improvements and alterations will be repaired and/or performed by Landlord at Tenant's sole expense.  Upon ten (10) days' notice from Landlord, Tenant will reimburse Landlord for the reasonable costs which Landlord incurs in performing the repairs and other services required as a result of subsections (1), (2) and (3) above, as Additional Rent.

12.2   _Limitation on Liability_.  Except as expressly provided herein, Landlord will not be in default under this Lease, or be liable to Tenant or any other person, for direct or consequential damage or otherwise, resulting from, nor will the Rent be abated by reason of: (a) the temporary installation, use, or interruption of use of any equipment in connection with the furnishing of any of services Landlord has agreed to supply under this Lease; (b) failure to furnish, or delay in furnishing, any such services unless such failure or delay is caused solely by the negligence or willful misconduct of Landlord or (c) the limitation, curtailment, rationing or restrictions by utility companies on use of water, electricity, gas or any other form of energy serving the Premises or the Property.

## ARTICLE 13
### TENANT'S MAINTENANCE AND REPAIRS

(a)     Subject  to Landlord's obligations in Article 12 above, Tenant will, at all times during the Term, keep and maintain, at its own cost and expense, in good working order, condition, and repair, the Premises (including, without limitation, all improvements, fixtures, heating, ventilation, air conditioning, plumbing, mechanical and electrical systems, equipment and apparatus, windows, doors, entry-ways, sidewalks, parking areas, loading docks and stairways servicing the Premises), and will make all repairs, renewals and replacements, ordinary or extraordinary, foreseen or unforeseen, to any part thereof or the entirety thereof should it become necessary. Any repairs, replacements and renewals and/or labor or materials performed and/or furnished in, on or about the Premises by Tenant shall be performed or furnished in strict compliance with all Applicable Laws.

(b)     Tenant shall, at its own cost and expense, be responsible for the removal of all trash from the Interior Premises and for regular cleaning, pest control and janitorial service to the Interior Premises.

(c)     Tenant shall, at its own cost and expense, take out and maintain in full force and effect, throughout the term of this Lease and any extension or renewal thereof, a standard

maintenance contract for the HVAC system(s) serving the Interior Premises, providing a minimum of two (2) inspections per year.

(d)     Tenant shall also be responsible for the condition of the Exterior Premises including, the pavement, parking areas, curbs, sidewalks, loading doors and docks, cellar doors, awnings and other erections in the pavement located within the Exterior Premises during the Term of this Lease and shall keep the sidewalks, driveways and parking areas located within the Exterior Premises free from trash, debris, obstruction, snow and ice, and shall be, and hereby agrees, that Tenant is solely liable for any accidents due or alleged to be due to their defective condition, or to any obstruction or accumulations of debris, snow and ice.

(e)     Upon the expiration or earlier termination of this Lease, Tenant will surrender the Premises to Landlord in good working order, condition, and repair, ordinary wear and tear excepted.

(f)     In the event of the failure of Tenant promptly to perform the covenants of this Article 13, or any other section of this Lease containing Tenant's repair and maintenance obligations, Landlord may, at the sole option of Landlord, go upon the Premises and perform such covenants, the cost thereof to be charged to Tenant as Additional Rent.

## ARTICLE 14
## ALTERATIONS; MECHANIC'S LIENS

14.1     Alterations.  Tenant shall not alter, improve, repair or change the Premises or perform any work (collectively, "Alterations") to the Premises without Landlord's prior written consent.  All Tenant Alterations, whether temporary or permanent in character, made in or upon the Premises whether by or on behalf of Tenant (other than Tenant's movable furnishings, furniture, trade fixtures and equipment, signs and other personal property), will be deemed Landlord's property and, at the end of the Term, will remain on the Premises without compensation to Tenant. Notwithstanding the foregoing, upon written notice from Landlord, Tenant, at its sole cost and expense, will, at the expiration of the Term, or within thirty (30) days of any earlier termination of this Lease, remove all Alterations made to the Premises and upon such removal, Tenant, at its sole cost and expense, will immediately and fully repair any damage to the Premises and Property occasioned by such removal.  All Alterations shall be performed in a good and workmanlike manner.  Tenant shall not allow any mechanic's lien or other claim to be filed against the Premises or the Property in connection with any Alterations, and if any such lien or claim is filed, Tenant shall have it promptly removed.  Prior to commencement of any Alterations, Tenant shall (a) obtain all necessary permits and approvals required for such work; (b) obtain Landlord's approval of all plans and specifications for such work; and (c) provide Landlord with evidence that each contractor has adequate workers compensation insurance and general liability insurance in the amount of at least $2,000,000.00 for injury or death to any person or persons in any one occurrence and property damage to the limit of $500,000.00, together with a certificate from the insurer, who shall be reasonably satisfactory to Landlord, to the effect that such insurance may not be canceled or substantially modified without at least ten (10) days' prior written notice to. All Tenant Alterations comply with all other requirements of this Lease with respect to work performed by Tenant on the Premises, and such other conditions as Landlord may reasonably require.

14.2     Liens.  Tenant shall pay or cause to be paid all costs and charges for work done by it or caused to be done by it in or to the Premises, and for all materials furnished for or in connection with such work.  Tenant will indemnify Landlord against, and hold Landlord, the Premises and the Property free, clear and harmless of and from, all mechanic's liens and claims of liens, and all other liabilities, liens, claims, and demands, on account of such work.  If any such lien, at any time, is filed against the Premises or any part of the Property, Tenant will cause such lien to be discharged of record within twenty (20) days after notice to Tenant of the filing of such lien.  If a final judgment establishing the validity or existence of a lien for any amount is entered, Tenant will pay and satisfy the same at once. If Tenant fails to pay any charge for which a mechanic's lien has been filed as provided above, Landlord may, at its option, pay such charge and related costs and interest, and the amount so paid, together with reasonable attorneys' fees incurred in connection with such lien, will be immediately due from Tenant to Landlord as Additional Rent.  Nothing contained in this Lease will be deemed the consent or agreement of Landlord to subject Landlord's interest in the Property to liability under any mechanic's or other lien law.  If Tenant receives notice that a lien has been or is about to be filed against the Premises or the Property or any action affecting title to the Property has been commenced on account of

work done by or for or materials furnished to or for Tenant, it will immediately give Landlord written notice of same.  Except for repairs to be made in response to an emergency, at least five (5) days prior to the commencement of any work (including, but not limited to, any maintenance, repairs or Alterations) in or to the Premises, by or for Tenant, Tenant will give Landlord written notice of the proposed work and the names and addresses of the persons supplying labor and materials for the proposed work.  Landlord will have the right to post notices of non-responsibility or similar notices on the Premises in order to protect the Premises against any such liens.

## ARTICLE 15
## END OF TERM

At the expiration or earlier termination of this Lease, Tenant will promptly quit and peaceably surrender the Premises to Landlord broom clean and in good and sanitary order, condition, and repair, ordinary wear and tear excepted, and deliver to Landlord, at its office, all keys and security alarm codes, if any, for the Interior Premises. At the expiration or earlier termination of this Lease, Tenant shall remove from the Premises any Alterations required to be removed by Tenant pursuant to the terms of Article 14 above, and all of Tenant's trade fixtures and equipment (including racking), furniture, furnishing, signs and other personal property, whether or not such items are fastened to the Interior Premises; provided, however, that Tenant will not remove any such items without Landlord's written consent (not to be unreasonably withheld) if the removal of such items will, in the opinion of a reputable engineer, result in impairing the structural strength of the Interior Premises or Building.  Tenant will fully repair any damage occasioned by the removal of any of Tenant's trade fixtures and equipment, furniture, furnishing, signs and other personal property and/or any Alterations required to be removed by Tenant pursuant to the terms of this Lease. All of Tenant's trade fixtures and equipment, furniture, furnishing, signs and other personal property and/or any Alterations required to be removed by Tenant at the end of the Term pursuant to the terms of this Lease, and which are not so removed by Tenant, will be deemed conclusively to have been abandoned and may be appropriated, sold, stored, destroyed or otherwise disposed of by Landlord without notice to Tenant or any other person and without obligation to account for them; and Tenant will pay Landlord for all expenses incurred in connection with such property including, but not limited to, any off-site storage fees and the cost of repairing any damage to the Property or Premises caused by the removal of such property as Additional Rent.   Tenant's obligation to observe and perform the covenants contained in this Article 15 will survive the expiration or earlier termination of this Lease.

## ARTICLE 16
## EMINENT DOMAIN

16.1    The term "total taking" means the taking of the fee title or Landlord's master leasehold estate by right of eminent domain or other authority of law, or a voluntary transfer under the threat of the exercise of the right of eminent domain or other authority, to so much of the Premises or Property as is necessary for Tenant's occupancy of the Interior Premises, that the Interior Premises are not suitable for the Permitted Use thereafter.  The term "partial taking" means the taking of any portion of the Premises or Property which does not constitute a total taking of the Interior Premises.

16.2    If a total taking occurs during the Term, this Lease will terminate as of the date of the taking. The phrase "date of the taking" means the date of taking actual physical possession by the condemning authority or such earlier date as the condemning authority gives notice that it is deemed to have taken possession.

16.3    If a partial taking occurs during the Term, Landlord may elect to cancel this Lease by written notice given to Tenant within thirty (30) days after the date of the taking, and this Lease will terminate on the date of the taking.  If the Lease is not so terminated, this Lease will terminate as to the portion of the Premises taken as of the date of the taking, but continue in full force and effect as to the remainder of the Premises, and the Monthly Base Rent payable by Tenant for the balance of the Term will be abated in the proportion that the leasable area of the Interior Premises taken bears to the leasable area of the Interior Premises immediately prior to such taking.

16.4    All compensation and damages awarded for the taking of the Premises, any portion of the Premises, or the whole or any portion of the Property will belong to Landlord and Tenant will not have any claim or be entitled to any award for diminution in value of its rights under this Lease or for the value of any unexpired term of this Lease.  Tenant hereby waives all claims against Landlord by reason of the complete or partial taking of the Premises; provided, however, that Tenant may make its own claim for any separate award that may be made under the Eminent Domain Code or any other law against the condemning authority for Tenant's loss of business or for the taking of or injury to Tenant's improvements, or on account of any cost or loss Tenant may sustain in the removal of Tenant's trade fixtures and equipment, furniture and furnishing, or as a result of any alterations, modifications, or repairs which may be reasonably required by Tenant in order to place the remaining portion of the Premises not so condemned in a suitable condition for the continuance of Tenant's occupancy, provided same shall in no way affect or detract from any monetary awards to be received by Landlord and/or any other rights of Landlord against the condemning authority.

If this Lease is terminated pursuant to the provisions of this Article 16, then all Monthly Base Rent and other charges payable by Tenant to Landlord under this Lease will be paid up to the date of the taking and Landlord and Tenant will be released from all further obligation and liability under this Lease, except as expressly provided otherwise herein.

## ARTICLE 17
## DAMAGE AND DESTRUCTION

17.1    Tenant shall give to Landlord prompt written notice of any accident, fire or damage occurring on or to the Premises.

17.2    If the Premises or the portion of the Property necessary for Tenant's occupancy of the Interior Premises is damaged or destroyed during the Term by any casualty insurable under standard fire and extended coverage insurance policies, not occurring through fault or negligence of Tenant or Tenant Parties, then Landlord will repair or rebuild the Interior Premises to substantially the condition in which the Interior Premises were immediately prior to such destruction; provided, however, that Landlord's obligations under this Article 17 will not exceed the lesser of: (a) with respect to the Interior Premises, the scope of building standard improvements existing as of the Commencement Date or (b) the extent of the insurance proceeds actually received and made available to Landlord for such repairs.

17.3    The Monthly Base Rent will be abated proportionately during any period in which, by reason of any damage or destruction not occasioned by the fault or negligence of Tenant or Tenant Parties, there is a substantial interference with the operation of the Permitted Use. Such abatement will be proportional to the measure of business in the Interior Premises which Tenant may be required to discontinue.   The abatement will continue for the period commencing with such destruction or damage and ending on the date that is the earlier of: (a) the date of completion by the Landlord of such work, repair, or reconstruction as Landlord is obligated to do hereunder to the Interior Premises or (b) the date Tenant resumes full operation of its business.

17.4    If the Premises, or the portion of the Property necessary for Tenant's occupancy of the Interior Premises, is damaged or destroyed: (a) to the extent of ten percent (10%) or more of the then replacement value of either; (b) in the last year of the Term; (c) by a cause or casualty other than those covered by fire and extended coverage insurance or (d) to the extent that it would take, in Landlord's opinion, in excess of one hundred eighty (180) days to complete the requisite repairs, then Landlord may terminate this Lease.  If this Lease is not terminated pursuant to the preceding sentence, this Lease will remain in full force and effect.  Landlord's election to terminate under this paragraph will be exercised by written notice to Tenant given within ninety (90) days after Landlord's receipt of notice of the damage or destruction.  Such notice will set forth the effective date of the termination of this Lease.

17.5    Upon the completion of any such work, repair, or restoration by Landlord, Tenant will repair and restore all other parts of the Premises including, without limitation, all Alterations and signs installed by Tenant.

17.6    If this Lease is terminated pursuant to the provisions of this Article 17, then all Monthly Base Rent and other charges payable by Tenant to Landlord under this Lease will be

paid up to the effective date of the termination of this Lease, and Landlord and Tenant will then be released from all further obligation and liability under this Lease, except as otherwise expressly provided herein.

17.7    Landlord shall not be liable for any damage, compensation or claim by reason of inconvenience or annoyance arising from the necessity of repairing any portion of the Building or Property, the interruption in the use of the Premises, or the termination of this Lease by reason of the destruction of the Premises, except as expressly provided in this Article 17.

## ARTICLE 18
## SUBORDINATION

18.1    <u>General</u>.   This Lease and Tenant's rights under this Lease are subject and subordinate to any ground or underlying lease, mortgage, indenture, deed of trust or other similar lien encumbrance, together with any renewals, extensions, modifications, consolidations and replacements of such lien encumbrance, now or after the Commencement Date, affecting or placed, charged or enforced against all or any portion of the Property or Premises or any interest of Landlord in them or Landlord's interest in this Lease and the leasehold estate created by this Lease (each, a "Mortgage"), except to the extent any such instrument will expressly provide that this Lease is superior to such instrument.   This provision will be self-operative and no further instrument of subordination will be required in order to effect it.   Nevertheless, Tenant will execute, acknowledge and deliver to Landlord, at any time and from time to time, upon demand by Landlord, such documents as may be requested by Landlord, or the holder of any Mortgage (each a, "Mortgagee"), to confirm or effect any such subordination.   If Tenant fails or refuses to execute, acknowledge and deliver any such document within thirty (30) days after written demand, Landlord, its successors and assigns will be entitled to execute, acknowledge and deliver any and all such documents for and on behalf of Tenant.   Nothing herein shall be deemed to waive or limit any other rights and remedies of Landlord under this Lease for Tenant's breach of the provisions of this Section 18.1.

18.2    <u>Attornment</u>.   Tenant agrees that in the event that any Mortgagee succeeds to Landlord's interest in the Premises, Tenant will pay to such Mortgagee all Rents subsequently payable under this Lease.   Further, Tenant agrees that in the event of the enforcement by any Mortgagee of the remedies provided for by law or by such Mortgage, Tenant will, upon request of any person or party succeeding to the interest of Landlord as a result of such enforcement, automatically become the tenant of and attorn to such successor in interest without change in the terms or provisions of this Lease; provided that such successor in interest will not be bound by any payment of Rent for more than one month in advance except prepayments in the nature of security for the performance by Tenant of its obligations under this Lease, which are actually received by such successor.   In addition, such successor will not be liable to Tenant for any default of Landlord occurring prior to the date such successor takes possession of the Property or Premises unless such default shall be continuing.   Upon request by such successor in interest and without cost to Landlord or such successor in interest, Tenant will execute, acknowledge and deliver an instrument or instruments confirming the attornment.   If Tenant fails or refuses to execute, acknowledge and deliver any such document within thirty (30) days after written demand, Landlord, its successors and assigns will be entitled to execute, acknowledge and deliver any and all such documents for and on behalf of Tenant.   Nothing herein shall be deemed to waive or limit any other rights and remedies of Landlord, or such successor in interest, under this Lease for Tenant's breach of the provisions of this Section 18.2.

## ARTICLE 19
## ENTRY BY LANDLORD

Landlord, its agents, representatives, employees, and contractors may enter the Interior Premises at any time in response to an emergency and at reasonable hours following reasonable notice to Tenant's Representative, and accompanied by an employee of SEPTA designated by such Representative, to: (a) inspect the same; (b) exhibit the same to prospective purchasers, lenders or tenants; (c) determine whether Tenant is complying with all its obligations in this Lease; (d) supply any service which this Lease obligates Landlord to provide to Tenant; (e) post notices of non-responsibility or similar notices; (f) make repairs required of Landlord under the terms of this Lease or repairs to any adjoining space or utility services or make repairs,

alterations or improvements to any other portion of the Property or (g) for any other reasonable purposes including to gain access to any facilities or utilities servicing the other tenants in the Building. Landlord will at all times have and retain a key with which to unlock all of the doors in, on, or about the Interior Premises. Landlord will have the right to use any and all means which Landlord may deem proper to open doors in and to the Interior Premises in an emergency in order to obtain entry to the Interior Premises if Tenant is not present. Any entry to the Interior Premises obtained by Landlord by any means permitted under this Article 19 will not under any circumstances be construed or deemed to be a forcible or unlawful entry into or a detainer of the Premises or an eviction, actual or constructive, of Tenant from the Premises, or any portion of the Premises, nor will any such entry entitle Tenant to damages or an abatement of Rent, or other charges which this Lease requires Tenant to pay. Landlord shall have free and unrestricted access to the Exterior Premises at all times during the Term, provided such access shall not affect the Tenant's Permitted Use of the Interior Premises. For purposes of this Article 19, the initial Representative for SEPTA shall be: John Wojciechowski; Phone: 267-207-4808; Email: JWojciechows@septa.org.

## ARTICLE 20
## WAIVER AND RELEASE

20.1    Tenant Indemnification. Tenant will neither hold nor attempt to hold Landlord or its officers, members, managers, employees, or agents liable for, and Tenant will indemnify and hold harmless Landlord, its officers, members, managers, employees, or agents from and against, any and all demands, claims, causes of action, fines, penalties, damages (including consequential damages), liabilities, judgments, and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with or arising from: (a) the Permitted Use or any other use or occupancy made of the Premises by Tenant during the Term; (b) any activity, work or thing, done, permitted or suffered, by Tenant or any person claiming under Tenant, or the contractors, agents, officers, employees, guests, visitors or other invitees of Tenant or of any such persons (collectively, "Tenant Parties") in or about the Premises or Property, or any portion thereof; (c) any acts, omissions or negligence, of Tenant or any Tenant Parties; (d) any breach, violation or nonperformance, by Tenant or any Tenant Parties of any term, covenant or provision of this Lease or any Applicable Laws and (e) any injury or damage to the person, property or business of Tenant or any Tenant Parties or any other person entering upon the Property under the express or implied invitation of Tenant, except for loss which is solely and proximately caused by the gross negligence or willful misconduct of Landlord. If any action or proceeding is brought against Landlord or its officers, members, managers, employees, or agents by reason of the above, Tenant, upon reasonable notice from Landlord, will defend the same at Tenant's expense with counsel reasonably satisfactory to Landlord.

20.2    Waiver and Release. Notwithstanding anything to the contrary herein, Tenant, as a material part of the consideration to Landlord for this Lease, by this Section 20.2 waives and releases all claims against Landlord, its officers, members, managers, employees, or agents with respect to all matters for which Landlord has expressly disclaimed liability pursuant to the provisions of this Lease. Additionally, Tenant agrees that Landlord, its officers, members, managers, employees, or agents will not be liable for any loss, injury, death or damage (including consequential damages) to persons, property or Tenant's business occasioned by theft, act of God, public enemy, injunction, riot, strike, insurrection, war, court order, requisition, order of governmental body or authority, fire, explosion, falling objects, steam, water, rain or snow, leak or flow of water, rain or snow from or into part of the Property or the Premises or from the roof, street, subsurface or from any other place, or by dampness, or from the breakage, leakage, obstruction or other defects of the pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures serving the Building or the Interior Premises; or from construction, repair or alteration of any other premises on the Property or the Premises itself; or from any acts or omissions of any other tenant, occupant or visitor of the Property or of the Premises; or from any other cause or condition existing at the inception of this Lease or occurring thereafter, excepting only such losses, injury or damages that are solely and proximately caused by the gross negligence or willful misconduct of Landlord.

## ARTICLE 21
## SECURITY DEPOSIT

The Security Deposit posted under this Lease shall constitute security for the full, faithful and timely performance of every provision of this Lease to be performed by Tenant. If there is a

default by Tenant under this Lease, Landlord may use, apply or retain all or any part of the Security Deposit for the payment of any Rent, or for the payment of any other amount which Landlord may spend or become obligated to spend by reason of Tenant's default, or to compensate Landlord for reasonable losses or damage which Landlord may suffer by reason of Tenant's default. If any portion of the Security Deposit is so used, applied or retained, Tenant will, within ten (10) days after demand, deposit funds with Landlord in an amount sufficient to restore the Security Deposit to its original amount. Landlord will be required to keep the Security Deposit in an interest-bearing bank account, separate from its general funds and Tenant will be entitled to the interest earned on the Security Deposit. The Security Deposit will not be deemed a limitation on Landlord's damages or a payment of liquidated damages or a payment of the Base Rent due for the last month of the Term. If Tenant fully, faithfully and in a timely manner performs every provision of this Lease to be performed by it, the Security Deposit or any balance of the Security Deposit will be returned to Tenant within thirty (30) days after the later of: (a) the expiration or earlier termination of this Lease or (b) the date Tenant vacates the Premises and returns possession of the Premises to Landlord in the condition required under this Lease. Landlord may deliver any funds deposited under this Lease by Tenant to the purchaser of the Property in the event the Property is sold, and after such time, Landlord will have no further liability to Tenant with respect to the Security Deposit pursuant to this Article 21.

## ARTICLE 22
## QUIET ENJOYMENT

Landlord covenants and agrees with Tenant that so long as Tenant pays the Rent and observes and performs all other terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Premises and Tenant's possession will not be disturbed by anyone claiming by, through or under Landlord subject, nevertheless, to the terms and conditions of this Lease.

## ARTICLE 23
## EFFECT OF SALE

A sale, conveyance or assignment of the Property will operate to release Landlord from liability for any covenants, terms and conditions of this Lease, express or implied, arising or occurring from and after the effective date of such sale, conveyance or assignment and, after the effective date of such sale, conveyance or assignment, Tenant will look solely to Landlord's successor in interest in and to this Lease for the performance of such obligations; provided, however, that nothing herein shall be deemed to release Landlord from liability to Tenant for any breach of Landlord's obligations under this Lease which arose or accrued prior to such sale, conveyance or assignment.

## ARTICLE 24
## DEFAULT

24.1    Events of Default. The following events are referred to collectively as "Events of Default" and individually as "an Event of Default":

(a)    Tenant fails to pay any Rent when due;

(b)    Tenant vacates or abandons the Interior Premises during the Term;

(c)    This Lease or the Interior Premises (or any part of the Premises) are taken upon execution or by other process of law directed against Tenant, or are taken upon or subject to any attachment at the instance of any creditor or claimant against Tenant;

(d)    Tenant files a petition in bankruptcy or insolvency or for reorganization or arrangement under the bankruptcy laws of the United States or under any insolvency act of any state, or admits the material allegations of any such petition by answer or otherwise, or is dissolved or becomes insolvent, or makes an assignment for the benefit of creditors;

(e)    Involuntary proceedings under any such bankruptcy law or insolvency act or for the dissolution of Tenant are instituted against Tenant, or a receiver or trustee is appointed for all or substantially all of the property of Tenant, and such proceeding is not dismissed or such

receivership or trusteeship vacated within thirty (30) days after notice to Tenant of such institution or appointment;

   (f) Tenant fails to vacate the Premises at the expiration or earlier termination of this Lease;

   (g) Tenant assigns this Lease or subleases, sublet or otherwise allows anyone else to use or occupy the Premises, except in accordance with the provisions of Article 10 of this Lease; or

   (h) Tenant's breach of any of the other agreements, terms, covenants or conditions which this Lease requires Tenant to perform, and such breach continues for a period of fifteen (15) days after notice from Landlord to Tenant; or if such breach cannot be cured reasonably within such fifteen (15) day period and Tenant fails to commence the curing of such breach within such within such fifteen (15) day period and/or to thereafter proceed diligently to complete the curing of such breach within a reasonable time period, not to exceed sixty (60) days.

  24.2 <u>Landlord's Remedies</u>.  If any one or more Events of Default set forth in Section 24.1 occurs, then Landlord has the right, at its election: (a) to give Tenant written notice of Landlord's intention to terminate this Lease on the date which is thirty (30) days after the date of such notice, or on any later date specified in such notice, in which case Tenant's right to possession of the Premises will cease and this Lease will be terminated on such date, except as to Tenant's liability, as if the expiration of the term fixed in such notice were the end of the Term; and/or (b) without further demand or notice, to reenter and take possession of the Interior Premises or any part of the Interior Premises, repossess the same, expel Tenant and those claiming through or under Tenant, and remove the effects of both or either, using such force for such purposes as may be necessary, without being liable for prosecution, without being deemed guilty of any manner of trespass, and without prejudice to any remedies for arrears of Rent or any other amounts due under this Lease or for any amount payable as a result of any preceding breach of covenants or conditions, and/or (c) without further demand or notice, to cure any Event of Default and to charge Tenant for the cost of effecting such cure, including, without limitation, reasonable attorneys' fees and interest on the amount so advanced at the Default Rate (as such term is defined below), provided that Landlord will have no obligation to cure any such Event of Default of Tenant.  Should Landlord elect to terminate this Lease as provided in subsection (a) or to reenter as provided in subsection (b), or should Landlord take possession pursuant to any notice provided by law, Landlord shall use reasonable efforts to relet the Interior Premises or any part of the Interior Premises in Landlord's or Tenant's name, but for the account of Tenant, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) and on such conditions and upon such other terms (which may include concessions of free rent and alteration and repair of the Interior Premises) as Landlord, in its sole discretion, may determine, and Landlord may collect and receive the rent.  Landlord will in no way be responsible or liable for any failure to relet the Interior Premises or any part of the Interior Premises, or for any failure to collect any rent due upon such reletting.  No such reentry or taking possession of the Premises by Landlord will be construed as an election on Landlord's part to terminate this Lease unless a written notice of such intention is given to Tenant.  No notice from Landlord under this section or under a forcible or unlawful entry and detainer statute or similar law will constitute an election by Landlord to terminate this Lease unless such notice specifically so states.  Landlord reserves the right following any such reentry or reletting to exercise its right to terminate this Lease by giving Tenant such written notice, in which event this Lease will terminate as specified in such notice.

  24.3 <u>Certain Damages</u>.  If Landlord does not elect to terminate this Lease as permitted in subsection (a) of Section 24.2, but on the contrary elects to take possession as provided in subsection (b) of Section 24.2, Tenant will pay to Landlord: (a) Base Rent and any other sums which would be payable under this Lease if such repossession had not occurred, less (b) the net proceeds, if any, of any reletting of the Interior Premises after deducting all Landlord's expenses in connection with such reletting, including, without limitation, all repossession costs, brokerage commissions, reasonable attorneys' fees, expenses of employees, alteration and repair costs and expenses of preparation for such reletting.  If, in connection with any reletting, the new lease term extends beyond the existing Term, or the premises covered by such new lease include other premises not part of the Interior Premises, a fair apportionment of the rent received from such reletting and the expenses incurred in connection with such reletting as provided in this section

will be made in determining the net proceeds from such reletting, and any rent concessions will be equally apportioned over the term of the new lease. Tenant will pay such Base Rent and other sums to Landlord monthly on the day on which the Base Rent would have been payable under this Lease if possession had not been retaken, and Landlord will be entitled to receive such Base Rent and other sums from Tenant on each such day.

24.4    <u>Continuing Liability After Termination</u>.  If this Lease is terminated on account of the occurrence of an Event of Default, Tenant will remain liable to Landlord for damages in an amount equal to Base Rent and other amounts which would have been owing by Tenant for the balance of the Term, had this Lease not been terminated, and Landlord will be entitled to receive from Tenant, as damages for loss of the bargain and not as a penalty, an aggregate rent which, at the time of such termination of this Lease, represents the excess of the aggregate of all Base Rent and all other amounts payable by Tenant that would have accrued for the balance of the Term over the aggregate rental value of the Interior Premises (such rental value to be computed on the basis of a tenant paying not only a rent to Landlord for the use and occupation of the Interior Premises, but also such other charges as are required to be paid by Tenant under the terms of this Lease) for the balance of the Term.

24.5    <u>Cumulative Remedies</u>.  Any suit or suits for the recovery of the amounts and damages set forth in Sections 24.3 and 24.4 may be brought by Landlord, from time to time, at Landlord's election, and nothing in this Lease will be deemed to require Landlord to await the date upon which this Lease or the Term would have expired had there occurred no Event of Default.  Each right and remedy provided for in this Lease is cumulative and is in addition to every other right or remedy provided for in this Lease or now or after the Commencement Date existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this Lease or now or after the Commencement Date existing at law or in equity or by statute or otherwise will not preclude the simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this Lease or now or after the Commencement Date existing at law or in equity or by statute or otherwise.  All costs incurred by Landlord in collecting any amounts and damages owing by Tenant pursuant to the provisions of this Lease or to enforce any provision of this Lease, including reasonable attorneys' fees from the date any such matter is turned over to an attorney, whether or not one or more actions are commenced by Landlord, will also be recoverable by Landlord from Tenant.

24.6    <u>Rights of Assignee</u>.  The right to enter judgment against Tenant and to enforce all of the other provisions of this Lease herein provided for may, at the option of any assignee of this Lease, be exercised by any assignee of Landlord's right, title and interest in this Lease in his, her, its or their own name, notwithstanding the fact that any or all assignments of the said right, title and interest may not be executed or witnessed in accordance with the Act of Assembly of May 28, 1715, 1 Sm. L. 99, and all supplements and amendments thereto that have been or may hereafter be passed and Tenant hereby expressly waives the requirements of said Act of Assembly and any and all laws regulating the manner and/or form in which such assignment shall be executed and witnessed.

**ARTICLE 25**
**SIGNS**

25.1    <u>Tenant Signs</u>.  Tenant will not place or permit to be placed any sign, advertising material or lettering (collectively, "Signs") upon the Exterior Premises or upon the exterior or any interior surface of any door or show window or at any point inside the Interior Premises from which it may be visible from outside the Interior Premises without the prior written consent of Landlord, which shall not be unreasonably withheld.  Any and all Signs installed by Tenant shall be installed, at Tenant's sole cost and expense, and shall be similar in size, style, content and location to those of the other tenants and occupants of the Property. The placing or erecting of such Signs shall be subject to and in compliance with any and all Applicable Laws. The plans and specifications for any Signs shall first be submitted to Landlord for written approval as to size, character and location.  All Signs installed by Tenant shall be deemed Alterations subject to the provisions of Article 14 hereof and shall be removed upon the expiration or any sooner termination of this Lease, and Tenant will, at its own cost and expense, restore the Premises and Property upon which such Signs were located to their condition prior to the erection thereof, reasonable wear and tear excepted.

25.2   <u>Sale or Rent Sign</u>, Landlord shall have the right to display a "For Sale" sign or a "For Rent", or both "For Rent" and "For Sale" signs at any time prior to the expiration of this Lease; and all of said signs shall be placed upon such part of the Exterior Premises or Property as Landlord may elect and may contain such matter as Landlord shall require.

**ARTICLE 26**
**MISCELLANEOUS**

26.1   <u>No Offer</u>.  This Lease is submitted to Tenant on the understanding that it will not be considered an offer and will not bind Landlord in any way until (a) Tenant has duly executed and delivered duplicate originals to Landlord and (b) Landlord has executed and delivered one of such originals to Tenant.

26.2   <u>No Construction Against Drafting Party</u>.  Landlord and Tenant acknowledge that each of them and their counsel has had an opportunity to review this Lease and that this Lease will not be construed against Landlord merely because Landlord's counsel has prepared it.

26.3   <u>Time of the Essence</u>.  Time is of the essence of each and every provision of this Lease.

26.4   <u>No Recordation</u>.  Tenant's recordation of this Lease or any memorandum or short form of it will be void and an immediate Event of Default under this Lease.

26.5   <u>No Waiver</u>.  It is hereby covenanted and agreed, any law, usage or custom to the contrary notwithstanding, that the waiver by Landlord of any agreement, condition or provision contained in this Lease will not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision contained in this Lease, nor will any custom or practice which may grow up between the parties in the administration of the terms of this Lease be construed to waive or to lessen the right of Landlord to insist upon the performance by Tenant in strict accordance with the terms of this Lease.  The subsequent acceptance of Rent by Landlord will not be deemed to be a waiver of any preceding breach by Tenant of any agreement, condition or provision of this Lease, other than the failure of Tenant to pay the particular Rent, so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.

26.6   <u>Limitation on Recourse</u>.  Tenant specifically agrees to look solely to Landlord's interest in the Interior Premises for the recovery of any judgments from Landlord, it being agreed that Landlord (and any officer, member, manager, employee, or agent of Landlord) will never be personally liable for any such judgments and that no other property or assets of Landlord (or any officer, member, manager, employee, or agent of Landlord) shall be subject to levy, execution or other enforcement procedure for the satisfaction of such judgments.

26.7   <u>Estoppel Certificates</u>.  At any time and from time to time, within five (5) days after written request by Landlord, Tenant will execute, acknowledge and deliver to Landlord a certificate certifying (a) that this Lease is unmodified and in full force and effect or, if there have been modifications, that this Lease is in full force and effect, as modified, and stating the date and nature of each modification; (b) the date, if any, to which Base Rent and other sums payable under this Lease have been paid; (c) that neither Tenant, nor to the knowledge of Tenant, Landlord is in default under the Lease, except as to defaults specified in the certificate and (d) such other matters as may be reasonably requested by Landlord. Any such certificate may be relied upon by any prospective purchaser, or any existing or prospective assignee of Landlord's interest in this Lease, or any existing or future Mortgagee.

26.8   <u>No Merger</u>.  The voluntary or other surrender of this Lease by Tenant or the cancellation of this Lease by mutual agreement of Tenant and Landlord or the termination of this Lease on account of Tenant's default will not work a merger, and will, at Landlord's option, (a) terminate all or any subleases and subtenancies or (b) operate as an assignment to Landlord of all or any subleases or subtenancies.  Landlord's option under this Section 26.8 will be exercised by notice to Tenant and all known sublessees or subtenants of the Interior Premises or any part of the Premises.

26.9    Holding Over.  Tenant will have no right to remain in possession of all or any part of the Premises after the end of the Term.  If Tenant remains in possession of all or any part of the Premises after the expiration or earlier termination of this Lease, with the express written consent of Landlord, then (a) such tenancy will be deemed to be a periodic tenancy from month-to-month only, on all of the same terms and conditions as this Lease, (b) such tenancy will not constitute a renewal or extension of this Lease for any further term and (c) such tenancy may be terminated by either Tenant or Landlord, at any time, upon not less than thirty (30) days prior written notice.  If Tenant shall retain possession of the Premises or any portion thereof without Landlord's express written consent following the expiration or sooner termination of this Lease, then Tenant shall be a "tenant at sufferance", the Monthly Base Rent will be increased to an amount equal to one hundred-fifty percent (150%) of the Monthly Base Rent payable during the last month of the Term, any other sums due under this Lease will be payable in the amount and at the times specified in this Lease and such holdover tenancy will be subject to every other term, condition, and covenant contained in this Lease.  The acceptance of Rent by Landlord following the expiration or earlier termination of this Lease shall not constitute Landlord's consent any holding over or a renewal of this Lease.  Additionally, in the event that upon termination of this Lease, Tenant has not delivered the Premises to Landlord in the condition required under this Lease, or has otherwise failed to fulfilled its obligations with respect to Premises set forth in this Lease (including, but not limited to, its obligations under Article 9 hereof), then Landlord shall have the right to perform any such obligations, the reasonable costs for which shall be payable by Tenant as Additional Rent hereunder, and any time required by Landlord to complete such obligations shall be considered a period of holding over "at sufferance", subject to the terms of this Section 26.10.  In the event of any holding over (either with or without Landlord's consent), Tenant shall indemnify, defend, protect and hold Landlord harmless from any reasonable loss, liability or cost, including reasonable attorney's fees, resulting from delay by Tenant in surrendering the Premises, including, without limitation, any claims made by any succeeding Tenant founded on such delay. Nothing herein shall be deemed to waive or limit any other rights and remedies of Landlord under this Lease for Tenant's failing to vacate the Premises at the expiration or earlier termination of the Term.

26.10   Notices.  Any notice, request, demand, consent, approval or other communication required or permitted under this Lease must be in writing and will be deemed to have been duly given (i) when personally delivered upon receipt of refusal, or (ii) one (1) business day after the date sent via reputable overnight courier service, or (iii) three (3) business days after the date deposited in any depository regularly maintained by the United States Postal Service, postage prepaid, certified mail, return receipt requested, addressed to the party for whom it is intended at its address set on the first page of this Lease.  Either Landlord or Tenant may add additional addresses or change their address for purposes of receipt of notices upon not less than ten (10) days prior written notice of such change to the other party in the manner prescribed in this Section 26.10.

26.11   Severability.  If any provision of this Lease proves to be illegal, invalid or unenforceable, the remainder of this Lease will not be affected by such finding, and in lieu of each provision of this Lease that is illegal, invalid or unenforceable, a provision will be added as a part of this Lease as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

26.12   Written Amendment Required.  No amendment, alteration, modification of or addition to the Lease will be valid or binding unless expressed in writing and signed by the party or parties to be bound by such change.  Tenant agrees to make any modifications of the terms and provisions of this Lease required or requested by any Mortgagee provided that no such modifications will materially adversely affect Tenant's rights and obligations under this Lease.

26.13   Entire Agreement.  This Lease, including the documents and exhibits which are attached hereto and incorporated herein by reference, contains the entire agreement between Landlord and Tenant and may be amended only by subsequent written agreement signed by both parties.  No promises or representations, except as contained in this Lease, have been made to Tenant respecting the condition of the Premises or the manner of operating the Property.

26.14   Captions.  The captions of the various articles and sections of this Lease are for convenience only and do not necessarily define, limit, describe or construe the contents of such articles or sections.

26.15  <u>Notice of Landlord's Default</u>.  In the event of any alleged default in the obligation of Landlord under this Lease, Tenant will deliver to Landlord written notice and Landlord will have thirty (30) days following receipt of such notice to cure such alleged default or, in the event the alleged default cannot reasonably be cured within a thirty (30) day period, Landlord shall have thirty (30) days to commence action to cure such alleged default and shall thereafter diligently continue to cure until completion.

26.16  <u>Authority</u>.  Tenant and the party executing this Lease on behalf of Tenant represent to Landlord that such party is authorized to do so by requisite action of the board of directors, partners, or members, as the case may be, and agree upon request to deliver to Landlord a resolution or similar document to that effect.

26.17  <u>Brokers</u>.  Each of Landlord and Tenant represent and warrant to the other that it has not consulted or negotiated with any broker or finder with regard to the Premises other than the Flynn Company and Roddy, Inc. (collectively, "Broker"), whose commission shall be paid by Landlord pursuant to a separate agreement. Each of Landlord and Tenant agrees that it will indemnify the other against and hold the other harmless from any claims for fees or commissions from anyone with whom it has consulted or negotiated with regard to the Premises.  The provisions of this Section 26.18 shall survive the expiration or earlier termination of this Lease.

26.18  <u>Governing Law</u>.  This Lease will be governed by and construed pursuant to the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law.

26.19  <u>Force Majeure</u>.  Landlord will have no liability to Tenant, nor will Tenant have any right to terminate this Lease or abate Rent or assert a claim of partial or total actual or constructive eviction, because of Landlord's failure to perform any of its obligations in the Lease if the failure is due to reasons beyond Landlord's reasonable control, including, without limitation, strikes or other labor difficulties or inability to obtain necessary governmental permits and approvals (including any building permits or certificates of occupancy); unavailability or scarcity of  materials; war; riot; civil insurrection; accidents; acts of God; and governmental preemption in connection with a national emergency.  If Landlord fails to perform its obligations because of any reasons beyond Landlord's reasonable control (including those enumerated above), the period for Landlord's performance will be extended day for day for the duration of the cause of Landlord's failure.

26.20  <u>Late Payments; Returned Checks</u>.  Any payment of Rent, which is not received within five (5) days after it is due will be subject to a late charge equal to ten percent (10%) of the late payment, or $100.00, whichever is greater.  This amount is in compensation of Landlord's additional cost of processing late payments.  In addition, any Rent which is not paid when due, will accrue interest at a late rate charge of twelve percent (12%) per year (the "Default Rate"), from the date on which it was due until the date on which it is paid in full with all accrued interest.  Tenant agrees that if any of Tenant's checks are returned for lack of sufficient funds, Tenant shall pay to Landlord an additional administrative fee of Fifty Dollars ($50.00). The provisions of this Section 26.21 shall not preclude Landlord from exercising its options as set forth in any other section of this Lease or as provided by law.

26.21  <u>No Easements for Air or Light</u>.  Any diminution or shutting off of light, air or view by any structure which may be erected on lands adjacent to the Premises will in no way affect this Lease or impose any liability on Landlord.

26.22  <u>Tax and other Credits</u>.  Landlord is entitled to all local, state and federal income tax benefits (including, without limitation, investment tax credits, stormwater credits, energy credits and rehabilitation credits) available as a result of leasehold improvements for which Landlord has paid, or lent money, or guaranteed payment.  Promptly after Landlord's demand, Tenant will give Landlord a detailed list of the leasehold improvements and fixtures and their respective costs for which Tenant has paid without a loan or guarantee by Landlord, and Tenant will be entitled to tax benefits attributable to such listed improvements.  Landlord will be entitled to all other such tax benefits for all other leasehold improvements.

26.23  <u>Landlord's Fees</u>.  Whenever Tenant requests Landlord to take any action or give any consent required or permitted under this Lease, Tenant will reimburse Landlord for all of Landlord's reasonable, out of pocket costs actually incurred in reviewing the proposed action or

consent, including, without limitation, reasonable attorneys', engineers', architects', accountants' and other professional fees.  Within ten (10) days after Landlord's delivery to Tenant of a statement of such costs, Tenant will be obligated to pay such amounts as Additional Rent, without regard to whether Landlord consents to any such proposed action.

26.24    Financial Information.  Tenant shall provide, from time to time, upon request by Landlord, financial statements, prepared by independent accountants, in form reasonably acceptable to Landlord.

26.25    Binding Effect.  The covenants, conditions and agreements contained in this Lease will bind and inure to the benefit of Landlord and Tenant and their respective heirs, distributees, executors, administrators, successors, and permitted assigns.

26.26    Termination of Prior Agreements.  This Lease contains all agreements of the parties with respect to the Premises and supersedes and replaces any and all prior agreements and understandings (oral or written) between the parties relating to the Premises or any use or occupancy by Tenant thereof.

### ARTICLE 27
### RENEWAL TERM

Tenant shall have the right to extend the Initial Term of this Lease for one consecutive five-year period, commencing on January 1, 2027 and ending on December 31, 2031(the "Renewal Term"), by providing written notice of its election to do so delivered to Landlord no later than twelve (12) months prior to the end of the Initial Term (the "Renewal Notice").  The Renewal Term shall be upon all of the same terms, covenants and conditions set forth herein, including the Annual Base Rent Adjustments provided in Section 4.2 above.  Notwithstanding the foregoing, Tenant will not have any rights to renew the Lease under this Article 27, and Tenant's notice of such renewal shall be deemed null and void, if: (a) there is any uncured Event of Default either at the time of Tenant exercise the renewal option provided herein or as of the commencement of the Renewal Term, or (b) Landlord receives Tenant's Renewal notice less than twelve (12) months prior to the end of the Initial Term.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties have caused this Lease to be executed on the date set forth above, but effective as of the Commencement Date.

WITNESS:

By: _____
Print Name:
Vanessa Hercado

LANDLORD:
DRUMMOND DECATUR AND STATE PROPERTIES, LLC

By: _____
Michael Ricatto, Member

WITNESS/ATTEST

By: _____
Print Name:
Title: Secretary

By: _____
Print Name:
Title:

TENANT:
SEPTA

By: _____
Name: Jeffrey Knueppel
Title: General Manager

By: _____
Name:
Title:

7483717 v1

**IN WITNESS WHEREOF**, the parties have caused this Lease to be executed on the date set forth above, but effective as of the Commencement Date.

WITNESS:

By: _____

Print Name:

Vanessa Mercado

LANDLORD:
DRUMMOND DECATUR AND STATE
PROPERTIES, LLC

By: _____
   Michael Ricatto, Member

WITNESS/ATTEST

By: _____
Print Name:
Title: Secretary

TENANT:
SEPTA

By: _____
   Name: Jeffrey Knueppel
   Title: General Manager

By: _____
Print Name:
Title:

By: _____
   Name:
   Title:

**APPROVED AS TO FORM:**

BY: _____ ESQ.
**GENERAL COUNSEL'S OFFICE**

EXHIBIT A

PREMISES PLAN

(See Attached)



Exhibit A

SEPTA Procurement-SCM Warehouse Lease Premises
10551 Decatur Rd., Phila. PA. 19154 APN: 88-4278500

Real Estate
D. Doler 10.24.2019

DRUMMOND RD

STORAGE AND PARKING

LOADING AND TURN AROUND

BUILDING LEASE
PREMISES
118,036 SF

10551 DECATUR RD

LOADING

PARKING

LOCATION MAP

**EXHIBIT B**

**LANDLORD'S WORK**

Landlord shall perform the following work to the Premises prior to the Commencement Date:

- Install new LED lights throughout both bays.
- All emergency lights shall be repaired/replaced to meet code requirements.
- Landlord will place all man doors in good operating order. Any doors which are structurally compromised will be replaced.
- Motorize Dock Doors 13 & 14.
- Place all loading dock overhead doors and load levelers in good working order, Landlord will install loading dock bump stops.
- Place warehouse gas fired heating units in good working order.
- Remove inoperable ceiling-hung steam heaters.
- Replace existing non-functioning fans in warehouse.
- Repair potholes within parking and loading areas.
- Apply vegetation control to parking lot and building perimeter. Trim overgrown bushes, trees, and shrubs, and maintain scheduled grass and vegetation control.
- Remove partial demising wall within low bay portion of the warehouse.
- Repair floor spalling and level out cracks and heaves at expansion joints within low-bay warehouse.
- Remove "Open Office Area" up to mezzanine.
- Existing warehouse restrooms behind main office area will not be removed, but walled off to render inaccessible.
- Finish front office area with industrial floor paint, ceiling tiles, lighting, electrical receptacles, door locks and place HVAC in good working order. Walls to be painted white.
- Office restrooms will be in good working order and cleaned, with lighting in good condition.
- Replace missing electrical plate covers.
- Remove all abandoned fixtures, cables and conduit per NEC code requirements.
- All electrical panels having open circuit breaker spaces missing breakers shall be filled with blank covers per NEC code requirements.
- All electrical panel covers are to be installed per NEC code requirements.
- Replace computer room HVAC system.
- Landlord will replace missing FDC signage on Drummond Road elevation.
- Landlord to obtain current inspection of fire alarm and fire suppression systems and address any existing violations noted in such inspection reports.

Perform the additional repair needed to the roof as noted on the attached report*

*Subject to the Landlord's performance of the roof repair work noted above, the roof shall be deemed accepted by Tenant as being in good order and repair as of the Commencement Date.

**BUILDING THE FUTURE**



**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**

| | |
|---|---|
| **Project:** | SEPTA Warehouse Lease, 17CI |
| **Location:** | 10551 Decatur Road, Philadelphia, PA 19154 |
| **Topic/Issue:** | Roof Inspection |
| **Inspection Date:** | 9/13/2019 |
| **Report Date:** | 9/13/2019 |
| **Report By:** | Casey Coppola |
| **Other Attendees:** | Mike Mangold (Supply Chain) |
| | (3) SEPTA B&B Roofers |

<u>Summary and Evaluation:</u>
For the purpose of this memo, the roof areas are split into three (3) areas. Area one (1) is over the office portion of the facility and is a 5,452sf torch down single ply membrane roof. Area two (2) is over the low bay storage area and is a 62,750sf torch down single ply membrane roof. Area three (3) is over the high bay storage area and is a 50,024sf aluminum roof. See diagram.

<u>Purpose/Scope:</u>
The purpose of this memo is to highlight areas that require immediate repairs. The following items were listed based on a visual inspection and suggested active leaking or the immediate potential for leaking. There were many observations made about the roof that were not listed due to the extensive nature of the repairs and the fact that at the time there were no active leaks. The following items should be completed before SEPTA accepts the 10551 Decatur Road warehouse lease:

BUILDING THE FUTURE 

**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**



(1) OFFICE AREA
   a. Replace/repair all vent louvers (photo 1)
   b. Area of significant ponding in center of roof. Roof is very soft in that area. Noticeable corrosion observed to the decking below this area. Re-pitch this section of roof and replace area of decking underneath (photo 2)
   c. Remove all trash and tools from on top of roof.

(2) LOW BAY AREA
   a. Point brick chimney (photo 3)
   b. Add counterflashing where brick chimney meets roof membrane (photo 3)
   c. Cap small pipe under run of elevated pipe (photo 4)
   d. Replace/repair all vent louvers (photo 5)
   e. Install run of aluminum capping along parapet wall bordering office roof (photo 6)
   f. Re-seal around drain areas on top of roof
   g. Spot leaks observed coming from interior rainwater leaders. Tighten/re-seal.
   h. Aluminum capping loose in some areas. Make secure/re-anchor all aluminum capping along parapet wall
   i. Re-seal edge of roof along Decatur Road. It looks as though this area was already resealed, however water is still penetrating through the seam (photo 7)
   j. Re-seal around vent penetration and repair slice next to vent (photo 5)
   k. Remove all trash and tools from on top of roof.



**BUILDING THE FUTURE**



**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**

| PHOTO | DESCRIPTION | |
|---|---|---|
| 1 | Office Area Vents |  |
| PHOTO | DESCRIPTION | |
| 2 | Office Area Corroded Decking | |



BUILDING THE FUTURE



**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**

| PHOTO | DESCRIPTION | |
|---|---|---|
| 3 | Low Bay Area<br>Chimney | |

| PHOTO | DESCRIPTION | |
|---|---|---|
| 4 | Low Bay Area | |

BUILDING THE FUTURE



**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**

| PHOTO | DESCRIPTION | |
|---|---|---|
| 5 | Low Bay Area Vents | |

| PHOTO | DESCRIPTION | |
|---|---|---|
| 6 | Low Bay Area Parapet Capping | |



**BUILDING THE FUTURE**

**Engineering, Maintenance & Construction**
**Bridges and Buildings Department**
**Architectural Inspection Report**

| PHOTO | DESCRIPTION | |
|---|---|---|
| 7 | Low Bay Area Failed Seam | |



| PHOTO | DESCRIPTION |
|---|---|
| 8 | Low Bay Area Roof Penetration at Heater |

**EXHIBIT C**

**PERMITTED SUBSTANCES**

[See Attached List]

| | 3E NECESSARY INFORMATION | | | SEPTA SPECIFIC INFORMATION | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Product Name | Manufacturer | Model Number | Physical State | Class & Lot | ITEM DESCRIPTION | PART DESCRIPTION | U.O.M. | Container Type | Container Size |
| ENVIRO GEAR BOX OIL | ENVIRO | 222005 | LIQUID | 61-01114 | OIL 220005 ENVIRO GEAR OIL 220005 ENVIRO GE | | EA | Plastic | 500 ML |
| WESTERN | WILLIAM PRODUCTS INC | S 469 | L | 54-3977-U01 | HYDRAULIC FLUID | 49311 | EA | Plastic | 1 QT |
| AAA STEEL | EVRIN INDUSTRIES | S 469 | S | 55-00000 | ABRASIVE HARDLINE IN ABRASIVE HARDLINE IN | | BG | Bag | 50 LBS |
| ALCOHOL ISOPROPYL 70% SOLUTION | 0869-0828-43 | | L | 55-00000-A | ALCOHOL, ISOPROPYL, 70 ALCOHOL, ISOPROPYL, 70 | | EA | Plastic | 16OZ |
| AE 75P ACTIVATOR | IMM SPECIALTIES INC | AE-M-0047 | L | 55-00004 | ANTI-FREEZE (50/50 M) ANTI-FREEZE (50/50 M) | | DR | METAL DRUM | 55 GAL |
| ANTI-FREEZE 50/50 MIX | IMM SPECIALTIES INC | AE-M-0047 | L | 55-00004 | ANTI-FREEZE (50/50 M) ANTI-FREEZE (50/50 M) | | DR | METAL DRUM | 55 GAL |
| BAF 75P ACTIVATOR | PPC LUBRICANTS | AE-M-0047 | L | 55-00004 | ANTI-FREEZE (50/50 M) ANTI-FREEZE (50/50 M) | | DR | METAL DRUM | 55 GAL |
| Casing Anti Slip | Rustoleum Corp | AS6516/AS6! 6S0111/RD55 | L | 55-00020-R01 | COATING AMERICAN S | COATING AMERICAN S | GL | Metal | 5 |
| DEPT U.VOC CLEAR COAT | PPG INDUSTRIES | 360025 | L | 55-00216 | CLEAR COAT MUST MEE CLEAR COAT MUST MEE | | GAL | Metal | 0.75 GAL / 1 QT |
| DEPT U.VOC CLEAR COAT | PPG INDUSTRIES | 360025 | L | 55-00216 | PAINT BLACK 100% ACR 55M-55-00216 | | EA | Metal | 1 GAL |
| PAINT CLEAR COAT | SHERWIN WILLIAMS | 5W-55-00216 | L | 55-00216 | CATALYST (1 QUART M) CATALYST (1 QUART M) | | QT | Metal | 1 QT |
| DEFT CATALYST | SHERWIN WILLIAMS | 6103706 | L | 55-00020 | | | CA | Metal | 1QT |
| ALL SURFACE SATIN ENAMEL | SHERWIN WILLIAMS | 639664 | L | 55-00000 | | | Can | 1 GAL |
| SPRAYON | DOLPH'S | S02611 | A | 55-00005 | PAINT KRYLON 503611- PAINT KRYLON 503611- | | EA | Plastic | 16G |
| PAINT KRYLON 503611 -SPRA | Krylon Industrial | 502611 | A | 55-00019-U00 | PAINT KRYLON 503611- PAINT KRYLON 503611- | | EA | Plastic | 1 GAL |
| RUBBING COMPOUND AMBER | ABRASIVE & AUTOMOTIVE INC | 4219-01 | L | 55-00016 | PAINT OUIM DEEP BASE PAINT BEHR DEEP BASE | | DR | Metal | 1 GAL |
| Industrial Enamel | Sherwin Williams | | | 55-00090A | Sherwin Williams Enam Industrial Enamel | | GL | Metal | 5 |
| PAINT BEHR DEEP BASE | BEHR | 1400 | L | 55-01536 | PAINT HOME DEPOT BE PAINT HOME DEPOT BE | | EA | Metal | 1 GAL |
| BEHR BASE 3400 BEIGE | BEHR | 1400 | L | 55-01537 | PAINT HOME DEPOT BE BEHR BASE 3400 GREEN | | EA | Metal | 1 GAL |
| BEHR BASE 3400 GREEN | BEHR | 3400 | L | 55-01537 | OIL, SHERWIN 152-4000 OIL, SHERWIN 152-4000 | | EA | Metal | 1 GAL |
| LINSEED OIL | LINSEED | GLO45 | L | 55-01200 | PAINT INSULATING POL SPRAYON 152-4000 | | GAL | Metal | 150Z |
| SPRAYON RED INSULATING V | SPRAYON | EL601 | L | 55-01750 | PAINT INSULATING POL ER-41 CLASSR | | CAN | Metal | 20 OZ |
| SPRAYON | DOLPH'S | ER-41 | L | 55-01750 | PAINT INSULATING POL ER-41 CLASSR | | CA | Metal | 20 OZ |
| SPRAYON | DOLPH'S | ER-41 | L | 55-01750 | PAINT INSULATING POL ER-41 CLASSR | | CA | Metal | 20 OZ |
| SPRAYON | DOLPH'S | ER-41 | L | 55-01750 | MEMBRANE BELZONA 9 MEMBRANE BELZONA 9 | | EA | Metal | QT |
| BELZONA 9311 | BELZONA | 9311 | SEMI LIQUID | 55-017000.1 | PAINT ALPINE GREEN A PAINT ALPINE GREEN A | | EA | Metal | 1 GAL |
| DEFT PAINT ALPINE GREEN | PPG INDUSTRIES | 5W-55-01752-A | L | 55-01752A | CONDITIONER KIT 417 C CONDITIONER KIT 417 C | | EA | Metal | 1 GAL |
| DEFT PAINT JET STREAM BL | PPG INDUSTRIES | 19413-A | L | 55-01753A | PAINT SILVER OFFSET A PAINT SILVER OFFSET A | | QT | Metal | 1.7 OZ |
| DEFT - PAINT SILVER OFFSET | PPG INDUSTRIES | 5W-55-01754-A | L | 55-01754A | PAINT ACCELERATOR P AMD-112 | | EA | Metal | 1 QT |
| PAINT ACCELERATOR | SHERWIN WILLIAMS | GA-1097 | L | 55-01756 | PAINT PPG INDUSTRIES 36WV106 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD EXPEDITION GLC | PPG INDUSTRIES | 36W106 (F1) | L | 55-01760 | PAINT PPG INDUSTRIES 36WV106 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD EXPEDITION GLC | PPG INDUSTRIES | 36W106 (F1) | L | 55-01760 | PAINT PPG INDUSTRIES 36WV106 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD TAURUS GLOSS | PPG INDUSTRIES | 36W108 (F1) | L | 55-01761 | PAINT PPG INDUSTRIES 36WV108 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD TAURUS GLOSS | PPG INDUSTRIES | 36W108 (F1) | L | 55-01761 | PAINT PPG INDUSTRIES 36WV107 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD EXPLORER GLOSS | PPG INDUSTRIES | 36WV107 (F1) | L | 55-01762 | PAINT PPG INDUSTRIES 36WV107 (F1) | | SET | Metal | 0.75 GAL / 1 QT |
| DEFT - FORD EXPLORER GLOSS | PPG INDUSTRIES | 36WV107 (F1) | L | 55-01762 | PAINT ALUMINUM 1 1.5 742072 | | SET | Metal | 1 GAL |
| PAINT ALUMINUM | SHERWIN WILLIAMS | 742071 | L | 55-01805 | PAINT CHROME ALUMIN PAINT CHROME ALUMIN | | EA | Metal | 1 GAL |
| PAINT CHROME ALUMINUM | SHERWIN WILLIAMS | 1415058 | L | 55-01806 | PAINT CHROME ALUMIN PAINT CHROME ALUMIN | | EA | Metal | 1 GAL |
| PAINT CHROME ALUMINUM | SHERWIN WILLIAMS | 1415058 | A | 55-01806 | PAINT BLACK GLOSS AS PAINT BLACK GLOSS AS | | CAN | Metal | 10.5 |
| CHAMPION SPRAYON FRAME | CHASE PRODUCTS | FG4339-0922-7 | A | 55-01807 | PAINT BLACK GLOSS AS PAINT BLACK GLOSS AS | | EA | Metal | 13.5 OZ |
| CHAMPION SPRAYON FRAME | CHASE PRODUCTS | 85776 | L | 55-01807 | PAINT SHERWIN WILLIA PAINT SHERWIN WILLIA | | EA | Metal | 1 GAL |
| PAINT BLACK GLOSS | SHERWIN WILLIAMS | 85776 | L | 55-01808 | PAINT SHERWIN WILLIA PAINT SHERWIN WILLIA | | EA | Metal | 1 GAL |
| PAINT RUST-O-LIUM | SHERWIN WILLIAMS | SW136-0577 | L | 55-01808 | PAINT SHERWIN WILLIA1320113 KRYLON | | EA | Metal | 1 GAL |
| PAINT RUST-O-LIUM | SHERWIN WILLIAMS | SW136-0577 | L | 55-01808 | PAINT SHERWIN WILLIA1320113 KRYLON | | EA | Metal | 1 GAL |
| DEFT SEP-G GLOSS WHITE & P | SHERWIN WILLIAMS | 55-WD32 | L | 55-01310 | PAINT KIT - SEPTA WHIT DEFT 16-W-32 APPD 5/00 | | SET | Metal | 0.75 GAL / 1 QT |

| Product | Manufacturer | Part No. | | Item No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| DEFT SEMI-GLOSS WHITE & PPG INDUSTRIES | 3K-W032 | L | | SS-01810 | PAINT KIT - SEFTA WHITE01 3K-W-32 APPD 9/00 | SET | Metal | 0.75 GAL / 1 QT |
| DEFT SEMI-GLOSS WHITE & PPG INDUSTRIES | 3K-W032 | L | | SS-01810 | PAINT KIT - SEFTA WHIT KIT 3K-W-32 APPD 9/00 | SET | Metal | 0.75 GAL / 1 QT |
| DEFT SEMI-GLOSS WHITE & PPG INDUSTRIES | 3K-W032 | L | | SS-01810 | PAINT KIT - SEFTA WHITE KIT 3K-W-32 APPD 9/00 | SET | Metal | 0.75 GAL / 1 QT |
| BLACK PAINT | A5-25 | L | | SS-01813 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 15 OZ |
| PAINT GLOSS WHITE | KRYLON | K 357 | L | SS-01831 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 15 OZ |
| PAINT GLOSS WHITE | KRYLON | K 357 | L | SS-01831 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 15 OZ |
| PAINT GLOSS WHITE | KRYLON | K 357 | L | SS-01831 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 15 OZ |
| PAINT GLOSS WHITE | KRYLON | K 357 | L | SS-01831 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 15 OZ |
| YELLOW PAINT ENAMEL | KRYLON | K110029101 | A | SS-01831 | PAINT ENAMEL CAUTION K-110 2910S KRYLON REF | EA | Metal | 16OZ |
| PAINT GLOSS WHITE | KRYLON | K110029101 | L | SS-01831 | PAINT GLOSS WHITE SPK357 KRYLON WEEKEND | CA | Metal | 16OZ |
| YELLOW PAINT ENAMEL | KRYLON | 9133 | A | SS-01832 | PAINT ENAMEL CAUTION K-110 2910S KRYLON REF | EA | Metal | 16OZ |
| KRYLON | KRYLON | K110029101 | A | SS-01832 | PAINT SHERWIN WILLIAM PAINT SHERWIN-WILLIA | EA | Metal | 16OZ |
| Industrial Enamel | Sherwin Williams | 6401-18667 | L | SS-01833 | Black Paint | GL | Metal | 1 |
| Primer American Safety | American Safety | M45-7938 | A | SS-01841 | METAL PRIMER AMERICAN S 264 | GAL | Metal | 1 |
| PAINT PRIMER WOOD LIGHT | Sherwin Williams | 7068200 | L | SS-01876i | PAINT PRIMER EXTERIOR02 2764 | GAL | Metal | 1GAL |
| PAINT PRIMER WOOD LIGHT | Sherwin Williams | 7068200 | L | SS-01876i | PAINT SUNSHINE CHEMI PAINT SUNSHINE CHEM | EA | Metal | 1GAL |
| MARKING PAINT PAINT FLUOR | KRYLON | 3104 | L | SS-01879-T01 | PAINT KRYLON 3104-FLUOR KRYLON 3104 FLU | EA | Metal | 19 OZ |
| MARKING PAINT PAINT FLUOR | KRYLON | 3104 | L | SS-01879-T01 | PAINT KRYLON 3104-FLUOR KRYLON 3104 FLU | EA | Metal | 19 OZ |
| INDUSTRIAL ENAMEL RED | SHERWIN WILLIAMS | 617-0609 | L | SS-01879-T01 | PAINT KRYLON 3104 FLU PAINT KRYLON 3104 FLU | EA | Metal | 19 OZ |
| PAINT RESISTENCE | SHERWIN WILLIAMS | B-65N625 | L | SS-01883 | PAINT SHERWIN-WILLIAM PAINT SHERWIN-WILLIA | GAL | Metal | 1 GAL |
| PAINT RESISTENCE GRAY | SHERWIN WILLIAMS | B6-W-062 | L | SS-01883 | PAINT SHERWIN-WILLIAM PAINT SHERWIN-WILLIA | EA | Metal | 1 GAL |
| DEFT FLAT WHITE ACRYLIC | SHERWIN WILLIAMS | 5909 AM | L | SS-01883 | PAINT SHERWIN-WILLIAM PAINT SHERWIN-WILLIA | EA | Metal | 1 GAL |
| DEFT BLACK SEMI GLOSS | SHERWIN WILLIAMS | 5909 AM | L | SS-01883 | PAINT SHERWIN-WILLIA04526 | GAL | Metal | 1 GAL |
| Paint Acrylic Enamel Dash | Sherwin Williams | 6409-99714 | L | SS-01884 | PAINT DEFT 36-W-062 1 DEFT 36-W-062 | EA | Metal | 0.75 GAL / 1 QT |
| PAINT ACRYLIC ENAMEL DASH | SHERWIN WILLIAMS | liquid | L | SS-01908 | PAINT ACRYLIC ENAMEL05909AM LF | GAL | Metal | 1GAL |
| Paint Acrylic Enamel | Sherwin Williams | liquid | LIQUID | SS-01918-L01 | PAINT ACRYLIC FLAT DEFT 369R01S | GAL | Metal | 1GAL |
| PAINT ROSE POLYURETHANE | Sherwin Williams | 36-W035 | L | SS-01918-L01 | PAINT KIT-LRV BEIGE MCHFT 369R01A | GAL | Metal | 1GAL |
| WHITE INTERIOR/EXTERIOR | SHERWIN WILLIAMS | DW-55 | L | SS-01919 | PAINT WHITE INTERIOR PAINT WHITE INTERIOR | EA | Metal | 1GAL |
| Spray Paint | Sherwin Williams | 35-BK-017 | A | SS-01934L04 | PAINT BLACK SEFTA PER006 BLACK / RED ONL | Can | Metal | 9OZ |
| PAINT SPRAY PAINT CAN | Rustoleum | 1244I | L | SS-01944 | PAINT ENAMEL GRAY PF PAINT ENAMEL GRAY P | EA | Metal | 9 OZ |
| DEFT SPRAY PAINT GRAY PRI | SHERWIN WILLIAMS | 796-9902 | A | SS-01944 | PAINT ENAMEL GRAY PF PAINT ENAMEL GRAY P | EA | Metal | 9 OZ |
| GRAY PRIMER | SHERWIN WILLIAMS | 796-9902 | L | SS-01944 | PAINT ENAMEL GRAY PF PAINT ENAMEL GRAY P | EA | Metal | 9/oz |
| DEFT BLACK SEMI GLOSS | SHERWIN WILLIAMS | 796-8900 | L | SS-01955 | PAINT GRAY PRIMER PAINT GRAY PRIMER | EA | Metal | 9 OZ |
| DEFT BLACK SEMI GLOSS | SHERWIN WILLIAMS | 36-BK-014 | L | SS-01965 | PAINT KIT BLACK SEMI PAINT KIT BLACK SEMI | SET | Metal | 0.75 GAL / 1 QT |
| DEFT FLAT BLACK | SHERWIN WILLIAMS | 36-BK-014 | L | SS-01979069 | PAINT KIT BLACK SEMI PAINT KIT BLACK SEMI | EA | Metal | 0.75 GAL / 1 QT |
| PAINT PRIMER | PPG INDUSTRIES | E8-41 | A | SS-019PRC | PAINT E8-41 BLACK K20E18-41 | EA | Metal | 20.OZ |
| RUSTOLEUM BLACK KRYLON | KRYLON | 1614 | L | SS-019PRC | PAINT KRYLON 1614 SPRIMER KRYLON 1614 SPR | EA | Metal | 19 OZ |
| RUSTOLEUM BLACK KRYLON | KRYLON | 1614 | L | SS-019PRC | PAINT KRYLON 1614 SPK1AVUS | EA | Metal | 19 OZ |
| RUSTOLEUM BLACK KRYLON | KRYLON | 1614 | L | SS-019502 | PAINT KRYLON 1614 SP K1AVUS | EA | Metal | 19 OZ |
| DEFT PAINT PRIMER | PPG INDUSTRIES | 09-GY-051 | L | SS-019502 | PAINT PRIMER KIT PPG 7007-7001 | SET | Metal | 0.75 GAL / 1 QT |
| DEFT PAINT PRIMER | KRYLON | 09-GY-051 | L | SS-019502 | PAINT PRIMER KIT PPG 7007-7001 | SET | Metal | 0.75 GAL / 1 QT |
| DEFT PAINT PRIMER | PPG INDUSTRIES | 09-GY-051 | L | SS-02004-P01 | PAINT PRIMER KIT PPG 7007-7001 | SET | Metal | 0.75 GAL / 1 QT |
| Primer Thomas Gold | 3M | 70-70-KO-479-2 | L | SS-02004-P01 | PAINT PRIMER THOMAS GOLD | GL | Metal | 1 |
| Universal Sage Gardner | PPG INDUSTRIES | 1320009 | L | SS-02007 | SOLVENT UNIVERSAL-H "REDUCER FOR PAINT A | GL | Metal | 55 GAL |
| DEFT REDUCER DS-21 D | UH-1263 | | L | SS-02007 | SOLVENT UNIVERSAL HI SOLVENT | GL | Drum | 5 GAL |
| REDUCER SOLVENT UNIVERSE | SHERWIN WILLIAMS | AEM-609 | S | SS-02007 | REDUCER FOR PAINT AD- AEM-609 REDUCER FO | Metal | Metal | 5 GAL |
| Latex Caulk | DAP | DAP | | SS-02013 | Latex Sealant | EA | Plastic | 6/oz. |
| SEALANT LATEX CAULK | DAP | 18250 | SEMI LIQUID | SS-02013 | SEALANT LATEX CAULK SEALANT LATEX CAULK | Tube | Plastic | 10.1 OZ |
| CLAIRE C-555 | CLAIRE | C-955 | S | SS-02031B | SEALANT LATEX CAULK SEALANT LATEX CAULK | EA | Plastic | 20 OZ |
| SEALANT LATEX CAULK | CLAIRE | C-955 | | SS-02031B | SPRAY STATIC GUARD C-SPRAY STATIC GUARD C | EA | Metal | 11 |
| Urethane Seal | Baetcoat | 18411 | A | SS-MA0000-001 | SPRAY STATIC GUARD C-SPRAY STATIC GUARD C-5941 | O2 | Metal | 20 OZ |
| Rustoleum Supersonic Red | Rheetcoat | 2669599-051 | A | SS-41808 | SPRAY URETHANE SEAL COAT RUSTOLEUM 26699 99-051 | Case | Metal Can | 12 Oz. |
| World's Best Filler | | 10000504M | L | SS-040830 | SOLUTION GRAFFITI RE SOLUTION GRAFFITI RE | EA | Plastic | 1 |
| OM ELASTIC | DOW CORNING CORP 736 | 736 | L | 36-041B7 | SEALANT SILICONE RTV / SEALANT SILICONE RTV / SEALANT | TB | Plastic | 10OZ |

| Description | Manufacturer | Number | Code | Part No. | Description 2 | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| Oil Absorbent | Fornprodukter | HTP | S | 61-0077 | ABSORBENT HTP OIL SQ | Bag | Plastic | 5 lbs |
| Adhesive 3M | 3M | 9001 | S | 61-00100-R01 | Yellow Scotch Grip ADHESIVE 3M 051155-4 | OZ | Plastic | 5 |
| GLUE-GAMER PENETONE 631 | PENETONE 631 | 631 | S | 61-00115 | AGENT PENETONE 631 AGENT | OZ | Plastic | 10 |
| AUSTIN'S AMMONIA | JAMES AUSTIN CO | | A | 61-00150 | AMMONIA 20 DEG GLA AMMONIA 20 DEG CLEA | OZ | Metal | 87 |
| Cleaner Crown | Fausti Laser | 10371 | | 61-00150-R01 | Dyprene cant Spot Clean CLEANER CROWN HD1 | OZ | Metal | 7.5 |
| CLEANER | | 10371S | | 61-00150-R01 | E-Clean Dry Air Valves CLEANER E CLEAN RELEA | OZ | Metal | 10 |
| COOLANT LONG LIFE 20/20 | Intelco | 6100150 | S | 61-00215 | COOLANT LONG LIFE 20/20 COOLANT CERTIFIED LON | GAL | Plastic | 1602 |
| KRUD KUTTER GLOSS OFF | | PVR062002 | | 61-00150-R02 | CLEANER KRB B FLOOR S CLEANING SOLUTIONS | EA | Plastic | 1602 |
| COCO ABSORB UNIVERSAL AE'S PRODUCTS | LONG LIFE 20/20 | | S | 61-00287 | ABSORBENT SPILL-SORB ABSORBENT SPILL-SORB | BG | Paper | 30 lb |
| DISINFECTANT BOWL CLEANER 7-FRANK McCALLS | TOR COATINGS LIMITED | 0543032 | | 61-00287 | Oil Absorbent ABSORBENT SPILL-SORB | BG | Plastic | 50 lbs |
| ADHESIVE & WAX REMOVER | Handy Dandy | 0543032 | S | 61-00287 | ABSORBENT SPILL-SORB ABSORBENT SPILL-SORB | BG | Paper | 30 lb |
| | MAGNAFLUX | SKD-32 | L | 61-00287-B | CLEANER MUD ACID CLEANER MUD ACID CLE | EA | Plastic | 1 OT |
| RENEWz HVAC COIL CLEANER RENEWz | Handy Dandy | D1-5750-78 | L | 61-00298 | CLEANER HVAC COIL RE CLEANER HVAC COIL RE | CAN | Plastic | 1 oz |
| SPOT CHECK MAGNAFLUX MK MAGNAFLUX | MAGNAFLUX | R2644 | L | 61-00298-B001 | CLEANER MAGNAFLUX CLEANER MAGNAFLUX | EA | Metal | 11.6 oz |
| CUTTING FLUID | HOUGEN | 11740 | L | 61-00299 | CUTTING FLUID HOUGE CUTTING FLUID HOUGE | GAL | Metal | 5 GAL |
| HYDRAULIC FLUID | HOUGEN | SHC G34 | | 61-00300 | FLUID VIBRATION 9520 FLUID VIBRATION 9520 | EA | Plastic | 1 GT |
| ANTI-SEIZE LUBRICANT | MOBILE | SHC G54 | L | 61-00300-B | FLUID VIBRATION 9520 FHC G34 MOBILE | EA | Plastic | 19 oz |
| ANTI-SEIZE LUBRICANT | MOBILE | 37566 | L | 61-00329 | GREASE ANTI-SEIZE CON G34 MOBILE | EA | Plastic | 1 GT |
| ANTI-SEIZE LUBRICANT | LOCTITE | 37566 | PASTE | 61-00329 | GREASE ANTI-SEIZE CON P5428D10 | EA | Plastic | 1 GT |
| LOCTITE ANTI-SEIZE LUBRICA | LOCTITE | 76759 | PASTE | 61-00329 | LUBRICANT LOCTITE 76 LUBRICANT LOCTITE 76 | EA | Plastic | 1 GT |
| ANTI-SEIZE LUBRICANT | LOCTITE | 37565 | PASTE | 61-00329 | GREASE ANTI-SEIZE CON P5428D10 | CA | Plastic | 1 lb |
| COMPOUND Crown | LOCTITE | 37205 | PASTE | 61-00329 | GREASE ANTI-SEIZE CON MHC 1221 | CA | Metal | 16 OZ |
| Anti-Seize Grease | Loctite | 37566 | S | 64-00030 | Anti-Seize Grease compr GREASE ANTI-SEIZE CON | LB | Metal | 1 lb |
| Dyprene cant Crown | Loctite | 37566 | | 64-00030 | GREASE ANTI-SEIZE CON P5428D10 | CA | Plastic | 2 lb |
| EPO DRAW(EIGHT COMPOU DYNAMATES | Henkel Corporation | R12 | A | 64-00029 | GREASE ANTI-SEIZE CON GREASE ANTI-SEIZE CON | Can | Plastic | 16/oz. |
| Loctite Nickel Anti Seize | Loctite 561 | 493-1-DJ+3 | PASTE | 64-00029 | Anti-Seize Grease GREASE ANTI-SEIZE CON | Can | Plastic | 1 lb |
| DISINFECTANT | T. Frank Mc Calls | 493-1-DJ+3 | L | 64-00027 | DISINFECTANT SPRAY 14 433-4-DJ4-3 | EA | Metal | 1 lb |
| DISINFECTANT | T. Frank Mc Calls | 433-1-DJ+3 | L | 64-00027 | DISINFECTANT SPRAY 14 433-4-DJ4-3 | EA | Metal | 1 lb |
| ANTI-SEIZE LUBRICANT | LOCTITE | 433-1-DJ+3 | L | 64-00027 | GREASE ANTI-SEIZE CON P5428D10 | EA | Metal | 1 lb |
| ANTI-SEIZE LUBRICANT | LOCTITE | 433-1-DJ+3 | L | 64-00027 | LUBRICANT LOCTITE 76 LUBRICANT LOCTITE 76 | EA | Metal | 19 oz |
| DISINFECTANT | T. Frank Mc Calls | 433-1-DJ+3 | L | 64-00027 | DISINFECTANT SPRAY 14 433-4-DJ4-3 | EA | Metal | 19 oz |
| DISINFECTANT | T. Frank Mc Calls | 433-1-DJ+3 | L | 64-00027 | DISINFECTANT SPRAY 14 433-4-DJ4-3 | EA | Metal | 19 oz |
| LUBRICANT CHAIN SAW | T. Frank Mc Calls | 1012 | L | 64-00032 | LUBRICANT CHAINSEAL LUBREASE 10033068 | EA | Metal | 12 oz |
| Dyprene cant Crown | Fausti Finder | 10031068 | A | 64-00032 | Dyprenecant Spot Clean DYPRENTANT CROWN | oz | Metal | 19 oz |
| EPO DRAW(EIGHT COMPOU DYNAMATES | Shell Industries | | | 64-00029-R01 | Anti-Seize Grease compr COMPOUND EPO DYMA | LB | Plastic | 14 oz |
| BRAKE FLUID | | 2234 | L | 64-00051 | COMPOUND EPO DYMAG COMPOUND EPO DYMA | CA | Plastic | 7.5 |
| DISINFECTANT | DYNAMATES | | | 64-00051 | DISINFECTANT SPRAY 14 433-4-DJ4-3 | EA | Plastic | 2 lb |
| JOHNSEN'S | JOHNSEN'S | 0781-319-8009 | L | 64-00069 | FLUID BRAKE DOT3 14 FLUID BRAKE DOT 3 14 | CAN | Metal | 19 oz |
| BRAKE FLUID | DONATO SPAVENTA | 0781-319-8009 | L | 64-00071-050 | FLUID RELTON RAPID T FLUID RELTON RAPID T1 | CAN | Metal | 19 oz |
| 2 CYCL ENG OIL | DONATO SPAVENTA | 0783-319-8009 | L | 64-00071-050 | OIL STIHL 8902A TWO CYC8902A | CS | Plastic | 19 oz |
| STIHL 2 CYCL ENG OIL | DONATO SPAVENTA | 5500026267 | L | 64-00071-050 | OIL STIHL 8902A TWO CYC8902A | CS | Plastic | 19 oz |
| 2 CYCL ENG OIL | SHELL TELLUS | 5500026267 | L | 64-00053 | OIL STIHL 8902A TWO CYC8902A | CS | Plastic | 19 oz |
| MOBIL OIL | SHELL TELLUS | 5500026267 | L | 64-00053 | OIL MOBIL UNIVIS HVI 1 | PAIL | Metal | 1 GAL |
| Mobil Oil | Prime Lube | | | 64-00053 | Mobile Oil OIL MOBIL UNIVIS HVI 1 | PAIL | Metal | 143 Oz |
| Model Oil | SHELL | 5500026267 | L | 64-00053 | Model Oil OIL MOBIL UNIVIS HVI 1 | PAIL | Metal | 143 Oz |
| MOBIL OIL | SHELL TELLUS | 5500026267 | L | 64-00053A | OIL MOBIL UNIVIS HVI 1 | PAIL | Plastic | 143 Oz |
| MOBIL OIL | SHELL OIL | 5500026267 | L | 64-00053A | OIL MOBIL UNIVIS HVI 1 | PAIL | Plastic | 12 oz |
| KEXTRACK TRACKSIDE FREIGH LO FOSTER | SOPUS PRODUCTS | 50A-T52-15000 | L | 64-00053A | FRICTION MODIFIER KEX FRICTION MODIFIER KE | GAL | Plastic | 12 oz |
| KEROsin Friction Modifier | Fuse Side Transit | 50A-T52-15000 | L | 64-00054 | FRICTION MODIFIER KEX FRICTION 50A-T52-1500 | Pail | Plastic | 1 GAL |
| SHELL SPIRAX S6 ATP ZM | SOPUS PRODUCTS | FLUID 2F SYNTHETIC TRANS | L | 64-00054 | FLUID 2F SYNTHETIC TR FLUID 2F SYNTHETIC TR | DR | Metal | 6.4 oz |
| SHELL SPIRAX S6 ATP ZM | SOPUS PRODUCTS | FLUID 2F SYNTHETIC TRANS | L | 64-00054 | FLUID 2F SYNTHETIC TR FLUID 2F SYNTHETIC TR | DR | Plastic | 6.4 oz |
| SHELL SPIRAX S6 ATP ZM | SOPUS PRODUCTS | TE-ML14E | L | 64-00560 | FLUID 2F SYNTHETIC TR FLUID 2F SYNTHETIC TR | DR | Plastic | 6.4 oz |
| Shell | Prime Lube | | L | 64-00560 | Synthetic Trans. Fluid FLUID 2F SYNTHETIC TR | Drum | Metal | 55 Gallon |

| Product | Supplier | Part No. | Form | Item No. | Description | Unit | Container | Size |
|---|---|---|---|---|---|---|---|---|
| SHELL SPIRAX SS ATF ZM | SOPUS PRODUCTS | | L | 61-006590 | FLUID ZF SYNTHETIC TRANS | DR | METAL DR | 55 GAL |
| SHELL SPIRAX SS ATF ZM | SOPUS PRODUCTS | | L | 61-006590 | FLUID ZF SYNTHETIC TRA | DR | METAL DR | 55 GAL |
| SHELL SPIRAX SS ATF ZM | SOPUS PRODUCTS | | L | 61-006590 | FLUID ZF SYNTHETIC TRA | DR | METAL DR | 55 GAL |
| CAM FULL SYNTHETIC DEXM | CAM2 INTERNATL,LLC | ADM-00117-2 | L | 61-006591 | Transmission Fluid | DR | METAL DR | 55 GAL |
| CAM FULL SYNTHETIC DEXM | CAM2 INTERNATL,LLC | ADM-00117-2 | L | 61-006591 | Transmission Fluid | DR | METAL DR | 55 GAL |
| CAM FULL SYNTHETIC DEXM | CAM2 INTERNATL,LLC | ADM-00117-2 | L | 61-006591 | Transmission Fluid | DR | METAL DR | 55 Gallon |
| Sioco | Prime Lube | 371412 | L | 61-006591 | Transmission Fluid | DR | Metal | 55 Gallon |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ADM-00117-2 | L | 61-006591 | Transmission Fluid | DR | METAL DR | 55 GAL |
| CAM FULL SYNTHETIC DEXM | CAM2 INTERNATL,LLC | ADM-00117-2 | L | 61-006591 | Transmission Fluid | DR | METAL DR | 55 GAL |
| CAM FULL SYNTHETIC DEXM | CAM2 INTERNATL,LLC | ADM-00117-2 | G | 61-006591-070 | Transmission Fluid | DR | METAL DR | 55.GAL |
| MAX/PRO PREMIUM TORCH ACE HARDWARE CORP | ACE HARDWARE CORP | ADM-00117-2 | G | 61-006591-070 | FLUID ALLISON SYNTHE | DR | METAL DR | 55.GAL |
| MAX/PRO PREMIUM TORCH ACE HARDWARE CORP | ACE HARDWARE CORP | ADM-00117-2 | G | 61-006591-070 | FLUID ALLISON SYNTHE | DR | METAL DR | 55.GAL |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ADM-00117-2 | | 61-006591-070 | FLUID ALLISON SYNTHETIC | DR | METAL DR | 55.GAL |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ADM-00117-2 | | 61-006591-070 | FLUID ALLISON SYNTHETIC | DR | METAL DR | 55 GAL |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ADM-00117-2 | | 61-00651-070 | FLUID ALLISON SYNTHE FLUID ALLISON SYNTHE | DR | METAL DR | 55.GAL |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ADM-00117-2 | | 61-006591-070 | FLUID ALLISON SYNTHETIC | DR | METAL DR | 55.GAL |
| AUTRAN SYN295 | 8P LUBRICANTS INC | ALLISON TES389 | | 61-006591-070 | FLUID TRANSMISSION AL FLUID TRANSMISSION | DR | METAL DR | 55 GAL |
| Howard | Howard | G-r674 | S | 61-006592 | REFRIGERANT - FREON N/A | TK | | 30 LB |
| Howard | Howard | G-624 | S | 61-006592 | REFRIGERANT - FREON N/A | EA | | 141 OZ |
| PKC Grease | Harschal | 82527 | S | 61-006593 | GAS MAPP 14.1 OZ CYLI GAS MAPP 14.1 OZ CYLI | EA | Metal | 14.1 OZ |
| PKC Non-Lead Anti-Seize CH Petrolem Products, Inc. | Petrolem Products, Inc. | 82537 | S | 61-006593-070 | GAS MAPP 14.1 OZ CYLI GAS MAPP 14.1 OZ CYLI | EA | Metal | 14.1 OZ |
| MOLY LUBRICANT LITHIUM 12 MODUL | ENVIRO SAVE PROD. | 33S2418 | S | 61-006594 | Insulated Grease | Tube | Plastic | 13.4 OZ |
| HEAVY DUTY GREASE | DRYDEN | 33334D | S | 61-006560 | SILICON GREASE | EA | Plastic | 5.3 OZ |
| SHELL DRYDEN 33127 | DRYDEN | 33127 | S | 61-006560-A | Grease No- Lead | LB | Plastic | 1 LB |
| GADUS DRYDEN 33127 | DRYDEN | 31312062 | S | 61-006560-A | GREASE GOLDEN NO-LE | EA | Metal Cartridge | 1 LD. |
| REFRIGERANT | Shell | 5052712 | S | 61-006561-A | GREASE GOLDEN NO-LE | EA | | 1 |
| REFRIGERANT | 84SL | | S | 61-006561A | GREASE ENVIRO SAVE E | EA | CARTRIDGE | HT WT 400G |
| MAX/PRO PREMIUM TORCH ACE HARDWARE CORP | PHILLIPS 66 CO. | | S | 61-006562 | GREASE ENVIRO SAVE E | LB | CARTRIDGE | 35 LBS |
| MEGAFLEX XD3 | Phillips 66 Lubricants | DOT 30WC 260/230 GY.003 | | 61-006563 | GREASE DRYDEN 53127 | PL | Metal | 35 LBS |
| Megaplex XD-3 | Phillips 66 Lubricants | NLGI #2 Lube | | 61-006564 | GREASE DRYDEN 53127 | PL | Plastic | 120 LB |
| FASTER | FASTEK CORP | | PASTE | 61-006565 | GREASE ENVIRO SAVE ( | GAL | Plastic | 5.3 GAL |
| Anti-Seize Grease | FASTEK CORP | FSDGAS1 | PASTE | 61-006565-A | Grease Lithium | EA | | 39.7 |
| PKC/D High Temperature Sch EUCHS Lubricants PLC | EUCHS Lubricants PLC | PKC/D | SEMI SOLID | 61-006565-A02 | GREASE LITHIUM COMP | CTB | Metal | 14 OZ |
| MOLY KOTE | DOW CORNING | 41133D-51516 | | 61-006565-B03 | GREASE LITHIUM 12 MO | CAN | CARTRIDGE | 14 OZ |
| MOLY KOTE | DOW CORNING CO. | 41133D-51516 | | 61-006569-B02 | GREASE LITHIUM 12 MO | CAN | Plastic Tube | 14.5 Oz |
| GREASE LITHIUM EP2 | SHELL | 199 MOLYTEK EP2 | PASTE | 61-006569-B02 | GREASE LITHIUM 12 MO | GL | | 5 |
| GREASE LUBRICATE | DRYDEN | 1050/-001 | | 61-006569-B01 | GREASE FASTEK FGASA Drum | Drum | Plastic | 15KG in 5 Gallon Pail |
| DRYDEN | DRYDEN | 1050/-001 | | 61-006570001 | GREASE FASTEK FGASA | OZ | Plastic | 5.3 OZ |
| DRYDEN | DRYDEN | 1130 | | 61-006570002 | GREASE MOLYKOTE 55 LUBRICANT | OZ | Plastic | 5.8 OZ |
| GREASE | ID-C4 | 1130 | | 61-006570001 | GREASE MOLYKOTE 55 LUBRICANT | PL | Metal | 35 LBS |
| Grease Compound | CROWN CORNING | | SEMI SOLID | 61-006571 | GREASE LUBRIPLATE 10 GC-05 (RIP ONLY) | EA | | 14 OZ |
| GREASE MPG #2 | CROWN CORNING | 130-C4 | SEMI SOLID | 61-006572 | GREASE LUBRIPLATE 10 IL-1 MULTI-PURPOSE | LB | | 120 LB |
| GREASE | Dow Corning Corp | 111 | SEMI SOLID | 61-006572 | GREASE DRYDEN 53127 ENVRO GAVE E | PL | Plastic | 35 LBS |
| Grease Compound | Dow Corning Corp | 1996800-0907 | SEMI SOLID | 61-006572001 | GREASE DOW CORNING DC-4 | TUBE | | 3 OZ |
| LUBRICANT | SYN-TECH | NS-4405-HC-DOT | SEMI SOLID | 61-006572-001 | Grease Compound | LB | | 5.3 OZ |
| LUBRICANT | MOLY & GRAPHITE | DSL-250 | | 61-006582 | Grease Compound | CAN | | 1 QT |
| LUBRICANT | MOLY N OPTIMA | 337-11 | | 61-006582-801 | SYNTHETIC GREASE | EA | Metal | 4 OZ |
| MEGAPLEX | THERMAL INTERNATIONAL | P-33104 | | 61-006883 | LUBRICANT R-40 THIX (IF-40)04 | BTL | Plastic | 24 OZ |
| MEGAPLEX | PHILLIPS 66 CO | CONOCO MEGAPLEX XD5 | | 61-006889 | LUBRICANT MOLY N GRAPH N/A | Metal | | 4 LITER |
| MEGAPLEX | PHILLIPS 66 CO | CONOCO MEGAPLEX XD5 | | 61-00719 | LUBRICANT MOLY N OPTIMA Lubricant | GA | Plastic | 4 LITER |
| MEGAPLEX | PHILLIPS 66 CO | CONOCO MEGAPLEX XD5 | | 61-00719 | GREASE LITHIUM12 MO CONOCO MEGAPLEX XE | OZ | METAL DR | 54.4.KG |
| MEGAFLEX | PHILLIPS 66 CO | CONOCO MEGAFLEX XD5 | | 61-00719 | GREASE LITHIUM12 MO CONOCO MEGAPLEX XE | DR | METAL DR | 54.4.KG |
| GADUS SHELL GREASE | S3 V 220 | CONOCO MEGAFLEX XD5 | | 61-00721 | GREASE LITHIUM12 MO CONOCO MEGAPLEX XE | DR | METAL DR | 54.4.KG |
| GADUS SHELL GREASE | S3 V 220 | CONOCO MEGAPLEX XD5 | | 61-00721A | GREASE LITHIUM12 MO CONOCO MEGAPLEX XE | DR | METAL DR | 40 LBS |
| Madagrease XHP 222 | Mobil Industrial | XHP 222 | | 61-00722 | GREASE SHELL GADUS S3GRAGE SHELL GADUS S | PL | Tube/Each | 13.7 Oz |
| GREASE MOBIL XHP 222 | MOBILE | 1213/28 | | 61-00722 | GREASE SHELL GADUS S3GRAGE SHELL GADUS S | PL | Plastic | 13.7 Oz |
| GADUS SHELL GREASE | S3 V 220 | 1213/78 | | 61-00722 | GREASE MOBIL 1213/28 GREASE MOBIL 1213/28 | EA | Plastic | 14 OZ |
| GREASE ROLLER BEARING | SHELL CORP | 53 AAH.AL | | 61-00723 | GREASE MOBIL 1213/28 GREASE MOBIL 1213/28 | EA | Plastic | 14 OZ |
| GREASE ROLLER BEARING | SHELL | | | 61-00725 | GREASE ROLLER BEARIM M-542 | DR | Metal | 120 LB |

| Product | Brand | Part No. | Type | Item No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| GREASE | LUBRIPLATE | GJ10731 | S | 61-C0731 | GREASE LUBRIPLATE 93 WHIC,1232 | EA | Metal | 14.5 OZ |
| Grease Lubripate | Lubriplate | L0265-098 | | 61-C0731 | GREASE LUBRIPLATE 93 | OZ | Tube | 14.5 OZ |
| LUBRIPLATE | Texaco | 2316 | | 61-C0731 | GREASE LUBRIPATE 93WHIC-1232 | EA | | 14.5 OZ |
| KLUBER LUBRICATION | KLUBER | FGEGAL-1705 | | 61-C0731-040 | GREASE KLUBER 0170694/A (0705 ONLY) | EA | | 14.5 OZ |
| GREASE KLUBER 01700-9-598 | PHILIPS 66 LUBRICANTS | 01700-9-598 | SEMI SOLID | 61-C0731-040 | GREASE KLUBER 0170694/A | GAL | Plastic | 5 GAL |
| MULTIPLEX RED GREASE | LUPH7785182 | LUPH7785182 | | 61-C0735 | GREASE TRAC LUBRIGAM GREASE | | Plastic | 16OZ |
| GREASE | FUCHS LUBRICANT | 160029 | L | 61-C0735 | GREASE LITHIUM EP 9 MALGREASE LITHIUM EP MAL | DR | METAL DR | 55 GAL |
| GREASE | FUCHS LUBRICANT | 160029 | S | 61-C0735 | GREASE LITHIUM EP 9 MALGREASE LITHIUM EP MAL | DR | METAL DR | 55 GAL |
| GREASE | FUCHS LUBRICANT | 160029 | S | 61-C0735 | GREASE LITHIUM EP 9 MAL | DR | METAL DR | 55 GAL |
| GREASE | PETRO CHOICE | 70221804 | S | 61-C0735 | GREASE LITHIUM EP MAL | EA | METAL DR | 55 GAL |
| GREASE | PETRO CHOICE | 70221804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| Model Oil | Prime Lube | SHC-220 | S | 61-C0736 | | EA | | 384 LB |
| GREASE | PETRO CHOICE | 70221804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| GREASE | PETRO CHOICE | 70221804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| GREASE | PETRO CHOICE | 70223804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| GREASE | PETRO CHOICE | 70223804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| GREASE MOBILTH | PETRO CHOICE | 70223804 | S | 61-C0736 | GREASE MOBILTH SHC 220 | EA | METAL DR | 55 GAL |
| Grease | PETRO CHOICE | 70223804 | | 61-C0736 | | EA | Plastic | 14.0z |
| GREASE | FUCHS LUBRICANT | 1011200294 | S | 61-C0740-R | Lithium Grease | Case | | 35 lb |
| LUBRICANT | ALVANIA EP | 71130 | S | 61-C0741A | GREASE LITHIUM HYDRAGREASE LITHIUM HYDR | CAN | Plastic | 35 LB |
| SHELL GADUS S3 V220AD 2 | SHELL | 001064558 | | 61-C0742-R01 | GREASE SHELL GADUS 5GREASE | PAIL | | 5 GAL |
| GREASE | FASTEX | FGASA-005 | | 61-C0746 | GREASE FASTEX FGASA-005 | PL | | 5 GAL |
| Lithium Grease | FASTEX | 12015 | SEMI SOLID | 61-C0746 | GREASE FASTEX FGASA-M05 | TUBE | | 18 OZ |
| MolyLux | ANTI Seize Technology | 12015 | SEMI SOLID | 61-C0750-040 | GREASE ANTI-SEIZE TEC GREASE ANTI-SEIZE TEC | TUBE | | 18 Oz. |
| ENGINE OIL | PPC LUBRICANTS | 5903-055 | | 61-C0830 | OIL ENGINE FOR FORD | DR | METAL DR | 55 GAL |
| WHITE GREASE | SPRAYON | 500100 | | 61-C0834 | | DR | METAL DR | 11 OZ |
| White Lithium Grease | Johnsen-5 | 4604 | | 61-C0834 | GREASE WHITE LITHIUM | CA | | 11oz |
| GREASE | SPRAYON | 500100 | | 61-C0834 | GREASE WHITE LITHIUM GREASE WHITE LITHIUM | EA | Metal | 11.02 |
| Lithium Grease | Sprayon | HM-610 | A | 61-C0834 | GREASE WHITE LITHIUM | Can | Metal | 11oz |
| WHITE GREASE | SPRAYON | 500100 | | 61-C0834 | GREASE WHITE LITHIUMGREASE WHITE LITHIUM | EA | Metal | 11.02 |
| SPRAYON WHITE LITHIUM | SPRAYON | 500100 | A | 61-C0834 | GREASE WHITE LITHIUM | EA | Metal | 11 OZ |
| WHITE GREASE | SPRAYON | 500100 | | 61-C0834 | GREASE WHITE LITHIUMGREASE WHITE LITHIUM | EA | Metal | 11.02 |
| WHITE GREASE | SPRAYON | 500100 | | 61-C0834 | GREASE WHITE LITHIUM GREASE WHITE LITHIUM | EA | Metal | 11.02 |
| GREASE | DRI-GUIDE | 175 | | 61-C00B5B001 | LUBRICANT 00325 DRI-5N/A | TUBE | Plastic | 5 GAL |
| LUBRICANT | DRI-GUIDE | 175 | | 61-C00B5B001 | LUBRICANT 00325 DRI-5N/A | TUBE | Plastic | 5 GAL |
| GREASE | Kluber | NBU-15 | | 61-C00B59050 | LUBRICANT KLUBER ISOFLUBRICANT KLUBER ISO | Cartridge | Metal | 400 Grams |
| Isoflex MBU-15 | MOBIL | 1994 | | 61-C0084A-R01 | GREASE TEXACO 1994 NWC - 1232 | LB | Plastic | 35 LBS |
| GREASE | MOBIL | 1994 | SEMI SOLID | 61-C0084A-R01 | GREASE TEXACO 1994 | LB | Plastic | 35 LBS |
| GREASE | TEXACO | 1994 | | 61-C00843-R01 | GREASE TEXACO 1994 F | GL | Metal | |
| Grease Lubricant | Interlube | M-3144-5 | | 61-C00843-R01 | Grease for Brae Cyend | | Metal | 35 lbs. |
| Interlube | N.7 | N.7 | | 61-G0055 | LUBRICANT CRC INDUSTLUBRICANT CRC INDUST | | Plastic | 14.1 OZ |
| LUBRICANT CRC | CRC INDUSTRIES | 2005 | | 61-G0053 | LUBRICANT CRC INDUST | CA | | 14.1 OZ |
| GEAR OIL 85W140EP | PPC LUBRICANTS | 85W140EP55 | | 61-G0054 | OIL GEAR 85W140EP 55 ADVANTAGE GL-5 85W | DR | METAL DR | 55 GAL |
| LUBRICANT | SPECIALTIES ADV LUB | 6063-055 | | 61-G0854 | OIL GEAR 85W140EP 55 ADVANTAGE GL-5 85W | DR | METAL DR | 55 GAL |
| GEAR OIL 85W140EP | PPC LUBRICANTS | 85W140EP55 | | 61-G0855 | OIL GEAR 85W140EP55ADVANTAGE GL-5 85W | DR | METAL DR | 55 GAL |
| GEAR OIL | SPECIALTIES ADV LUB | 110078 | L | 61-G0855 | OIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | A | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | T FRANK MCCALLS | 110078 | | 61-G0855 | OIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | A | 61-G0855 | OIL PENETRATING - APPOIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APP | CA | Metal | 141 OZ |
| LIQUID WRENCH | LIQUID WRENCH | 110078 | | 61-G0855 | OIL PENETRATING - APP | CA | Metal | 141 OZ |
| SYNTHETIC GEAR LUBE 75W1 | MOBIL | XM75WGRL | | 61-G0858-090 | OIL MOBIL 1 SYNTHETIC D1TZ-19580 B REF ONLY | EA | Metal | 1 QT |
| STONER DRY FILM MOLD REL | STONER | E408 | | 61-G0860 | RELEASE DRY FILM MOLEE08 STONER APPVD M | CA | | 12 FL OZ |
| LUB-O-SEAL ANTI-SEIZE LUB | LUB-O-SEAL | A55187 | PASTE | 61-G0861 | LUBRICANT LUB-O-SEALA55187 | CA | | 118 |
| LUB-O-SEAL ANTI-SEIZE LUB | LUB-O-SEAL | A55187 | PASTE | 61-G0861 | LUBRICANT LUB-O-SEALA55187 | CA | | 118 |
| STONER DRY FILM MOLD REL | STONER | A55187 | | 61-G0861 | LUBRICANT LUB-O-SEAL | CA | | 12fL |
| LUB-O-SEAL | LUB-O-SEAL | A55187 | | 61-G0861 | Anti-Seize Lubricant | CA | Metal | 118 |
| LUB-O-SEAL ANTI-SEIZE LUB | LUB-O-SEAL | A55187 | PASTE | 61-G0861 | LUBRICANT LUB-O-SEAL | CA | Metal | 118 |
| LUB-O-SEAL | LUB-O-SEAL | A55187 | | 61-G0861 | LUBRICANT LUB-O-SEAL | CA | Metal | 118 |
| LUB-O-SEAL WAX 5PW LUBRI | LUB-O-SEAL | A55187 | | 61-G0863 | LUBRICANT 5PW (1 GAL)LUBRICANT LUB-O-SEAL | EA | Metal | 1 GAL |
| FORMULA 173 WAX 5PW LUBRI | LUBRICANTS INDUSTRIAL PRODUCT | A55187 | L | 61-G0899 | LUBRICANT 5PW (1 GAL)LUBRICANT 5PW (1 GAL) | EA | Metal | 1 GAL |

| Product | Manufacturer | Model | State | Part No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| GREASE | PANTOGRAPH | M0118 | S | 61-01000 | GREASE PANTOGRAPH NAAC - 1232 | GA | Metal | 11 D |
| WHITE LIGHTNING (WET ROD) WET RIDE | | 3102 | L | 61-01080 | LUBE CHAIN WHITE LUG LUBE CHAIN WHITE LUG | EA | Plastic | 4 OZ |
| WHITE LIGHTNING WET RIDE WET RIDE | | 3102T | L | 61-01080 | LUBE CHAIN WHITE LUG LUBE CHAIN WHITE LUG | EA | Plastic | 4 OZ |
| HUMBLE HYDRAULIC | CRAFT OIL CORP | AZD530 | L | 61-01082 | OIL H2-44 HYDRAULIC OIL AW46 (OBSOLETE) | DR | METAL DR | 55 GAL. |
| HUMBLE PowerFlush Solvent | Robinair PowerFlush Solvent Sol 1756S | 1756S | L | 61-01082 | OIL TEXACO 1554 HYDRO TEXACO 1554 HYDRO | DR | Plastic | 1 GAL. |
| OIL THERMO KING | NU-CALGON Hi3H- SOLEST 33 | 2035613 | L | 61-01113-601 | OIL THERMO KING 203-ACC COMPRESSOR OIL | QT | Metal | UNKNOWN |
| OIL THERMO KING | NU-CALGON Hi3H- SOLEST 33 | 2035613 | L | 61-01113-601 | OIL THERMO KING 203-ACC COMPRESSOR OIL | QT | Metal | 11 OZ |
| REFRIGERANT | | RLG8H | L | 61-01113-602 | REFRIGERANT LUBRICACAOL THERMO KING AC CI | GAL | Plastic | UNKNOWN |
| REFRIGERANT | | RLG8H | SEMI SOLID | 61-01115-040 | OIL MOBIL DTE 10 ISO 22 OIL MOBIL DTE 10 SO 2 | QT | Metal | 1 QT |
| OIL MOBIL DTE 10 ISO 22 SAE MOBIL | MOBIL | RLG8H | L | 61-01121 | REFRIGERANT MAST DEAL RGRGRANT | QT | Metal | 1 QT |
| REFRIGERANT | NU-CALGON | RLG8H | L | 61-01121 | REFRIGERANT MAST DEAL RGRGRANT FLUSH | | Plastic | UNKNOWN |
| OIL REFRIGERANT MUST BE FLRGRANT FLUSH | NU-CALGON | RLG8H | L | 61-01121 | REFRIGERANT | N/A | | QT |
| CHEM LUBE 51033 | ULTRA CHEM INC. | 2017 17471 | L | 61-01127-050 | OIL CHEMLUBE 51033 5M OIL CHEMLUBE 51033 51 | QT | METAL DR | 55 GAL. |
| TEXACO CAPALLA OIL WF68 | TEXACO INC. | WF68 | L | 61-01128 | OIL TEXACO CAPALLA WO OIL TEXACO CAPALLA W | DR | METAL DR | 1 GAL. |
| 3GS SUNISO | 3GMITEON | 30000-000 | L | 61-01129 | OIL FRIGIDARE 150 VISO OIL | GAL | Plastic | 1 GAL. |
| TRANSGOLD | | UNKNOWN | L | 61-01129-003 | OIL FRIGIDARE 150 VISC OIL | GAL | Plastic | 1 GAL. |
| OIL | ATLAS | 61011AD | L | 61-01140 | CO²CO COMPRESSOR 1131009&68 | PL | Plastic | 5 GAL. |
| PREN HYDRAULIC OIL | PRIME LUBE | 5S062 | L | 61-01152 | OIL HYDRAULIC ISOVG 3 ALTRA AW32-100DH | DR | METAL DR | 55 Gallon |
| PREN HYDRAULIC OIL | PRIME LUBE | 5S062 | L | 61-01152 | OIL HYDRAULIC ISOVG 3 ALTRA AW32-100DH | DR | METAL DR | 55 Gallon |
| Exxon | | 15050 | L | 61-01152 | Hydraulic Oil | Drum | Metal | 55 Gallon |
| PREN HIGH VACUUM PU ROBINAIR UNITED REFRIGERA 13202 | ROBINAIR | 56062 | L | 61-01152 | OIL UNITED REFRIGERANT 13203 ROBINAIR | DR | METAL DR | 55 GAL. |
| HYDRAULIC OIL ISOVG SAE16V PRIME LUBE | PRIME LUBE | 56062 | L | 61-01152 | OIL HYDRAULIC ISOVG ALTRA AW32-100DH | DR | METAL DR | 55 GAL. |
| PREN HYDRAULIC OIL | PRIME LUBE | 5S062 | L | 61-01152 | OIL HYDRAULIC ISOVG ALTRA AW32-100DH | DR | METAL DR | 55 GAL. |
| OIL DIESEL MOTOR SAE 15W | INDCO | INDCO | L | 61-01155 | OIL DIESEL MOTOR SAE A43A-170307 LATEST RE | DR | Metal | 55 GAL. |
| SUNOCO SUPER C GOLD FULL | Prime Lube | AER4-170307 | L | 61-01158 | OIL DIESEL MOTOR SAE A43A-170307 LATEST RE | DR | Plastic | 5 GAL. |
| Control | | 152-40 | L | 61-01158 | Motor Oil | | Plastic | 1 GAL. |
| SUNOCO SUPER C GOLD FULL | Prime Lube | AER4-170307 | L | 61-01158 | OIL DIESEL MOTOR SAE A43A-170307 LATEST RE | DR | METAL DR | 55 GAL. |
| OIL DOW CORNING XAMETFLOW DOW CORNING | DOW CORNING | 7MX-200 | L | 61-01158 | OIL DOW CORNING XAMFLOW DOW CORNING XAM | DR | METAL DR | 20 KG |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE LUBRICANTS | 601-80W-90 | L | 61-01202 | OIL GEAR 01 S SAE GRA OIL GEAR 01 S SAE GRA | DR | METAL DR | 55 GAL. |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE LUBRICANTS | 601-80W-90 | L | 61-01202 | OIL GEAR 01 S SAE GRA OIL GEAR 01 S SAE GRA | DR | METAL DR | 55 GAL. |
| GEAR OIL | | GL-5 | L | 61-01202 | Gear Oil | Drum | Metal | 55 GAL. |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE LUBRICANTS | 601-80W-90 | L | 61-01202 | OIL GEAR 01 S SAE GRA OIL GEAR 01 S SAE GRA | DR | Plastic | 1 GAL. |
| PREMIUM HIGH VACUUM PU ROBINAIR UNITED REFRIGERA 13202 | ROBINAIR | 1035440D | L | 61-01202 | OIL UNITED REFRIGERANT 13203 ROBINAIR | EA | Plastic | 1 GAL. |
| PREMIUM HIGH VACUUM PU ROBINAIR UNITED REFRIGERA 13202 | ROBINAIR | 1035440D | L | 61-01202 | OIL UNITED REFRIGERANT 13203 ROBINAIR | EA | Plastic | 1 GAL. |
| PREMIUM HIGH VACUUM PU ROBINAIR UNITED REFRIGERA 13202 | ROBINAIR | SPE1PH015555 | L | 61-01203-01 | OIL UNITED REFRIGERANT 13203 ROBINAIR | EA | Plastic | 1 GAL. |
| PREMIUM HIGH VACUUM PU ROBINAIR UNITED REFRIGERA 13202 | ROBINAIR | SPE1PH015555 | L | 61-01203-01 | OIL UNITED REFRIGERANT 13203 ROBINAIR | EA | Plastic | 5 GAL. |
| PREMIUM HIGH VACUUM PU ROBINAIR | ROBINAIR | | L | 61-01203 | OIL UNITED REFRIGERANT 13203 ROBINAIR | EA | Plastic | 1 GAL. |
| DOW CORNING #200 SILICON DOW CORNING | DOW CORNING | DC200-100 CS200KG | L | 61-01203/01 | OIL DOW CORNING #20 DC200-100 CS200KG | DR | Metal | 5 GAL. |
| DOW CORNING #200 SILICON DOW CORNING | DOW CORNING | | L | 61-01201/01 | OIL LUBRI COMPOUND AA | EA | Plastic | 1 GAL. |
| SUNIS REFRIGERATION OIL | SUNIS REFRIGERATION | 1 - 1745S | L | 61-01201/01 | OIL DOW CORNING XAROL DOW CORNING XAM | DR | Plastic | 1 GAL. |
| OIL DOW CORNING XAMETFLOW CORNING | DOW CORNING | 7MX-200 | L | 61-01210 | OIL DOW CORNING XAROL DOW CORNING XAM | DRUM | Metal | 55 GALLON |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE | | L | 61-01210 | GEAR OIL | DR | Metal | 55 GAL. |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE | | L | 61-01210 | GEAR OIL | DR | METAL DR | 55 GAL. |
| GEAR OIL | Prime Lube | GL-5 | L | 61-01210 | OIL GEAR GL-5 SAE GRA OIL GEAR GL-5 SAE GRA | DR | METAL DR | 55 GAL. |
| GEAR OIL | Prime Lube | | L | 61-01210 | OIL GEAR GL-5 SAE GRA OIL GEAR GL-5 SAE GRA | DR | METAL DR | 55 GAL. |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE | | L | 61-01210 | AEM-08Y-S | DR | Plastic | 5 GAL. |
| GEAR OIL #80V90 ADVANTAGE PETROCHEMICAL LLC | ADVANTAGE PETROCHEMICAL LLC | SPE1PH015555 | G | 61-01233601 | LUBRICANT A-Z ULTRA S LUBRICANT A-Z ULTRA S | GAL | Metal | 2 GAL. |
| GEAR OIL 80V90GL-5 ADVANTAGE PETROCHEMICAL | ADVANTAGE PETROCHEMICAL SPE1PH015555 | SPE1PH015555 | G | 61-01233601 | LUBRICANT A-Z ULTRA S LUBRICANT A-Z ULTRA S | GAL | Plastic | 10 OZ |
| ADVANTAGE 80V90 GL-5 | ADVANTAGE LUBRICATION SYS | 227309 | L | 61-01330801 | OIL J/N CD TNC-CV-624 NATIONAL REFRIGERAN | QT | Metal | 11 OZ |
| HUMBLE HYDRAULIC H 68 | NATIONAL REFRIGERANT | 8011 | L | 61-01386 | OIL J/N CD TNC-CV-624 NATIONAL REFRIGERAN | QT | Metal | 64 OZ |
| AIRCRAFT FUEL | | PASTE | L | 61-01386 | OIL AW GHTHMAUEIL W CITCO AW468 | TUBE | Plastic | 2 GAL. |
| Ultra Slip switch Plate Lubricant & Analytes & Lubricants | EXXON MOBIL CORP | 41311802 | L | 61-01511 | LUBRICANT A-Z ULTRA A | TUBE | Metal | 10 OZ |
| MAGNAFLUX 3AL-5P METAL MAGNAFLUX | PERMATEX CORP | 475328 | L | 61-01400-F03 | Silicone | GAL | Metal | 11 OZ |
| SILICONE Refrigeration Oil Fluid Parker-Hannifin Corp. | Parker-Hannifin Corp. | #25B | L | 61-05211 | PENETRANT MAGNAFLU PENETRANT MAGNAFLU | GAL | Plastic | 14.1 OZ |
| Hi Temp. | Permatex | 394182 | G | 61-01422 | PROPANE REFILLS 14.1 L BENNDO T93 | EA | Plastic | 36.oz |
| PROPANE | BENNDOMATIC | 104192 | G | 61-01422 | PROPANE REFILLS 14.1 L BENNDO T93 | EA | Metal | 14.1 OZ |
| PROPANE | BENNDOMATIC | 104192 | G | 61-01422 | PROPANE REFILLS 14.1 L BENNDO T93 | EA | Metal | 14.1 OZ |
| PROPANE | BENNDOMATIC | 394182 | G | 61-01422 | PROPANE REFILLS 14.1 L BENNDO T93 | EA | Metal | 14.1 OZ |
| PROPANE | BENNDOMATIC | 104192 | G | 61-01422 | PROPANE REFILLS NAAC 2018 | EA | Metal | 14.1 OZ |
| PROPANE | BENNDOMATIC | 60142Z | G | 61-01422 | PROPANE REFILLS | EA | Metal | 14.1 OZ |

| Item | Manufacturer | Part No. | | Stock No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| PROPANE | Bernzomatic | 304182 | G | 61-03-422 | Propane Refill | EA | Metal | 14.1/oz |
| PROPANE | BERNZOMATIC | 304182 | G | 61-03-422 | PROPANE REFILLS 14.1 (BERNZO TX9) | EA | Metal | 14.1 OZ |
| PROPANE | Worthington Industries | 333670 | G | 61-03-427 | PROPANE HARDWARE IN HD | EA | Metal | 14.1 OZ |
| Worthington Propane Refills, Worthington Industries | | 304182 | G | 61-03-422 | PROPANE REFILLS 14.1 BERNZO TX9 | EA | Metal | 14.1 OZ |
| PROPANE BLUE | BERNZOMATIC | 304182 | G | 61-04-042 | PROPANE HARDWARE IN HD | EA | Metal | 14.1 OZ |
| PROPANE | BERNZOMATIC | 304182 | G | 61-04-042 | PROPANE REFILLS 14.1 BERNZO TX9 | EA | Metal | 14.1 OZ |
| LOCTITE 565 PST PIPE SEALANT HENKEL CORP | HENKEL | 56531 | G | 61-04-0430-001 | SEALANT LOCTITE 56531 | OZ | Plastic | 1.69 OZ |
| Loctite | HENKEL | 56531 | G | 61-04-0430-001 | SEALANT LOCTITE 565 | OZ | Plastic | 80ml. |
| loctite | HENKEL | 56531 | | 61-04-041 | Sealant Tight | EA | Plastic | 80ml |
| Sealant | | 55650 | G | 61-04-044 | SEALANT ESSEX RTV732 SEALANT LOCTITE 5961 | EA | Plastic | 80 ML |
| RTV SEALANT LOCTITE 5961 LOCTITE | | 55650 | G | 61-04-0460 B01 | SEALANT ESSEX RTV732 SEALANT LOCTITE 5961 | EA | Plastic | 4.7 OZ |
| CLEAR SEALANT ESSEX RTV732 ESSEX | | RTV732 | SEMI LIQUID | 61-04-0460 B01 | SEALANT ESSEX RTV732 | EA | Plastic | 1 GZ |
| SEALANT | ESSEX | RTV732 | SEMI LIQUID | 61-04-0460 B01 | SEALANT ESSEX RTV732 LDMC 1226 | EA | Metal | 12 OZ |
| SILICONE LIQUID WRENCH | CHAMPION | 75259 | G | 61-04-0474 | SILICONE SUPER LUBRICANT | CAN | Metal | 20 OZ |
| SILICONE LIQUID WRENCH | CHAMPION | 75259 | G | 61-04-0474 | SILICONE SUPER LUBRICANT AEROSOL | CA | Metal | 11OZ |
| CHAMPION LIQUID WRENCH | | 4385.551 | A | 61-04-0474 | SILICONE SUPER LUBRIC A00328 (AMREP) | CA | Metal | 20 OZ |
| SILICONE LIQUID WRENCH | | 75259 | A | 61-04-0474 | SILICONE SUPER LUBRIC A00328 (AMREP) | CA | Metal | 20 OZ |
| SILICONE LIQUID WRENCH | | 75259 | A | 61-04-0474 | SILICONE SUPER LUBRIC AOO328 (AMREP) | CA | Metal | 8 OZ |
| SILICONE LIQUID WRENCH | | 75259 | A | 61-04-0474 | SILICONE SUPER LUBRIC AOO328 (AMREP) | CA | Metal | 8 OZ |
| PETROLEUM JELLY | PERSONAL CARE | 4835909362 | PASTE | 61-04-0474 | GREASE WHITE PETROLEUM PROTECTANT | CA | Metal | 8 OZ |
| SEALANT | | 75259 | PASTE | 61-04-0474 | SILICONE SUPER LUBRIC A00328 (AMREP) | CA | Metal | 14 OZ |
| Aero | Lubriplate | | PASTE | 61-04-0474 | GREASE AEROM 103150 GREASE AEROM 101150 | GAL | Plastic | 20 OZ |
| MOBIL ALMO | Mobil Corporation Industrial | ALMO 525 | L | 61-04-0673 | OIL SAE 20W/20 | GAL | Plastic | 1 GAL |
| ALMO 525 Aer Tool Oil | A.W. Chesterton Co. | ROCKOL | L | 61-04-067 | AIR TOOL OIL REDUCTION HYDRLOCK KA 6 | OZ | Plastic | 32 Oz |
| Sherbeld's Second Leak Dated, Winson Products, Company | | 73915 | L | 61-04-068 | OIL CHESTERTON AWC OIL CHESTERTON AWC 6-Case | OZ | Plastic | 34.5 Oz |
| 3M GENERAL TRIM ADHESIVE 3M | | 5088 | L | 61-04-068 | ADHESIVE 3M 08028 3 FR ADHESIVE AIR TOOL 80B5 SPRL | CA | Metal | 18.1 OZ |
| PETROLEUM JELLY | PERSONAL CARE | 4835909362 | PASTE | 61-01-0495 | GREASE WHITE PETROLEUM PROTECTANT | CA | Plastic | 8 OZ |
| PETROLEUM JELLY | PERSONAL CARE | 4835909362 | PASTE | 61-01-0495 | GREASE WHITE PETROLEUM PROTECTANT | CA | Plastic | 8 OZ |
| GRAFFITI REMOVER | CANTOL | 5103 | L | 61-01-0495 | SOLUTION MERLOCK REDUCTION SHRMLOCK KGall | GAL | Metal | 8 OZ |
| CD ELECTRONIC CLEANER | CNC INDUSTRIES | 5103 | L | 63-00318 | ELECTRICAL CONTACT CLEANER | CA | Metal | 11 OZ |
| GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002 | GRAFFITI REMOVER | PI | Plastic | 1 GAL |
| CLEANER-CCTF-CONCRETE | ARDEX CONCRETE CLEANER | 4318L-44 | L | 67-00002 | CLEANER-CCTF-CONCRETE CONCRETE CLEANER | EA | Plastic | 5 GAL |
| PURPLE CLEANER CONCRETE | IT FRANK McCALL | 5222F | L | 67-00001 | CLEANER - CCTF - CONC5222 F PURPLE FLOOR | EA | Plastic | 5 GAL |
| Aero | McCall's | 5222F | L | 67-00001 | Concrete Cleaner | Pail | Plastic | 5 Gallon |
| CONCRETE CLEANER | McCALLS | 5222F | L | 67-00001 | CLEANER - CCTF - CONC PURPLE CLEANER | Pail | Plastic | 5 GAL |
| GRAFFITI ZAPPER | MAGNUM RESEARCH CORP. | 31327039 | L | 67-00002 | GRAFFITI ZAPPER | OZ | Plastic | 30/16.z |
| GRAFFITI ZAPPER | MAGNUM RESEARCH CORP. | | L | 67-00002 | GRAFFITI ZAPPER | OZ | Plastic | 32 Oz |
| CLEANER - CCTF | GAT | | L | 67-00002 | SAE 20W/20 | OZ | Plastic | 64 OZ |
| CLEANER-CCTF | MAGNUM RESEARCH | | L | 67-00002 | AIR TOOL OIL REDUCTION AIR TOOL QGart | OZ | Plastic | 32 Oz |
| GRAFFITI ZAPPER | CANTOL | 3194 | L | 67-00002 | GRAFFITI REMOVER | PI | Plastic | 1 GAL |
| GRAFFITI ZAPPER | CANTOL | 3194 | L | 67-00002A | GRAFFITI REMOVER | PI | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | MAGNUM RESEARCH CORP | GQ5-6-GPD | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Plastic | 19 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 OZ |
| GAT GRAFFITI REMOVER | CANTOL | 3194 | L | 67-00002A | CLEANER - CCTF - GRAFF GRAFFITI REMOVER DZ | EA | Metal | 3.2OZ |
| GRAFFITI ZAPPER | | GQ-5-GPD-v2 | L | 67-00002-A | CLEANER - CCTF - GRAFF GRAFFITI GEL (REF ONLY | EA | Metal | 16 Oz |
| Ardex Graffiti Remover | Gat | 8265 | A | 67-00002-A | CLEANER - CCTF - GRAFF CLEANER - CCTF - GRAFF | EA | Plastic Bottle | 3 Oz |
| Ardex Graffiti Remover, Inc. | Contel Industries | GQ-5-GPD-v2 3194 | A | 67-00002-A | CLEANER - CCTF - GRAFF GRAFFITI PARTY CLEANER | PI | Plastic | 3 Oz |
| Gat Graffiti Remover | McCall's | 5SGS005 | A | 67-00003 | Tile Cleaner | Pail | Plastic | 5 Gallon |
| Ardex | McCALLS | 51S507pray | L | 67-00003 | CLEANER CCTF TILE | PI | Plastic | 5 GAL |
| TILE CLEANER | McCALLS | 51SFPRAY | L | 67-00004 | TILE CLEANER | PI | Plastic | 5 GAL |
| LEMON SKIES CLEANERS & DRS CONTRACT CLEANERS SUP & BMT/24-H | | | L | | CLEANER - CCTF - URINE LEMON SKIES | EA | | 5.GAL. |

| Product | Manufacturer | Part No. | L/A | Code | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| LEXON SKIES CLEANER & DEG | CONTRACT CLEANERS SUP & | 1MT724-H | L | 67-00004 | CLEANER - CCTF - DISIN/ DISIN/BACTI-SAN | PL | Plastic | 5-GAL |
| LEXON SKIES CLEANER & DEG | CONTRACT CLEANERS SUP & | 1MT724-H | L | 67-00004 | CLEANER - CCTF - DISIN/ EMCHEN (REF ONLY) | PL | Plastic | 5-GAL |
| CLEANER | MCCALL | D70004 | L | 67-00004 | CLEANER - CCTF - DISIN/ LEXON SKIES | PL | Plastic | 5-GAL |
| CLEANER | MCCALL | D70004 | L | 67-00004 | CLEANER - CCTF - DISIN/ LEXON SKIES | PL | Plastic | 5-GAL |
| LEXON SKIES CLEANER & DEG | CONTRACT CLEANERS SUP & | 1MT724-H | L | 67-00004 | CLEANER - CCTF - DISIN/BACTI-SAN | PL | Plastic | 5-GAL |
| LEXON SKIES CLEANER & DEG | CONTRACT CLEANERS SUP & | 1MT724-H | L | 67-00004 | CLEANER - CCTF - DISIN/BACTI-SAN | PL | Plastic | QT 32-OZ |
| AVISTAT-D | NCL | | A | 67-00004A | Disinfectant Cleaner | OZ | Metal | 15 |
| AVISTAT-D READY TO USE SPRAY | NATIONAL CHEMICAL LABS | 252 | A | 67-00004A | CCTF Disinfectant | QT | Plastic | 32OZ |
| CCTF Disinfectant | NCL | 0252 | A | 67-00004A | CCTF Disinfectant ( CLEANER - CCTF DISINF | OZ | Metal | 15 |
| Avistat-D | NCL | | A | 67-00004A | CLEANER - CCTF DISINF | Pail | Plastic | 5 Gallon |
| INTERIOR CLEANER | MCCALLS | PFW122 | L | 67-00007 | CLEANER - BUILDING/VA ATM-080709 | PL | Plastic | 5-GAL |
| PF WAVE | FINE ORGANICS CORP | PFW122 | L | 67-00007 | CLEANER - BUILDING/VA PF WAVE PFW122 | PL | Plastic | 5-GAL |
| Arex | McCalls | 5234 | L | 67-00007 | Interior Cleaner | OZ | Plastic | 5-GAL |
| AVISTAT-D Cleaner | AVISTAT | 0860 | A | 67-00007 | CLEANER - BUILDING/VA/ (REF ONLY) | PL | Plastic | 5-GAL |
| SEPTA BELIEVE | CANTOL USA INC | 690858 | L | 67-00008 | CLEANER - CCTF - FLOOR BELIEVE | PL | Plastic | 5-GAL |
| SEPTA BELIEVE | CANTOL USA INC | 690858 | L | 67-00008 | CLEANER - CCTF - FLOOR BELIEVE | PL | Plastic | 30 OZ |
| ZEP VUE CLEANER WINDOW/ZEP INC | | G70858 | L | 67-00008 | CLEANER - CCTF - FLOOR BELIEVE | PL | Plastic | 30 OZ |
| ZEP VUE CLEANER WINDOW/ZEP INC | | | L | 67-00008 | CLEANER - CCTF - FLOOR BELIEVE | PL | Plastic | 30 OZ |
| ZEP VUE CLEANER WINDOW/ZEP INC | | | L | 67-00008 | CLEANER - CCTF - FLOOR BELIEVE | PL | Plastic | 1802 |
| HI BRITE | BRIGHT BLAST | BRIGHT BLAST | L | 67-00008A | CLEANER CANTOL HI-BR (CLEANER CANTOL HI-BR | CAN | Metal | 1802 |
| CANTOL HI-BRITE METAL FINE | CANTOL INC | 6850-00-0011394 | L | 67-00008A | CLEANER NON-CORR MK (CLEANER NON-CORR MK | EA | Metal | 19.0Z |
| CANTOL NON-CORROSIVE MK | CANTOL INC | G7000068 | L | 67-00008B | CLEANER NON-CORR MK (REF ONLY) | EA | Metal | 19.0Z |
| P.F WAVE | T. Frank McGill | 5234 | L | 67-00007 | CLEANER - BUILDING/VA (REF ONLY) | PL | Plastic | 5-GAL |
| P.F WAVE | T. FRANK McCALLS | PFW122 | L | 67-00007 | CLEANER - BUILDING/VA PFW122 | PL | Plastic | 5-GAL |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008AA | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE WAX STRIPPER | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| EDGE | T. FRANK McCALLS | 16708 | L | 67-00008A | CHEMICAL - CCTF WAX CHEMICAL - CCTF WAX | EA | Metal | 19.0Z |
| Edge | T. Frank McCalls, Inc. | 16708 | L | 67-00008-A | CHEMICAL - CCTF WAX/ CHEMICAL - CCTF WAX | EA | Metal | 19 OZ |
| PERFECTION | ADVANCED FLOW CORP | G70020 | L | 67-00009 | CLEANER - CCTF - FLOOR ACRYMET PLUS | PL | Plastic | 5-GAL |
| FLOOR FINISHER (WAX) | NATIONAL LABORATORIES | N/A | L | 67-00009 | CLEANER - CCTF - FLOOR ACRYMET PLUS | PL | Plastic | 5-GAL |
| FLOOR FINISHER | PERFECTION | | L | 67-00009 | CLEANER - CCTF - FLOOR WAX | PL | Plastic | 5 GALLONS |
| WHEEL CLEANER | N/A | E-5223 | L | 67-00010 | CLEANER - VEHICLE EXT CLEANER A - VEHICLE EXT | PL | Plastic | 5-GAL |
| ARDEX WAVE | ARDEX | RTU 5223 | L | 67-00030 | CLEANER A - VEHICLE EXT CHEM-LA 50 | PL | Plastic | 5-GAL |
| ARDEX WAVE | ARDEX LABORATORIES | 99174 | L | 67-00012 | CLEANER - CCTF - HEAVY/A-ONE | PL | Plastic | 5-GAL |
| DEGREASER WAVE #5504 | ARDEX LABORATORIES | 99174 | L | 67-00012 | CLEANER - CCTF - HEAVY/A-ONE | PL | Plastic | 5-GAL |
| DEGREASER WAVE #5504 | ARDEX LABORATORIES INC | G7000030 | L | 67-00012 | CLEANER - CCTF - HEAVY/A-ONE | PL | Plastic | 5-GAL |
| ZEP ORIGINAL ORANGE | ZEP INC | | L | 67-00014 | CLEANER - CCTF - HAND/ CLEANER - CCTF - HAND | PI | Plastic | 1-GAL |
| CLEANER | SOLUTIONS PLUS INC | UP 5955 | L | 67-00014 | CLEANER - CCTF - HAND/ CLEANER - CCTF - HAND | FAIL | Plastic | 55 GAL |
| DEGREASER WAVE #5504 | ARDEX LABORATORIES INC | 5P955 | L | 67-00016 | STAINLESS STEEL CLEAN/ NAC - 1375 | PL | Plastic | 55 GAL |
| UP 571 BUSTER | SOLUTIONS PLUS INC | | L | 67-00016 | STAINLESS STEEL CLEAN/ NAC - 1375 | PL | Plastic | 1-GAL |
| 3 M 571 LOW | 3M Industries | 223230-9 | L | 6F-00004 | ADHESIVE 3M SUPER 74 3M 482242-1) | DR | Metal | 18.0Z |
| SPRAY FOAM | 3M | SUPER 74 3M | A | 6F-00005 | ADHESIVE 3M 223230-9 223230-9 | EA | Metal | 4-OZ |

| Description | Brand | Part No. | | Spec | Part No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|---|
| Foam Fast 74 Spray | 3M | 30500 | L | | 62-0035 | Adhesive foam Spray | OZ | Plastic | 1 OZ |
| ADHESIVE | LOCTITE | 38090 | | | 67-0003 | ADHESIVE 38090 LOCTITE 38090 | EA | Metal | 18.1 OZ |
| 3M GENERAL TRIM ADHESIVE 3M | 3M | 8088 | L | | 67-0052 | ADHESIVE 3M 8088 SPR ADHESIVE 3M 8088 SPR | CA | Metal | 18.1 OZ |
| 3M GENERAL TRIM AUTO ADH | 3M Industries | 8088 | L | | 67-0052 | ADHESIVE 3M 8088 SPR ADHESIVE 3M 8088 SPR | CA | Metal | 18.1 OZ |
| 3M GENERAL TRIM ADHESIVE 3M | 3M | 5036.85 | L | | 67-0052 | ADHESIVE 3M 8088 SPR ADHESIVE 3M 8088 SPR | CA | Metal | 18.1 OZ |
| BOWL CLEANER | RENOWN | REN02838-MS | L | | 67-0075 | RENOWN #813 ACID BOWL CLEANER | GL | Plastic | 5 |
| Red Devil Sweetened | Red Devil | 08/6-Qt. | | | 67-0005-F01 | BULK RED DEVIL SILICA | QT | Plastic | 1 QT |
| Red Devil Sweetened | Red Devil | 08/6-Qt. | | | 67-0075 | BULK RED DEVIL SILICA | OZ | Metal | 10.1 |
| CLEANER | ZORBIEN | 55502(67-00) | A | | 67-0018 | CHEMICAL, ELECTRICAL CLEANER/CAN | GAL | Plastic | GAL |
| AD ELECTRONIC CLEANER | | 5502 | A | | 67-0018 | CHEMICAL, ELECTRICAL CL ELECTRONIC CLEAN | GAL | Metal | 11 OZ |
| PARTS KLEEN | ARGONQUIN PARTS CLEAN | 0087060087 | | | 67-0051 | Solvent | GL | Plastic | 5 GAL |
| Parts Kleen | ZEP INC | 143 SOLVENT | | | 67-0051 | CHEMICAL, ZEP DYNA 14 PARTS KLEEN | GL | Metal | 5 GAL |
| Chemical Solvent | Algonquin Products, Co. | 7057-27 | | | 67-0051 | CHEMICAL, ZEP DYNA 14 SOLVENT M S.B FALL | OZ | Plastic | 5 OZ |
| WITH/VALVE TRAP | | 8011-27 | | PASTE | 67-0083 | CEMENT BLACK WEATHR SILICONE | OZ | Metal | 5 OZ |
| CEMENT  WELDWOOD | DAP | 54025 | | | 67-0067 | Contact Gel | QT | Metal | 1 |
| CEMENT  WELDWOOD | WELDWOOD | 54025 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOOD | QT | Metal | 1 QT |
| Weldwood | DAP Products, Inc. | 25312 | | SEMI SOLID | 67-0067 | Contact Cement | EA | Metal | Quart |
| CEMENT  WELDWOOD | DAP INC | 54025 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOOD CEMENT DAP WELDWOO | EA | Metal | 1 QT |
| CEMENT  WELDWOOD | WELDWOOD | 272 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOO CEMENT DAP WELDWOOD | EA | Metal | 1 QT |
| CEMENT  WELDWOOD | WELDWOOD | 54025 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOO CEMENT DAP WELDWOOD | EA | Metal | 32 OZ |
| CEMENT  WELDWOOD | WELDWOOD | 54025 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOO CEMENT DAP WELDWOOD | QT | Metal | 1 QT |
| CEMENT  WELDWOOD | WELDWOOD | 54025 | | SEMI SOLID | 67-0067 | CEMENT DAP WELDWOO CEMENT DAP WELDWOOD | QT | Metal | 1 QT |
| Orbix-a-GASKET | PERMATEX CORP. | 80011 | | SEMI SOLID | 67-0079 | CEMENT PERMATEX 800 SILICONE | EA | Metal | 16 OZ |
| CARBX | CARBX | R-955R | | | 67-0079 | CHEMICAL, CARB X 6.555 CARBX 6.555 | EA | Plastic | 5 GAL |
| CLEANER | ROUND ROBIN | 67303A | | | 67-0083A | CHEMICAL, HEAVY DUTY S238 NEW WAVE [REF C | PL | Metal | 5 GAL |
| EZP ROUND ROBIN | ZEP INC | S238 NEW WAVE | | | 67-0083A | CHEMICAL, HEAVY DUTY S238 NEW WAVE [REF C | PL | Plastic | 5 GAL |
| EZP ROUND ROBIN | ZEP INC | S238 NEW WAVE | | | 67-0083A | CHEMICAL, HEAVY DUTY 2009 MP [REF ONLY] | PL | Plastic | 5 GAL |
| Chemical Spray | Brand Robin | 790835 | | | 67-0083A4 | CHEMICAL, HEAVY DUTY 2009 MP [REF ONLY] | EA | Metal | 11 OZ |
| DEFOAMER EDS 211 | GLOBE ELECTRIC | 9474 225 | | | 67-0084 | DEFOAMER EDS 211 | GL | Plastic | 1 GAL |
| SUPER-SOLV INK/MARK REMT F | | NO PART NUMBER | | | 67-0094 | CHEMICAL, INK/MARK R CHEMICAL, INK/MARK R | EA | Plastic | 1 GAL |
| SUPER-SOLV INK/MARK REMT F | | NO PART NUMBER | | | 67-0094 | CHEMICAL, INK/MARK R CHEMICAL, INK/MARK R | EA | Plastic | 2 LITERS |
| 3M DEODORIZER FRESH SCEN 3M | 3M | DEODORIZER 3M 5036CS03DS | | | 67-0410 | DEODORIZER 3M 5036G DEODORIZER 3M 5036G | EA | Plastic | 2 LITERS |
| 3M DEODORIZER FRESH SCEN 3M | 3M | DEODORIZER 3M 5036CS03DS | | | 67-0410 | DEODORIZER 3M 5036G DEODORIZER 3M 5036G | EA | Plastic | 2 LITERS |
| 3M DEODORIZER FRESH SCEN 3M | 3M | DEODORIZER 3M 5036CS03DS | | | 67-0410 | DEODORIZER 3M 5036G DEODORIZER 3M 5036G | EA | Plastic | 2 LITERS |
| 3M DEODORIZER FRESH SCEN 3M | 3M | DEODORIZER 3M 5036CS03DS | | | 67-0410 | DEODORIZER 3M 5036G DEODORIZER 3M 5036G | EA | Plastic | 2 LITERS |
| 3M DEODORIZER FRESH SCEN 3M | 3M | DEODORIZER 3M 5036CS03DS | | | 67-0410 | DEODORIZER 3M 5036G DEODORIZER 3M 5036G | EA | Plastic | 2 LITERS |
| Orbix-a-GASKET | PERMATEX CORP. | 80011 | | | 67-0410 | CEMENT FERMATEX 800 SILICONE | EA | Plastic | 16 OZ |
| CLEANER | | 5238 | | | 67-004-12702 | CHEMICAL TRIAC LUBRIC CE FREE SWITCH | EA | Plastic | 5 GAL |
| CLEANER | | 3238 | | | 67-004-12702 | CHEMICAL CONCRETE C CHEMICAL CONCRETE C | EA | Plastic | 5 GAL |
| EZP ROUND ROBIN | | 1238 | | | 67-0414 | CHEMICAL XIAMETER A CHEMICAL XIAMETER A | DR | Plastic | 25 LBS |
| Midwest Industrial Ice Free | SiC/CHEMICAL, IWA, C LUBRICANT | SP224 | | POWDER | 67-0414 | CHEMICAL, SPEC 1-5521 | DR | Plastic | 55 GAL |
| VOSON STAIN STEEL 309 | VOSON CHEMICAL INC | ACP-3020 | | POWDER | 67-0050-901 | Stainless Steel Cleaner | Can | Metal | 18/roz |
| NIANETT ANTI FOAMER | IWANETT | SP224 | | | 67-0014 | CHEMICAL, NIMBITE STA | Can | Plastic | 18/roz |
| NIANETT ANTI FOAMER | IWANETT | 1238 | A | | 67-0067 | CLEANER CRC 02020 LEC CLEANER CRC 02020 LEC | Can | Plastic | 11 OZ |
| SUD IT FA | SOLUTION PLUS INC | 2020 | A | | 67-0067 | LECTRA CLEAN | GAL | Plastic | 1 GAL |
| Hi-DiRE | Camald Corp | 17083-4A | | | 67-0067 | LECTRA CLEAN | GAL | Plastic | 1 GAL |
| LECTRA CLEAN HEAVY DUTY | CRC | 2020 | | | 67-0074 | CDC | OZ | Metal | 11 OZ |
| LECTRA CLEAN HI | CRC | 2170 | L | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | L | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | L | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | A | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CleanerCRC 2170 | CRC | 2170 | A | | 67-0074 | Cable Cleaner | OZ | Metal | 11 1 |
| CleanerCRC 2170 | CRC | 2170 | A | | 67-0074 | Cable Cleaner | OZ | Metal | 11 1 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| CRC CABLE CLEAN HF HIGH VOC | CRC | R-1296 | A | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | OZ | Metal | 11 02 |
| Cable Cleaner | CRC | 2170 | | | 67-0074 | Cable Cleaner | Can | Metal | 16/roz |
| CRC CABLE CLEAN HF HIGH VOC | CRC | 2170 | L | | 67-0074 | CLEANER CRC 2170 CAB CRC 2170 | CA | Metal | 11 02 |

| Product | Manufacturer | Part No. | Code | Item No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| CRC CABLE CLEAN HP HIGH VC/EC | | 2170 | L | 67-00074 | CLEANER CRC 2170 CAB CRC 2170 | CA | Metal | 11 OZ |
| CLEANER CRC 2170 CABLE CLE... CASTOL LBM CORP | CRC INDUSTRIES | 2170 | | 67-00074 | CLEANER CRC 2170 CAB CLEANER CRC 2170 CAB | EA | Metal | 11 OZ |
| CRC CABLE CLEAN HI VC/EC CRC 2170 | | 2170 | A | 67-00074 | CLEANER CRC 2170 CAB CLEANER CRC 2170 | CA | Metal | 11 OZ |
| CRC CABLE CLEAN HP HIGH VC/EC | | 2170 | L | 67-00074 | CLEANER CRC 2170 CAB CRC 2170 | CA | Metal | 11 OZ |
| NILODOR 1 BDJ-C CARPET EXTRACTION | Nilodor | 1801-C | | 67-00079 | CLEANER NILODOR 32-5 NAAC - 4246 | QT | Plastic | Quart |
| CARPET CLEANER | | 32-5R | A | 67-00079 | Carpet Cleaner | QT | Metal | Quart |
| Cleaner | Nilodor | 32-5R | | 67-00079 | CLEANER NILODOR 32-5 | QT | Metal | 19 OZ |
| SPOT N STAIN | NILODOR | 32-5R | A | 67-00079 | CLEANER NILODOR 32-5 CLEANER 32-5 | EA | Plastic | 1 QT |
| SPOT N STAIN | NILODOR | 32-5R | | 67-00079 | CLEANER NILODOR 32-5 CLEANER 32-5 | EA | Plastic | 1 QT |
| CLEANER NILODOR 32-5 | NILODOR | 32-5R | L | 67-00079 | CLEANER NILODOR 32-5 CLEANER NILODOR 32-5 | EA | Plastic | 5 Gl |
| ELINE DEGREASER | TECH SPRAY INC | 1625-115 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| ELINE HI/LASH MAINTENANC | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | CA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | CA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | S | 67-00080 | CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | L | 67-00080 | CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| Cleaner | GUXK | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| Cleaner | | 5-2698-2 | | 67-00080 | Contract Cleaner | EA | Can | 19.02 |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 ELECTRICAL CONTACTS | EA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 CLEANER 5.6FFA SPEC 5 | EA | Metal | 19.00 |
| Tech Spray ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | A | 67-00080 | CLEANER 5.6FFA SPEC 5 CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 CLEANER 5.6FFA SPEC 5 | CAN | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| ELINE DEGREASER | TECH SPRAY INC | 5-2698-2 | | 67-00080 | CLEANER 5.6FFA SPEC 5 CLEANER 5.6FFA SPEC 5 | EA | Metal | 19 OZ |
| COMPOUND | | 69V124 | | 67-00080 | CLEANER 5.6FFA SPEC 5 | CA | Metal | 5 PT |
| ZEP ORIGINAL ORANGE | ZEP INC | 955 | | 67-00081 | CLEANER WATERLESS N CLEANER | GAL | Plastic | 1 GAL |
| GOJO HAND CLEANER | GOJO INDUSTRIES | 0955 | | 67-00081 | CLEANER WATERLESS N CLEANER | GAL | Plastic | 16OZ |
| Z GREEN | ZEP INC | L018-3 | | 67-00084 | CLEANER SIMPLE GREEN CLEANER | OZ | Plastic | 16OZ |
| Z GREEN | ZEP INC | L018-3 | | 67-00084 | CLEANER SIMPLE GREEN CLEANER | OZ | Plastic | 16OZ |
| SIMPLE GREEN | CLEANER SIMPLE GREEN 1300 | 1300GR | | 67-00084 | CLEANER SIMPLE GREEN Cleaner Simple Greeb | GAL | Plastic | 16 L |
| EYE GLASS CLEANER | ALLEGRO | 1015+165 | | 67-00090 | CLEANER ALLEGRO DISI CLEANER | EA | Plastic | 16OZ |
| E LINE DISINFECTANT | TECH SPRAY | 1015-165 | | 67-00090 | CLEANER DUPONT 3900 CLEANER | CAN | | |
| NEUTRALIZER | RECTOR SEAL | 812-007 45504 ACID AWAY | L | 67-00091 | NEUTRALIZER ACID OU NAAC - 1155 | OZ | Metal | 4 OZ |
| RECTORSEAL SLOW DRY SOFT | RECTOR SEAL | 25551 | | 67-00336 | COMPOUND RECTOR SL SPFFR SEAL | OZ | Plastic | 8OZ |
| RECTORSEAL SLOW DRY SOFT | RECTOR SEAL | 25551 | PASTE | 67-00336 | COMPOUND RECTOR SL SPFFR SEAL | OZ | Metal | 8OZ |
| COMPOUND | | 25551 | | 67-00336 | COMPOUND RECTOR SOFT | PT | Metal | 5 PT |
| Pipe Thread Sealant | Rector Seal | 25551 | | 67-00336 | Pipe Thread & Gasket COMPOUND RECTOR SF | OZ | Plastic | 8 |
| COMPOUND | | 25551 | | 67-00336 | COMPOUND RECTOR SOFT | EA | Plastic | 4 OZ |
| Leak Lock | LEAK LOCK | 114 | | 67-00546 | COMPOUND LEAK LIMITED REFRIGERATION | OZ | Plastic | 4 OZ |
| LEAK LOCK | LEAK LOCK | 64X176-30004 | | 67-00546 | Pipe Compound COMPOUND LEAK LOCK | OZ | Plastic | 6 |
| Lock Compound | | 64X176-30004 | | 67-00546 | COMPOUND LEAK LOCK LA | CA | Plastic | 4 OZ |
| LEAK LOCK | HIGHSIDE CHEMICALS | 21442 | PASTE | 67-00546 | COMPOUND LOCTITE 66 THREAD LOCK | OZ | Plastic | 16OZ |
| LOCTITE 603 | HENKEL CORP | 21442 | PASTE | 67-00555 | COMPOUND 3M4 PERFE COMPOUND 3M PERFECLAN | Can | | 16OZ |
| 3M RUBBING COMPOUND | 3M | 6085 | | 67-00562 | COMPOUND WAKEFIELD WAKEFIELD 120R - THER | EA | Plastic | 8 OZ |
| WAKEFIELD THERMAL JOINT C | WAKEFIELD THERMAL SOLUTI | 120-8 | L | 67-00562 | COMPOUND WAKEFIELD WAKEFIELD 120R - THER | EA | Plastic | 8 OZ |
| WAKEFIELD THERMAL JOINT C | WAKEFIELD THERMAL SOLUTI | 120-8 | | 67-00570 | FLUID WINDSHIELD VA FLUID WINDSHIELD WA | EA | Plastic | 1GAL |
| WINDSHIELD WASHER FLUID | JAMES AUSTIN COMPANY | 54J0000082 | | 67-00570 | FLUID WINDSHIELD VA FLUID WINDSHIELD WA | EA | Plastic | 1GAL |
| WINDSHIELD WASHER FLUID | JAMES AUSTIN COMPANY | 54J0000082 | | 67-00570 | FLUID WINDSHIELD VA FLUID WINDSHIELD WA | EA | Plastic | 1GAL |
| WINDSHIELD WASHER FLUID | JAMES AUSTIN COMPANY | 54J0000082 | | 67-00570 | FLUID WINDSHIELD VA FLUID WINDSHIELD WA | EA | Plastic | 1GAL |
| WINDSHIELD WASHER FLUID | JAMES AUSTIN COMPANY | 54J0000082 | | 67-00570 | FLUID WINDSHIELD VA FLUID WINDSHIELD WA | EA | Plastic | 1GAL |
| GOO | GOJO | 8140 | | 67-00590 | LOTION GOJO 8140 MO LOTION | EA | Plastic | 5OZ |
| MOBIL OUT 100 | MOBIL | 4 R B18 | | 67-00592 | CUTTING & TAPPING FL CUTTING & TAPPING FL | TUBE | Plastic | 16.02 |
| Leak Lock Joint Sealing Comp Highside Chemicals, Inc. | | HS 100M | PASTE | 67-00596 | COMPOUND LEAK LOCK COMPOUND LEAK LOCK | OZ | Plastic | 4 Co. |
| DDO ULTRA DISPENSE | DDO INC | 6669001 | A | 67-00624 | DISPENSER AEROSOL DI DISPENSER | EA | Metal | UNKNOWN |
| GREASE | NIRL | 10278+UNIREX | S | 67-00723-904 | UNIREX N2 UNIREX N2 | EA | Metal | 16 OZ |
| FILLER DYNATRON | DYNATRON | 492 | L | 57-00810 | FILLER DYNATRON 492 DYM-752R | | | 1 QT |

| Item | Manufacturer | Model No. | Form | Part No. | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| 3-36R CRC NON AEROSOL LUI CRC | | 3007 | L | 67-0008290 | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| 3-36R CRC NON AEROSOL LUI CRC | | 3007 | L | 67-0008290 | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| 3-36R CRC NON AEROSOL LUI CRC | | 3007 | L | 67-0008290 | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| 3-36R CRC NON AEROSOL LUI CRC | | 3007 | L | 67-0008290 | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| 3-36R CRC NON AEROSOL LUI CRC | | 3007 | L | 67-0008290 | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| Lubricant LU-36R 3-36 CRC CRC | | 3007 | L | 67-0082929-B | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| Lubricant LU-36R 3-36 CRC CRC | | 3007 | L | 67-0082929-B | FLUID CRC 3-36 BRAND 3-36R CRC SPRAY | CA | Metal | 17 OZ |
| SPRAYON SP-601 BLUE LAYO SPRAYON | | 2007 | A | 67-0063004G | FLUID KOLMASTER-CAR FLUID LAYOUT FLUMOHE | EA | Metal | 14 OZ |
| CLEANER AEROSOL | SCR630300D | | A | 67-0063004G | FLUID LAYOUT REMOVER FLUID LAYOUT FLUMOHE | EA | Metal | 14 OZ |
| WAX FLUX | DYKEM | | PASTE | 67-008836 | FLUX BRAZE COWELD 1 BRAZING | LB | Plastic | 1 LB |
| STAY SILV | HARRIS PRODUCTS GROUP | | PASTE | 67-008836 | FLUX SILVER BRAZING 1 BRAZING | LB | Plastic | 1 LB |
| STAY SILV | HARRIS PRODUCTS GROUP | 3117011916 | PASTE | 67-008837 | FLUX SILVER BRAZING 1 BRAZING | LB | Plastic | 1 LB |
| FLUX SILVER BRAZING 1 | HARRIS PRODUCTS GROUP | 3117011916 | S | 67-008837 | FLUX SILVER BRAZING 1 BRAZING | LB | Plastic | 1 LB |
| Stay Clean Liquid Soldering | Harris Industries | G700037 | PASTE | 67-008837-R01 | FLUX SOLDERING LIQUID SOLDERING PASTE | OZ | Plastic | 16 OZ |
| Flux Soldering | Stay Clean | SCL416 | L | 67-0083871-R01 | FLUX SOLDERING LIQUID FLUX SOLDERING LIQUI | OZ | Plastic | 16 OZ |
| Fire Extinguisher | | SCL416 | A | 67-0000975 | Fire Extinguisher EXTINGUISHER FIRE 5 L | EA | Metal | 5/lb |
| EXTINGUISHER FIRE 5 LB | Amrex | 1317 | A | 67-0000975 | Fire Extinguisher EXTINGUISHER FIRE 5 L | EA | Metal | 5/lb |
| Fresnsaa Gd Kit Hazmat | KIDDIE | G700375 | S | 67-0115468D1 | GEL BAL HEATER FIRESEAL BAL HEATER FIRESE | EA | Metal | 5 GAL |
| Loctite Technical Coatings | Forrest Technical Coatings | 1309300 | SEMI SOLID | 67-0151325 | COMPOUND LAPPING L SPRAY9 | EA | Metal | 16 OZ |
| Residual Anti & Roach Killer | T. Frank McCall's, Inc. | 39459 | SEMI SOLID | 67-0151325 | COMPOUND LAPPING L SPRAY9 | EA | Metal | 16 OZ |
| ANT & ROACH KILLER | REID | 39459 | SEMI SOLID | 67-0151326 | COMPOUND LAPPING L COMPOUND LAPPING L | EA | Metal | 16 OZ |
| ANT & ROACH KILLER | REID | 39426 | A | 67-0151507 | INSECTICIDE CHAMPION N/A INSECTICIDE CHAMP | EA | Metal | 1402 |
| ANT & ROACH KILLER | REID | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| ANT & ROACH KILLER | REID | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| ANT & ROACH SPRAY | T. FRANK MCCALL'S | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| ANT & ROACH KILLER | REID | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| ANT & ROACH KILLER | REID | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| ANT & ROACH KILLER | REID | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 30 OZ |
| Champion | McCall's | 498-133/567410 | A | 67-0151507 | Anti Roaches Spiders INSECTICIDE CHAMPION | Can | Metal | 30/oz |
| Fire Extinguisher | REID | 498-133/567410 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | Can | Metal | 14/oz |
| BONDO | 3M | 498-133 | A | 67-0151507 | INSECTICIDE CHAMPION SURFACE INSECTICIDE | EA | Metal | 14/oz |
| BONDO | 3M | 605/1001 | PASTE | 67-0154601 | FIBERGLASS REPAIR FIBERGLASS REPAIR | OZ | Metal | 8/02 |
| BONDO | REID | | S | 67-0154601 | FIBERGLASS REPAIR N/A | KIT | Plastic | 100Z |
| Bondo | DUR-FRK-1 | | S | 67-0154601 | Fiberglass Repair Kit FIBERGLASS REPAIR N/A | KIT | Plastic | KIT |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | 4210 | DUST | 67-0153601 | FOGGER TOTAL RELEASE I KIT 3M RONXO 40 DT 06 | KIT | Metal | Kit |
| Green Thumb Home Insect F Chemisco – Division of United | 18757B | | DUST | 67-0153601 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 Oz. |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | A | 67-0153601 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 8/0z. |
| Insect Fogger | Green Thumb | 2018 | DUST | 67-0118080 | Insect Fogger FOGGER TOTAL RELEASE | EA | Metal | 2 OZ. |
| Green Thumb | Green Thumb | 18757B | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GRE HALSTON THUMB INSE GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| Green Thumb Nana Insect F Chemisco – Division of United | Green Thumb # 12237B; Chen | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| Green Thumb Home Insect F Chemisco – Division of United | Green Thumb # 12237B; Chen A | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| Green Thumb Home Insect F Chemisco – Division of United | Green Thumb # 12237B; Chen A | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GREEN THUMB INSECT FOGG Green Thumb # 12237B; Chen | | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| GREEN THUMB INSECT FOGG GREEN THUMB | 18757B | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| 3M | 3M | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/FOGGER TOTAL RELEASE | EA | Metal | 2 OZ. |
| 3M | 3M | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/FOGGER TOTAL RELEASE | EA | Metal | 2 OZ. |
| 3M | 3M | | DUST | 67-0118080 | FOGGER TOTAL RELEASE/DRACKETT 5K000 | EA | Metal | 2 OZ. |
| Weed Blast 4-G Weed Killer | SST Maxim Co., Inc. | | S | 67-01892-R01 | LOCTITE #609 FOR COI/LOCTITE #609 FOR COI | LB | Metal | 10 ML |
| Weed Blast 4-G Weed Killer | SST Maxim Co., Inc. | | SEMI LIQUID | 67-01892-R01 | LOCTITE #609 FOR COI/LOCTITE #609 FOR COI | Lb. | Paper Bag | 40 Lb. |
| Weed Blast 4-G Weed Killer | SST Maxim Co., Inc. | | SEMI LIQUID | 67-01892-R01 | WEED KILLER HERBICID/WEED BLAST 4-G | Lb. | Metal | 2 OZ. |
| Weed Blast 4-G Weed Killer | Arborchem Weedblast 4-G | | S | 67-01892-R01 | WEED KILLER HERBICID/WEED BLAST 4-G | Lb. | | 5 GAL. |
| Loctite 242 | Huskel | 24231 | L | 67-01894 | Loctite Blue LOCTITE 24231 90 ML B | OZ | Plastic | 1.69 |

| Product | Manufacturer | Part No. | Form | Code | Description | Unit | Material | Size |
|---|---|---|---|---|---|---|---|---|
| LOCTITE 271 THREADLOCKER HENKEL CORP | | 21771 | L | 67-01369-A | ADHESIVE LOCTITE 271 SEALANT | OZ | Plastic | 3.4OZ |
| DRY MOLD | TERAND | 95412 | L | 67-01899-001 | LUBE CERTIFIED LABS DRY LUBRICANT | CAN | Metal | 11OZ |
| DRY MOLD | TERAND | 95412 | L | 67-01899-001 | LUBE CERTIFIED LABS DRY LUBRICANT | CAN | Metal | 11OZ |
| Dri-Lube Plus | Lube-Pro | 95412 | L | 67-01930 | Treatment | OZ | Metal | 11OZ |
| Dri-Lube Plus | Lube-Pro | 515-0014 | L | 67-01930 | LUBRICANT FOR CHAINS 711 (RADIATOR SPECIA | LB | Plastic | 11OZ |
| LUBRICANT LIQUID WRENCH | LIQUID WRENCH | 515-0014 | L | 67-01947 | LUBRICANT FOR CHAINS 711 (RADIATOR SPECIA | OZ | Plastic | 5OZ |
| LUBRICANT LIQUID WRENCH | LIQUID WRENCH | 1221 | L | 67-01977 | METAL BELZONA 1221 METAL BOND | OZ | Metal | 5OZ |
| BELZONA | BELZONA INDUSTRIES | 1221 | PASTE | 67-01977 | METAL BELZONA 1221 METAL BOND | OZ | Metal | 32OZ |
| BIG BLUE LEAK DETECTOR 50# REFRIGERATION TECHNOLO | RT200S | 11232-221 | L | 67-02019-050 | DETECTOR BIG BLUE RT DETECTOR RB BLUE RT | EA | Plastic | 32OZ |
| CAL BLUE RTOOLS LEAK DETECTOR | | 1233-200 | L | 67-02051 | SEALANT GE SILPRUF SEALANT GE SILPRUF | GAL | Plastic | 10.1 OZ |
| Signal Finder | Radiator Specialty Co. INC. | RFN-225 | S | 67-02093-V01 | RUST INHIBITOR LPS PREMIER LPS-3 | EA | Metal | 1 GAL |
| LPS PREMIER RUST INHIBITOR LPS-3 | LPS | RFN-225 | L | 67-02406 | | LB | Metal | 14 |
| DUFF FLUX | DUFF SUPPLY CO. | UNKNOWN | PASTE | 67-02405 | PASTE SOLDERING 1/2 LB SOLDERING PASTE | LB | Metal | 1LB |
| DUFF FLUX | DUFF SUPPLY CO. | UNKNOWN | PASTE | 67-02405 | PASTE SOLDERING 1/2 LB SOLDERING PASTE | LB | Metal | 1LB |
| DUFF FLUX | DUFF SUPPLY CO. | UNKNOWN | PASTE | 67-02405 | PASTE SOLDERING 1/2 LB SOLDERING PASTE | LB | Metal | 1LB |
| DUFF FLUX | DUFF SUPPLY CO. | UNKNOWN | PASTE | 67-02405 | PASTE SOLDERING 1/2 LB SOLDERING PASTE | LB | Metal | 1LB |
| EMULSOIL | T. FRANK McCALLS | 16/918 EMULSOIL | A | 67-02491 | POLISH FOR STAINLESS STAINLESS CLEANER | CAN | Metal | 15OZ |
| EMULSOIL | T. FRANK McCALLS | 16/918 EMULSOIL | A | 67-02491 | POLISH FOR STAINLESS EMULSOIL | CAN | Metal | 15OZ |
| STAINLESS STEEL POLISH | T. Frank McCalls | CB-4434-4111 | A | 67-02491 | POLISH FOR STAINLESS EMULSOIL | EA | Metal | 18 |
| Polish for Stainless Steel | Oven Manufacturing | CB-4434-4111 | A | 67-02491 | POLISH FOR STAINLESS POLISH FOR STAINLESS | EA | Metal | 18OZ |
| STAINLESS STEEL POLISH | T. Frank McCalls | CB-4434-4111 | A | 67-02491 | SPRAY CLEANER POLISH FOR STAINLESS | EA | Metal | 16OZ |
| Liquid Wrench Penetrating Oil/Radiator Specialty Company | L112 | CB-4434-4111 | A | 67-02491 | ABRASIVE HARDLINE IN ABRASIVE HARDLINE IN | Case | Metal | 16OZ |
| Emulsoil | T. Frank McCalls | 16-918 EMULSOIL | GEL | 67-02491 | POLISH FOR STAINLESS EMULSOIL | EA | Plastic | 16OZ |
| PURELL HAND LOTION | PURELLS | 9-14916 | GEL | 67-02492 | SANITIZER PURELL 5-14E-14616 | EA | Plastic | 16OZ |
| STAINLESS STEEL POLISH | | 91224 | A | 67-02555 | POLISH TWINKLE 91224 POLISH TWINKLE 91224 | EA | Metal | 16OZ |
| SPRAYON TWINKLE 91224 | SPRAYON | 91224 | A | 67-02555 | POLISH TWINKLE 91224 POLISH TWINKLE 91224 | EA | Metal | 16OZ |
| AJAX/OXYGEN BLEACH CLEAN COLGATE PALMOLIVE COMP | | P98330191 | S | 67-02555 | POWDER SOLDERING 2LJ POWDER | PT | Paper | 14 |
| AJAX | AJAX | 2500-04475 | S | 67-02555 | Powder Cleaner | EA | Paper | 21/0z |
| Power Scrub | Comet | 5960 | S | 67-02558 | POWDER SOLDERING | M | Cardboard | 13L |
| Power Scrub | Comet | 5960 | S | 67-02680 | Powder Cleaning | EA | Plastic | 16OZ |
| PUTTY | 3M | 84516/413 | | 67-02680 | BODY PUTTY | EA | Plastic | 30OZ |
| METAL GLAZE EVERCOAT | EVERCOAT | #400 | SEMI LIQUID | 67-02680 | PUTTY GLAZING STYRELL 400D | EA | Plastic | 28 OZ |
| EVER COAT PUTTY | 3M | #400 | SEMI LIQUID | 67-02684 | PUTTY EVERCOAT #416 #413 EVERCOAT | EA | Metal | 5 GAL |
| BUMAR CAT CALCIUM BLUE | | 9232596 | | 67-02700 | REMOVER JELMAR CLR CLR | EA | Metal | 28 OZ |
| ELECTROLOCK 6 1490 EPOXY | ELECTRADUCK INC | E1490/CL2 | SEMI LIQUID | 67-02700 | EPOXY ELECTRADUCK ELC 1490/CL1 APPD 10/22 | Case | Plastic | 10 ML |
| PURELL HAND LOTION | PURELLS | 3-14516 | GEL | 67-0008 | SANITIZER PURELL 5-14E-14616 | EA | Plastic | 1000 ML |
| PERMATEX | TEFLON | 16912855 | | 67-0003 | SEALANT FEDERAL PROP | PT | Metal | 16OZ |
| PERMATEX | TEFLON | 16912855 | | 67-0004 | SEALANT FEDERAL PROPERMATEX 80533 | PT | Metal | 16OZ |
| Grouta Cleaner | Goxtona | 16912855 | | 67-0004 | SEALANT FEDERAL PROPERMATEX 80533 | PT | Plastic | Pint |
| AJAX/OXYGEN BLEACH CLEAN | AJAX | 16FLOZ | | 67-0005 | SEALANT FEDERAL PROP | PT | Plastic | 16OZ |
| PERMATEX | TEFLON | 16912855 | | 67-0005 | SEALANT FEDERAL PROPERMATEX 80633 | EA | Plastic | 16OZ |
| PERMATEX | TEFLON | 16912855 | | 67-0015 | SEALANT GE RTV-108 | EA | Plastic | 16OZ |
| PERMATEX | TEFLON | 16912855 | | 67-0014 | SEALANT GE RTV-108 SEALANT GE RTV-108 TI | EA | Plastic | 16OZ |
| RED DEVIL INDUSTRIAL CALCINED DEVIL | RED DEVIL | RTV-108 | | 67-0015 | SEALANT GE RTV-108 SEALANT GE RTV-108 TH | EA | Plastic | 10.1 OZ |
| PV CLEAR SV SILICONE | RED DEVIL | 80050 | | 67-0015 | SEALANT GE RTV-108 SILICONE | EA | Plastic | 10.1 Oz. |
| RED DEVIL INDUSTRIAL RED DEVIL | RED DEVIL | RTV-108 | | 67-0005 | SEALANT GE RTV-108 SEALANT GE RTV-108 TH | EA | Plastic Cartridge | 10.1 Oz. |
| Red Devil 100% Silicone Sealed Red Devil | | B26 | | 67-0004 | RAID SV RTV-108 SEALANT GE RTV-108 TH | EA | Plastic Cartridge | 10.1 Oz. |
| Red Devil 100% Silicone Sealed Red Devil Industries | | B26 | | 67-0005 | SEALANT GE RTV-108 SEALANT GE RTV-108 TH | EA | Plastic | 10.1 OZ |
| Red Devil 100% Silicone Sealed Red Devil | | RTV-108 | | 67-0015 | SEALANT GE RTV-108 SEALANT GE RTV-108 TH | EA | Plastic | 10.1 OZ |
| RED DEVIL INDUSTRIAL CALCINED DEVIL | | RTV-108 | | 67-0016 | Weatherstripping Sealant SEALANT GOLDEN NO-LI | EA | Plastic | 1 |
| PERMATEX | TEFLON | 3121_MR-7 | SEMI LIQUID | 67-0016 | SEALANT BELZONA 3121 SEALANT BELZONA 3121 | QT | Metal | QT |
| BELZONA SEALANT | BELZONA | 3121_MR-7 | SEMI LIQUID | 67-0016 | SEALANT BELZONA 3121 SEALANT BELZONA 3121 | EA | Metal | 1 |
| LOCTITE 5541 | LOCTITE | 55441 | SEMI LIQUID | 67-00827 | SEALANT LOCTITE 5544 SEALANT GRAINGER #TE | GAL | Plastic | 250 ML |
| LOCTITE 5541 | LOCTITE | 55441 | | 67-00016 | SEALANT LOCTITE 5544 SEALANT GRAINGER #TE | EA | Plastic | 1 |
| Manual Rib Soap | Dawn | 4-11763 | | 67-0335 | SODA BAKING SODIUM NOT CLASSIFIED | BAG | Paper | 50LB |
| EPOXY | Cenapure | 60131 | | 67-01327A | SOLVENT TRIZOL TP-14 TPS-10S | EA | Metal | 11 OZ |
| BARNEY SOLVENT | CHURCH & DWIGHT | 60131 | | 67-03132 | SOLVENT TRIZOL TP-14 TPS-10S | EA | Metal | 11 OZ |
| TRIZOL PENETRATING SOLV | CASTROLEUM CORPORATION | TPS-10S | | 67-03132 | SPRAY CHEMTRONICS SPRAY CHEMTRONICS E | EA | Paper | 15 OZ |
| FREEZE-IT | CHEMTRONICS | ES1051 | | 67-0335 | SPRAY CHEMTRONICS SPRAY CHEMTRONICS E | EA | Plastic | 15 OZ |
| FREEZE-IT | CHEMTRONICS | ES1053 | | 67-0335 | SPRAY CHEMTRONICS SPRAY CHEMTRONICS E | Jar | Metal | 16OZ |
| FREEZE-IT | CHEMTRONICS | ES1053 | L | 67-0335 | LUBRICANT SPRAY S200L LUBRICANT SPRAY S200 | Metal | Metal | Qt |
| SPRAYON SODA | SPRAYON | S-00204-000 | A | 67-0335 | LUBRICANT SPRAY S200L LUBRICANT SPRAY S200 | EA | Metal | 10 Oz. |
| SPRAYON DRY FILM GRAPHITE | Sprayon Products Inc. | S-00204 | L | 67-0335 | LUBRICANT SPRAY S200L LUBRICANT SPRAY S200 | EA | Metal | 19 Oz. |

| Description | Brand | Part No. | State | Code | Description 2 | UOM | Size |
|---|---|---|---|---|---|---|---|
| MOBILE MET 425 LUBRICANT MOBILE | | 980R48 | L | 67-00159 | LUBRICANT CUTTING & LUBRICANT CUTTING & | EA | 1 GL |
| GREEN THUMB WASP HORNE\|GREEN THUMB | | 285580 | L | 67-042A08R01 | SPRAY WASP HORNET B\|GREEN THUMB AEROG | EA | 17.5 OZ |
| GREEN THUMB WASP HORNE\|GREEN THUMB | | 285580 | L | 67-042A08R01 | SPRAY WASP HORNET B\|GREEN THUMB AEROG | EA | 17.5 OZ |
| GREEN THUMB WASP & HORN\|GREEN THUMB | A | HG-18197B | L | 67-2A20L-R01 | SPRAY WASP HORNET B\|INSECTICIDE | CAN | 10OZ |
| Green Thumb | | 187978 | L | 67-2A20L-R01 | Wasp Spray SPRAY WASP HONNET B | OZ | 17.5 |
| Green Thumb | | 187978 | L | 67-04553 | TUBE DURAMIX 4240 O\|TUBE DURAMIX 4240 O | EA | 19 OZ |
| DURAMIX 4240 | 4240 00374 | | SEMI SOLID | 67-04553 | TUBE DURAMIX 4240 O\|TUBE DURAMIX 4240 O | EA | 1.6L |
| 3M AUTO MIX ADHESIVE | 8153 | | SEMI SOLID | 67-04833 | TIP 8153 FOR 3M AUTO\|TIP 8153 FOR 3M AUTO | EA | 4 OZ |
| FAT PIDGON | 3M GRAPHICS DIVISION | | S | 67-04835 | TOSS PACK EATON\|N/A, N/A | EA | 4 OZ |
| FAT PIDGON | N/A | | S | 67-00961 | N/A | Unknown | |
| HOSPITAL DISINFECTANT | T FRANK RANDALLS | | | 67-2420 | SEALANT LOCTITE 60931\|60931 | EA | 8 OZ |
| HOSPITAL DISINFECTANT | LOCTITE | | SEMI SOLID | 67-2420 | SEALANT LOCTITE 60931\|60931 | Unknown | 12OZ |
| SEALANT LOCTITE | 60531 | | SEMI SOLID | 67-04206-A | DE-ICER DUPONT 943D\|CLEANER | CAN | 12OZ |
| MOTOR MEDIC DE-ICER FOR\|RCC CHEMICAL SOLUTION | RMOE 3D+4B | | L | 67-01887 | OIL CYLINDER AIR TOOL | Metal | QT |
| COMPRESSOR OIL | 45-TYP | | L | 67-01887 | OIL | Metal | 14.5 OZ |
| CUTTING OIL | CHESTERTON | | L | 67-01868 | N/A | Metal | 13 |
| Leak Detector | Ovetech | | G | 69-00470-401 | Radiant Leak Detector\|DETECTOR WAGNER RL | OZ | 5+ |
| MASTER | MASTER HEAT TOOLS FOR\|MN51773 | | | UNKNOWN | ULTRATANE BUTANE FLU\|FLU/GAS TOOL | CA | 5.402 |
| OIL RAVV CASTOR SAE GRAD\|CASTOR | Ferrind D50029 | | LIQUID | 6C-01129R03 | OIL RAVV CASTOR SAE G\|OIL RAVV CASTOR SAE G | PL | 5 GAL |
| REMOVER LOFFIT | Ferrind 5T61-A4281 | | LIQUID | 67-02856 | REMOVER SUPER3 TRAK\|STG 14281 | EA | 1 GAL |
| Hyra-Trans Tractor Fluid | Pennzoil 5534-0404 | | LIQUID | 61-01204 | OIL PENNZOIL 162/5420\|OIL PENNZOIL 162/5420 | Gal | 5 GAL |
| GREASE | GG D50711-120 | | SEMI SOLID | 63-00659 | GREASE GG D50711 120\|D50711-120 | EA | 40 LBS |
| GREASE | 948 | | SEMI SOLID | 63-00060 | GREASE TEXACO CPI49\|GREASE TEXACO CPI49.5 | CAN | 120 LB |
| GEAR LUBE | HUB CITY | B 58 00 01 009 | SEMI SOLID | 63-00838070 | LUBE HUB CITY B 58-00\|LUBE HUB CITY B 58-00 | EA | QT |