IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, **Plaintiff,** | CIVIL ACTION |
| **v.** | |
| DRUMMOND DECATUR AND STATE PROPERTIES, LLC, **Defendant.** | NO.  21-4212 |

**MEMORANDUM OPINION**

In 2019, the Southeastern Pennsylvania Transportation Authority, known as "SEPTA,"

entered into a commercial lease with Drummond Decatur and State Properties, LLC

("Drummond") for a warehouse in Philadelphia.  SEPTA uses the space to store equipment and

components related to its transit operations, and for administrative offices.  But the Complaint

alleges that its operations have been disrupted by conditions at the site, including flooding, leaks,

sewage backup, and environmental contaminants.  Drummond allegedly knew about these issues

and took action to prevent SEPTA from finding out about them before it entered into the lease.

SEPTA brings suit for fraudulent inducement, negligent misrepresentation, negligence, breach of

contract, and unjust enrichment.  The Complaint also seeks a declaratory judgment concerning

the Parties' rights and obligations under the Lease.  Drummond now files a Motion to Dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Drummond's

Motion to Dismiss will be granted in part and denied in part.

**I.    FACTUAL ALLEGATIONS**

SEPTA is a regional public transportation authority that services the five counties in and

around Philadelphia, Pennsylvania.  Prior to December 2019, SEPTA rented warehouse space in

1

Northeast Philadelphia.  As the expiration of that lease approached, SEPTA began looking for a

new property that would satisfy its operational and administrative needs.  It developed an interest

in Drummond's warehouse, located on Decatur Road in Philadelphia.  During a site visit in May

2019, SEPTA personnel observed substantial flooding on the grounds of the building.

Drummond told SEPTA that its employees had been hosing down a wall that would be removed

to open up the warehouse and that the flooding would be resolved when demolition clean-up was

finished.  In November 2019, SEPTA and Drummond entered into a commercial lease for the

property (the "Lease").  The Lease provided that Drummond would make certain repairs to the

roof and other areas of the building prior to the commencement of the Lease.

SEPTA now contends that "significant structural and sub-surface piping and plumbing

issues" have caused flooding of the warehouse, office space, and common areas; leaking

downspouts and drainage pipes; and overflow from toilets and restroom drains, including

sewage.  It also maintains that the floors are in terrible condition and that heavy metals and

asbestos have been found on the property.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When

analyzing a motion to dismiss, the Court must "construe the complaint in the light most favorable

to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and it is

determined whether the alleged facts state a "plausible claim for relief."  *Id.* at 210-11 (quoting

*Iqbal*, 556 U.S. at 679).

    **III.**    **DISCUSSION**

        **A.  The Integral Documents Exception**

      Drummond supplies with its Motion to Dismiss a declaration by its attorney, Jeffrey A.

Cohen, to which are attached four exhibits.  SEPTA argues that these documents cannot be

considered in ruling on Drummond's Motion.

      At the motion to dismiss stage, consideration is given only to "the allegations contained

in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v.*

*Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol.*

*Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).  "However, an exception to the general rule is

that a 'document *integral to or explicitly relied* upon in the complaint' may be considered

'without converting the motion to dismiss into one for summary judgment.'"  *Id*. (emphasis in

original) (quoting *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir.

1997)).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic

document."  *Id*. (alteration in original) (quoting *In re Burlington Coat Factory Sec. Litig*., 114

F.3d at 1426).

      Affidavits or declarations attached by a defendant to a motion to dismiss "clearly may not

be considered" under the integral documents exception.  *Id*. (refusing to consider defendants'

affidavits on motion to dismiss); *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016)

(refusing to consider defendant's declaration on motion to dismiss).  As for the exhibits attached

to the Declaration, Cohen represented that they consist of four documents authored by SEPTA:

(1) a June 18, 2019 Condition Assessment Report; (2) a July 30, 2019 Letter of Understanding;

(3) an August 15, 2019 Letter of Understanding; and, (4) an August 2, 2019 Condition

Assessment Report.  The Complaint does not "explicitly rely" on any of these documents; they

may be considered only if SEPTA's claims are based on them.  *Schmidt*, 770 F.3d at 249.

SEPTA's claims are based on the Lease, on a site inspection that occurred in May 2019, and on

the alleged discovery of defects and hazardous conditions after SEPTA took possession of the

property.  None of its claims are based on condition assessment reports from site inspections that

took place after May 2019 or on letters of understanding that pre-date the Lease.  Nor is there

any indication that SEPTA used such documents to "fram[e] its complaint."  *Id.* at 250.

Therefore, Defendant's exhibits are not integral to the Complaint and it would not be appropriate

to consider them at this stage.[1]

## B.  Fraudulent Inducement

SEPTA's fraudulent inducement claims rest on allegations that, prior to entering into the

Lease, Defendant intentionally and falsely misrepresented the condition of the building and

concealed the presence of environmental hazards, and structural, plumbing, drainage, and

sewage issues.  Drummond argues that SEPTA's fraudulent inducement claims must be

dismissed because SEPTA failed to meet the particularity requirement of Federal Rule of Civil

Procedure 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

---

[1] Drummond relies on *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983), *reversed on other grounds by Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) to argue that its exhibits must be considered.  The applicability of this case, which relied on Federal Rule of Evidence 901 to determine whether evidence presented in a party's final pretrial statement had been properly authenticated, is not apparent.

may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 requires plaintiffs to state their claims

with particularity sufficient to "allow a defendant to meaningfully respond to a complaint," *In re*

*Docteroff*, 133 F.3d 210, 217 (3d Cir. 1997), and to "place the defendant on notice of the 'precise

misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.

2007) (alteration in original) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).

The Rule "requires a plaintiff to allege "the who, what, when, where, and how of the events at

issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d

Cir. 2016)). Only by alleging this degree of detail can a complaint "go well beyond Rule 8's

threshold of plausibility" and show a "strong inference" of fraud. *Id.*[2]

SEPTA's factual allegations meet this particularity standard. The first alleged

misrepresentation occurred during the May 2019 site inspection, when Drummond told SEPTA

that flooding on the premises was caused by demolition preparations and would be resolved

when that project was completed. This was untrue, SEPTA maintains, because the flooding has

continued since it moved into the space and it is caused not by temporary prior demolition

activities, but by "significant structural and sub-surface piping and plumbing issues." SEPTA

contends that Drummond built on this first misrepresentation by intentionally attempting to

conceal related issues in the building when it (1) permitted its tenant to leave materials and

---

[2] Third Circuit precedents suggest, but do not hold, that the heightened "strong inference" pleading standard may be limited to circumstances such as securities litigation or False Claims Act suits brought by relators. *Compare United States ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) ("a relator must 'establish a "strong inference" that the false claims were submitted'") *and In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418 ("a plaintiff alleging securities fraud must still allege specific facts that give rise to a 'strong inference' that the defendant possessed the requisite intent") *with Frederico*, 507 F.3d at 200 (not mentioning "strong inference" standard in common law fraud case) *and In re Docteroff*, 133 F.3d at 217 (same). This open question need not be resolved here, because SEPTA's allegations meet that heightened standard.

equipment on the warehouse floor; (2) "used patchwork on the walls" to hide water damage; and,

(3) "skimmed the floors with concrete to cover cracks and leaks in the floor."  And then, SEPTA

avers, "knowing full well" that the problems in the building had structural origins, Drummond

"lulled SEPTA into a false sense of security by lying about the cause of the flooding and

promising to make certain repairs under the Lease."  SEPTA further asserts that it caught

Drummond in another fraudulent omission when, after the Lease was executed, it saw

Drummond's workers repairing the roof in hazardous material suits.  "[S]urprised and

concerned" by this sight, SEPTA hired environmental inspectors, who found asbestos and heavy

metals on the site.  Drummond knew about these environmental hazards, says SEPTA, and

intentionally concealed them.

These allegations satisfy Rule 9 because they state "the date, time and place of the

alleged fraud or otherwise inject precision or some measure of substantiation into a fraud

allegation" and place Defendant on notice of the "precise misconduct" at issue.  *Frederico*, 507

F.3d at 200-01.[3]  Taking the alleged facts as true, they give rise to a "strong inference" of

fraudulent conduct.  *UPMC*, 946 F.3d at 176.

### C.  Gist of the Action Doctrine

#### i.    *Negligent Misrepresentation and Negligence*

Drummond contends that SEPTA's claims for negligent misrepresentation and

negligence must be dismissed pursuant to Pennsylvania's gist of the action doctrine.  "Under

Pennsylvania law, the gist of the action doctrine prevents a purely contractual duty from serving

---

[3] Drummond also contends that Plaintiff's fraudulent inducement allegations are not plausible, in light of the exhibits attached to the Motion to Dismiss.  As the exhibits have been excluded from consideration at this stage, this argument must be disregarded.  *Davis*, 824 F.3d at 351 (refusing to consider defendant's argument distinguishing two corporate entities because it rested on a declaration that could not be considered on a motion to dismiss).

as the basis for a tort claim." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65 (Pa. 2014)).  "Tort actions arise from the breach of a duty owed to another as a matter of social policy, while breach-of-contract actions arise from the breach of a duty created by contract." *Id*.  "When a duty is created by contract, the gist of the action doctrine requires that a claim for a breach of that duty be brought in contract, not tort." *Id*.

SEPTA's negligent misrepresentation claim asserts that SEPTA entered into the Lease in reliance on misrepresentations made by Drummond about the condition of the premises.  "[A] precontractual duty not to deceive through misrepresentation or concealment exists independently of a later-created contract." *Id.* at 217.  Therefore, the gist of the action doctrine does not bar this claim because any duty owed by Drummond to SEPTA before the existence of the Lease "was grounded only in tort." *Id*. at 217 (holding that fraudulent inducement claim was not barred by the gist of the action doctrine).[4]

SEPTA's negligence claim is not barred by the gist of the action doctrine either, because "[w]ell settled law holds landlords to a duty to protect tenants from injury rising out of their negligent failure to maintain their premises in a safe condition." *Feld v. Merriam*, 485 A.2d 742, 745 (Pa. Super. 1984).  Such claims are not barred by the gist of the action doctrine because they derive from "a duty imposed by the larger social policies embodied in the law of torts." *Reed v. Dupuis*, 920 A.2d 861, 866-67 (Pa. Super. 2007) (claim that landlord failed to exercise reasonable care addressing water infiltration issue not barred by the gist of the action doctrine).

---

[4] This conclusion also applies to Drummond's argument that SEPTA's fraudulent misrepresentation claims must be dismissed under the gist of the action doctrine.

### D. Breach of Contract

In Pennsylvania, a breach of contract claim has three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). This Lease, SETPA maintains, has been breached in three ways, each discussed in turn below.[5]

#### i.   Covenant of Quiet Enjoyment

The Complaint alleges that Drummond breached express and implied covenants of quiet enjoyment "by failing to make necessary repairs to the Building resulting in conditions that substantially alter the essential features of the Building rendering the Building unsuitable for the purpose for which it was leased."[6] Drummond argues that SEPTA's continued use and occupation of the leased property shows that these allegations do not "rise to a level that would prevent SEPTA's use or occupancy of the Property or render it unsuitable for the purposes for which it is leased."

"[T]here is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in [Pennsylvania] that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." *Pollock v. Morelli*, 369 A.2d 458, 460 (Pa. Super. 1976) (first alteration

---

[5] SEPTA has adequately pled the first element by alleging that the commercial lease for the rental of Drummond's warehouse on Decatur Road constitutes "a valid contract, supported by consideration, and containing material terms regarding the parties' rights and obligations." It adequately pled the third element by allegedly that the breaches caused harm including "destruction, damage, and loss of materials and supplies needed to carry out integral transit operations" and "costs associated with remediation, emergency repairs, employee displacement, diversion of resources."

[6] Article 22 of the Lease provides that "so long as Tenant pays the Rent and observes and performs all other terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Premises and Tenant's possession will not be disturbed by anyone claiming by, through or under Landlord subject, nevertheless, to the terms and conditions of this Lease."

in original) (quoting *Kelly v. Miller*, 94 A. 1055, 1056 (1915)).  The covenant of quiet enjoyment

"is breached when a tenant's possession is impaired by acts of the lessor or those acting under

him."  *Checker Oil Co. of Del., Inc. v. Harold H. Hogg, Inc.*, 380 A.2d 815, 818 (Pa. Super.

1977).  "The impairment of the lessee's possession need not be total."  *Id*. at 819.  A plaintiff

need only show that "the utility of the premises [has been] substantially decreased."  *Id.* (holding

that landlord breached the covenant of quiet enjoyment by sealing one of four access points to a

gas station).

SEPTA has stated facts sufficient to plead a substantial decrease in the utility of the

leased premises.  It alleges that flooding, environmental hazards, and other conditions at the

building are "endangering SEPTA employees, damaging critical infrastructure and debilitating

company operations," and that its "office space has been rendered unusable and dangerous, the

odors are repugnant, the bathrooms are dysfunctional, and the environmental conditions are

unsanitary and deplorable."  It contends that "[e]very time the sewer backs up due to rainfall,

fecal matter enters the warehouse floors creating serious health and safety hazards."  Conditions

at the building purportedly "impede SEPTA's operations" by "disrupting inbound and outbound

flow of materials used to repair and maintain the transportation fleet; displacing administrative

staff; diverting critical employee resources and expenses to cleanup and relocation of materials;

and moving materials within the Building as a result of certain areas not being capable to support

heavy equipment."  Taken as true, as they must be at this stage, these facts suggest substantial

interference with SEPTA's possession of the premises and with the operations for which it leased

them, stemming from Drummond's alleged failure to conduct necessary repairs.  Therefore,

SEPTA has stated a claim for breach of the covenant of quiet enjoyment.[7]

### ii.    Landlord's Work

SEPTA also asserts in its Complaint that Drummond breached its obligations under

Section 3.3 of the Lease to perform certain repairs, defined in the Lease as "Landlord's Work,"

prior to the commencement of the Lease.  Drummond spends pages denying any obligation to

perform such repairs and invoking various contractual provisions that would, according to

Drummond, excuse its non-performance of Landlord's Work under certain circumstances.  These

contestations raise premature disputes of fact that cannot be addressed at this point in the

proceedings.  *Iqbal*, 556 U.S. at 678.

### iii.    Implied Covenant of Good Faith and Fair Dealing

SEPTA's third breach of contract claim rests on its assertion that Drummond's conduct

constituted "an intentional effort to exert leverage over SEPTA and coerce SEPTA into giving up

certain rights under the Lease and bear the costs of repairing the Building for Defendant's own

ultimate benefit," in violation of the implied covenant of good faith and fair dealing.  Drummond

argues for dismissal on the grounds that this claim must be interpreted as "a breach of contract

and not an independent breach of a duty of good faith and fair dealing."

In Pennsylvania, there is a "general duty of good faith and fair dealing in the performance

of a contract."  *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. 1992) (citing *Creeger Brick*

*& Bldg. Supply Inc. v. Mid-State Bank & Tr. Co.*, 560 A.2d 151, 153 (Pa. Super. 1989)).

However, "this duty 'does not create independent substantive rights,'" *Burton v. Teleflex Inc.*,

---

[7] Drummond also argues that SEPTA has not stated a claim for breach of this covenant because SEPTA has not performed its own maintenance and repair obligations under the Lease.  This argument raises a factual dispute that cannot be resolved on a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

707 F.3d 417, 432 (3d Cir. 2013) (quoting *Commonwealth v. BASF Corp.,* 2001 WL 1807788, at

*12 (Pa. Com. Pl. Mar. 15, 2001)), and a claim for infringement of the covenant cannot be

brought as a "cause of action separate and distinct from a breach of contract claim."  *Id.* (quoting

*JHE, Inc. v. Se. Pa. Transp. Auth.,* 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002)).

Instead, such a claim is "subsumed in a breach of contract claim."  *Id.* (quoting *LSI Title Agency,*

*Inc. v. Evaluation Servs., Inc.,* 951 A.2d 384, 392 (Pa. Super. 2008)).  Therefore, SEPTA's

standalone cause of action for breach of the covenant of good faith and fair dealing will be

dismissed.  Nevertheless, any theories or allegations relevant to the implied covenant of good

faith and fair dealing may be raised under SEPTA's surviving breach of contract claims.[8]

### E.  Unjust Enrichment

The elements of an unjust enrichment claim are "benefits conferred on defendant by

plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such

benefits under such circumstances that it would be inequitable for defendant to retain the benefit

without payment of value."  *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.

Super. 2001) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993)).

SEPTA asserts that Drummond unjustly reaped the monetary benefits of the Lease by

(1) collecting rent without performing its obligation to carry out necessary repairs; and,

(2) reaping the benefits of repairs carried out by SEPTA that should have been done by

---

[8] Drummond also argues that this claim must be dismissed because (1) SEPTA has not alleged bad faith; and, (2) the claim is redundant because it is based on the same factual allegations as other counts of the Complaint.  These arguments have no foundation.  First, SEPTA's allegation that "Defendant did not act fairly or in good faith when it refused to acknowledge or make any necessary repairs at the Building" amounts to an allegation that Drummond acted in bad faith.  Second, Drummond cited no legal authority for its contention that a claim can be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim simply because it rests on the same factual allegations as other claims, and such a rule would run counter to the well-established and condoned practice of alternative pleading.

Drummond. Drummond's arguments in favor of dismissing this claim rest entirely on factual disputes. As noted above, such disputes provide no basis on which to grant a motion to dismiss. *Iqbal*, 556 U.S. at 678.

### F. Declaratory Judgment

The authority to issue a declaratory judgment stems from 28 U.S.C. § 2201, which provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Here, the phrase "case of actual controversy" refers to the "Cases" and "Controversies" that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Such cases must be "definite and concrete," as well as "real and substantial," and they must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (alteration in original) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

SEPTA seeks a declaratory judgment that Drummond has breached the Lease and that SEPTA may cease paying rent until Drummond fulfils its alleged repair obligations. Drummond contends that this claim must be dismissed because "[t]here is nothing imminent and inevitable about the current dispute between the parties."

Drummond's position is difficult to understand and unsupported by the pleadings.  This suit is the very model of a "case of actual controversy."  SEPTA seeks relief for a "definite and concrete" injury that has already occurred and that continues to occur—it alleges that it was fraudulently induced to enter into the Lease, and that Drummond has breached both the Lease and its obligations as a landlord by concealing, failing to disclose, and failing to remedy dangerous and disruptive conditions at the leased building, causing ongoing harm to SEPTA's operations.  These allegations clearly describe a "real and substantial" controversy that "admits of specific relief."

An appropriate order follows.


BY THE COURT:

/s/ WENDY BEETLESTONE, J.

_____
WENDY BEETLESTONE, J.